THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMIE LEE ANDREWS, as       *
Surviving Spouse of          *
MICAH LEE ANDREWS, Deceased,   *    CIVIL ACTION FILE
and JAMIE LEE ANDREWS, as     *
Administrator of the Estate of    *    NO.1:14-CV-03432-WSD
MICAH LEE ANDREWS, Deceased    *
     Plaintiff,               *
                           *
v.                        *
                           *
MAZDA MOTOR CORPORATION,     *
MAZDA MOTOR OF AMERICA, INC.,   *
AUTOLIV, INC., AUTOLIV ASP, INC.,   *
AUTOLIV AB, AUTOLIV JAPAN, LTD.   *
AUTOLIV SAFETY TECHNOLOGY, INC.,   *
ROBERT BOSCH GmbH, ROBERT     *
BOSCH LLC, ROBERT BOSCH NORTH   *
AMERICA CORPORATION, BOSCH    *
CORPORATION, and JOHN DOES 1-5.   *
     Defendants.            *

**SECOND AMENDMENT TO PLAINTIFF'S
<u>COMPLAINT FOR DAMAGES</u>**

COMES NOW Plaintiff and files this Second Amendment to Plaintiff's

Complaint for Damages against Defendants Mazda Motor Corporation, Mazda

Motor of America, Inc., Autoliv, Inc., Autoliv ASP, Inc., Autoliv AB, Autoliv

Japan, Ltd., Autoliv Safety Technology, Inc., Robert Bosch GmbH, Robert Bosch

LLC, Robert Bosch North America Corporation, Bosch Corporation, and John

Does 1-5.  Plaintiff files this Amendment to the Complaint to make a single change: to remove the claim for punitive damages against Robert Bosch GmbH only, a party who has yet to answer, in order to facilitate service under the Hague Convention.  Germany has refused to execute Plaintiff's request for service on Robert Bosch GmbH because of the claim for punitive damages against that party.  Plaintiff therefore hereby removes that claim.  Plaintiff files this Amendment as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) and other applicable law.  *See, e.g.*, *Williams v. Bd. Regents Univ. Systems of Ga.*, 477 F.3d 1282 (2007) ("If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer.").

Plaintiff therefore respectfully shows the following:

## PREAMBLE

On April 12, 2013, Micah Andrews was the driver of his 2005 Mazda 3, VIN JM1BK343651218549.  He was wearing his seat belt properly.  While proceeding down I-575 in Cobb County, Georgia, the vehicle left the road and hit a cluster of trees. Although the impact itself was survivable, Mr. Andrews died because the occupant restraint system of the Mazda 3 catastrophically failed him. The Mazda 3 was equipped with airbags, but the airbags failed to deploy, although they should have.  The Mazda 3 was equipped with a seatbelt, which Micah was

using, but the seatbelt was useless because it completely or almost completely spooled out, causing so much slack it did not restrain him.  Because of these defects, Mr. Andrew's head slammed into the steering wheel, causing fatal injuries. Mr. Andrews is survived by his widow Jamie Lee Andrews and five-year old daughter Sarah Katie Andrews.

### PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

1.

Plaintiff is the surviving spouse of Micah Lee Andrews.  Plaintiff is also the duly-appointed Administratrix of Mr. Andrews' Estate.  Plaintiff resides at 409 Waverly Place Woodstock, Georgia, 30188.  Plaintiff is subject to the jurisdiction and venue of this Court.

2.

Defendant Mazda Motor Corporation ("MMC"), is a foreign corporation. MMC does business in this state, and in Fulton County.  MMC designs, builds, and sells automobiles in the United States and in Georgia.  MMC designed, built, and sold the Mazda 3 that is the subject of this action.

3.

MMC is subject to the jurisdiction of this Court because it transacts business in this state.  It is also subject to jurisdiction in this Court because it regularly does and solicits business in this State, engages in persistent course of conduct in this

State, and derives substantial revenue from goods used or consumed or services rendered in this State.

4.

Venue is proper in this Court as to Defendant MMC because it is a joint tortfeasor with Defendant Mazda Motor of America, Inc. ("MMA"), which is deemed to reside in Fulton County under O.C.G.A. § 14-2-510(b)(1). This action was originally filed in the State Court of Fulton County in Georgia and was removed. Venue is thus proper in this Court under 28 U.S.C.A. § 1441(a).

5.

MMC may be served either by accepting service of process or by registered mail with Summons and Complaint pursuant to Article 10(a) and by Article 5 to The Convention on The Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention, at Mazda Motor Corporation, 3-1 Shinchi, Fuchu-cho, Aki-gun, Hiroshima, 730-8670, Japan.

6.

Defendant MMA is a foreign corporation with its principal place of business at 7755 Irvine Center Drive, Irvine, California 92618. Defendant MMA is the North American wholly-owned subsidiary of Defendant MMC.

7.

MMA is subject to the jurisdiction of this Court because it transacts business in the state and maintains a registered agent in this State.  It is also subject to jurisdiction in this Court because it regularly does and solicits business in this State, engages in persistent course of conduct in this State, and derives substantial revenue from goods used or consumed or services rendered in this State.

8.

Venue is proper in Fulton County as to Defendant MMA pursuant to O.C.G.A. § 14-2-510(b)(1) because MMA maintains a registered agent there.  This action was originally filed in the State Court of Fulton County in Georgia and was removed.  Venue is thus proper in this Court under 28 U.S.C.A. § 1441(a).

9.

MMA's registered agent in Georgia is CT Corporation System, which is located at 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361. MMA may be served with process at that location.

10.

Both Mazda corporate entities referenced above are hereinafter referred to collectively as "Mazda."

11.

Defendant Autoliv, Inc. is a Delaware corporation with its principal executive offices in Stockholm, Sweden at Vasagatan 11, 7th Floor, SE-111 20, Box 70381, SE-107 24.  Autoliv, Inc. is a holding company for its subsidiaries. Autoliv, Inc. may be served with process through its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  Defendant Autoliv, Inc. has a vast number of variously-named subsidiary corporations.  Which of those subsidiaries of Defendant Autoliv, Inc. played what role in designing, making, and selling the vehicle components at issue in this case is presently indecipherable, making it necessary to name as defendants herein a number of such subsidiaries.

12.

Defendant Autoliv ASP, Inc. is a wholly owned subsidiary of Defendant Autoliv, Inc.  Autoliv ASP, Inc. is incorporated under the laws of Indiana.  Its principal place of business is located at 3350 Airport Road M/S A9130, Ogden, Utah 84405.  Autoliv ASP, Inc. may be served with process through its registered agent, CT Corporation, at 1108 E South Union Ave., Midvale, Utah 84047.

13.

Defendant Autoliv AB is a wholly owned subsidiary of Defendant Autoliv, Inc., headquartered in Sweden at Wallentinsvägen 22, 44783 Vårgårda, Sweden.

Autoliv AB may be served by registered mail with Summons and Complaint pursuant to Article 10(a) and by Article 5 of The Hague Convention, at Wallentinsvägen 22, 44783 Vårgårda, Sweden.

14.

Defendant Autoliv Japan Ltd. is a wholly owned Japanese subsidiary of Autoliv, Inc.  Autoliv Japan Ltd. manufactured the driver's seatbelt in Micah Andrews's Mazda 3, and possibly other components of the occupant restraint system.  Autoliv Japan Ltd. is headquartered at 4 F Innotech Bldg. 3-17-6 Shinyokohama, Kohoku-ku,Yokohama, Japan 222-8580.  Autoliv Japan Ltd. may be served by registered mail with Summons and Complaint pursuant to Article 10(a) and by Article 5 to The Convention on The Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention, at 4 F Innotech Bldg. 3-17-6 Shinyokohama, Kohoku-ku,Yokohama, Japan 222-8580.

15.

Autoliv Safety Technology, Inc. is a wholly owned subsidiary of Defendant Autoliv, Inc.  Autoliv Safety Technology, Inc. is incorporated under the laws of Delaware.  Autoliv Safety Technology, Inc. may be served with process through its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

16.

Autoliv Inc., Autoliv ASP, Inc., Autoliv AB, Autoliv Japan Ltd., and

Autoliv Safety Technology, Inc. are subject to the jurisdiction of this Court

because they transact business in the state, regularly do and solicit business in this

State, engage in persistent course of conduct in this State, and derive substantial

revenue from goods used or consumed or services rendered in this State.

17.

The various aforementioned Autoliv corporate entities are hereinafter

referred to collectively as "Autoliv."

18.

Venue is proper in this Court as to all Autoliv entities because they are joint

tortfeasors with Defendant MMA, which is deemed to reside in Fulton County,

Georgia under O.C.G.A. § 14-2-510(b)(1).  This action was originally filed in the

State Court of Fulton County in Georgia and was removed.  Venue is thus proper

in this Court under 28 U.S.C.A. § 1441(a).

19.

Defendant Robert Bosch GmbH is a German corporation with its

headquarters at Robert-Bosch-Platz 1, Gerlingen-Schillerhoehe, Baden-

Wuerttemberg, Germany 70839.   Robert Bosch GmbH may be served either by

accepting service of process or by registered mail with Summons and Complaint

pursuant to Article 10(a) and by Article 5 to The Convention on The Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention, at Robert Bosch GmbH, Robert-Bosch-Platz 1, Gerlingen-Schillerhoehe, Baden-Wuerttemberg, Germany 70839. Defendant Robert Bosch GmbH has a number of variously-named subsidiary corporations and related corporations.   Which of those Bosch corporations played what role in designing, making, and selling the vehicle components at issue in this case is presently indecipherable, making it necessary to name as defendants herein a number of such entities.

20.

Robert Bosch North America Corporation, a wholly owned subsidiary of Robert Bosch GmbH, is organized under the laws of Delaware.  Robert Bosch North America Corporation may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

21.

Robert Bosch LLC is a Delaware Corporation with its principal place of business at 38000 Hills Tech Drive, Farmington Hills, Michigan, 48331.  It may be served with process through its registered agent in Georgia, Corporation Service Company, 40 Technology Parkway, South, Suite 300, Norcross, Georgia 30092.

All of the voting shares of Robert Bosch LLC are owned by Robert Bosch North America Corporation.

22.

Bosch Corporation is a Japanese Corporation with its headquarters at 3-6-7 Shibuya, Shibuya, Tokyo, Japan 150-8360.  Bosch Corporation may be served either by accepting service of process or by registered mail with Summons and Complaint pursuant to Article 10(a) and by Article 5 to The Convention on The Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention, at 3-6-7 Shibuya, Shibuya, Tokyo, Japan 150-8360.

23.

Robert Bosch GmbH, Robert Bosch LLC, Robert Bosch North America Corporation, and Bosch Corporation are subject to the jurisdiction of this Court because they transact business in the state, regularly do and solicit business in this State, engage in persistent course of conduct in this State, and derive substantial revenue from goods used or consumed or services rendered in this State.

24.

Except as otherwise noted, the various aforementioned Bosch corporate entities are hereinafter referred to collectively as "Bosch."

25.

Venue is proper in this Court as to all Bosch entities because they are joint tortfeasors with Defendant MMA, which is deemed to reside in Fulton County, Georgia under O.C.G.A. § 14-2-510(b)(1).  This action was originally filed in the State Court of Fulton County in Georgia and was removed.  Venue is thus proper in this Court under 28 U.S.C.A. § 1441(a).

26.

The John Doe Defendants are additional suppliers of defective components of the defective occupant restraint system, who are currently unknown.  Said Defendants are subject to this Court's jurisdiction because they transact business in this State, regularly do and solicit business in this State, engage in persistent course of conduct in this State, and derive substantial revenue from goods used or consumed or services rendered in this State.  Venue is proper as to the John Doe Defendants because they are joint tortfeasors with MMA, which is deemed to reside in Fulton County under O.C.G.A. § 14-2-510(b)(1).  This action was originally filed in the State Court of Fulton County in Georgia and was removed. Venue is thus proper in this Court under 28 U.S.C.A. § 1441(a).

## OPERATIVE FACTS

27.

On April 12, 2013, Micah Andrews was the restrained driver of his Mazda 3, VIN JM1BK343651218549, traveling northbound on I-575 in Cobb County, Georgia.

28.

At approximately 7:18 p.m., the Mazda 3 left the highway and traveled down an embankment, striking several trees.

29.

During the Mazda 3's frontal impact with the trees, the airbags failed to deploy.  The airbags should have deployed in this wreck.

30.

The Mazda 3's driver's side seatbelt spooled out during the wreck at least thirty inches (30"), causing a dangerous amount of slack into the seatbelt.  Because of this spool out, the seatbelt did not restrain Mr. Andrews.  As a result, Mr. Andrews's head and face slammed into the steering wheel upon the vehicle's impact with the trees.

31.

The Mazda 3's drivers-side seat track also failed.

32.

The occupant restraint system consists of multiple components, including but not limited to the airbag system, the seatbelt, the retractor, the pretensioner, the seat, and the knee bolster. The airbag system included the airbag, airbag control module, sensors, software, and hardware. Those systems catastrophically failed to provide any crash protection to Mr. Andrews.

33.

The Mazda 3 occupant restraint system, as described in Paragraph 34, was defective.

34.

Specific components of the occupant restraint system in the Mazda 3 are defective, including the airbag system, the seatbelt system, and the seat and seat track system.

35.

As a direct and proximate result of the defects noted above, Mr. Andrews suffered personal injuries and conscious pain and suffering, ultimately resulting in his death.

36.

Defendants MMA and MMC designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce Mr. Andrews's Mazda 3.

Defendants MMA and MMC are each liable for all the defects in the Mazda 3 that caused or contributed to causing Mr. Andrews' injuries and death.

37.

Autoliv designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective seatbelt system and airbag components installed in Mr. Andrews's Mazda 3.

38.

Bosch designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective airbag system installed in Mr. Andrews's Mazda 3.

39.

Mr. Andrews's Mazda 3 was defective, unreasonably dangerous, and not fit for its ordinary use when manufactured and at the time of the subject wreck because (a) Mazda chose designs for the occupant restraint system that were not reasonable but were instead unreasonably dangerous, (b) the risks of those designs outweighed the utility of those designs, and (c) other alternative designs that were safer, feasible, and technologically available and would have prevented these injuries were not chosen and used by Mazda.

40.

Mr. Andrews's Mazda 3 was defective, unreasonably dangerous, and not fit for its ordinary use when manufactured and at the time of the subject wreck because (a) Autoliv built and sold to Mazda designs for those parts of the occupant restraint system that were not reasonable but were instead unreasonably dangerous, (b) the risks of those designs outweighed the utility of those designs, and (c) other alternative designs that were safer, feasible, and technologically available and would have prevented these injuries, were not provided to and sold to Mazda by Autoliv.

41.

Mr. Andrews's Mazda 3 was defective, unreasonably dangerous, and not fit for its ordinary use when manufactured and at the time of the subject wreck because (a) Bosch built and sold to Mazda designs for those parts of the occupant restraint system that were not reasonable but were instead unreasonably dangerous, (b) the risks of those designs outweighed the utility of those designs, and (c) other alternative designs that were safer, feasible, and technologically available and would have prevented these injuries were not provided to and sold to Mazda by Bosch.

42.

Mazda was negligent in designing, building, using, and/or selling the Mazda 3 with the occupant restraint system which Mazda caused to be installed in that vehicle.

43.

Autoliv was negligent in designing, building, using, and/or selling those parts of the occupant restraint system built and sold by Autoliv.

44.

Bosch was negligent in designing, building, using, and/or selling those parts of the occupant restraint system built and sold by Bosch.

45.

The injuries and death of Mr. Andrews were proximately caused by the aforesaid negligence of Defendants and by the aforesaid defective designs for which Defendants are responsible.

46.

Defendants could reasonably have foreseen and did, in fact, foresee the occurrence of frontal collisions such as the one described in this Complaint.

47.

The acts and omissions of all Defendants combined to proximately cause the injuries to and death of Mr. Andrews.  Accordingly, Mazda, Autoliv, and Bosch are jointly and severally liable for Plaintiff's injuries and damages.

## **COUNT ONE**

### **(Strict Product Liability of Mazda)**

48.

Plaintiff incorporates herein paragraphs 1 through 47 of this Complaint as if re-alleged in full.

49.

Defendant Mazda is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the injuries suffered by Mr. Andrews because the risks inherent in the design of the occupant restraint system in the Mazda 3 outweighed any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended.  The defects in the Mazda 3's occupant restraint system include, but are not limited to, the following:

1) The occupant restraint system in the Mazda 3 was designed and either manufactured by Mazda or by Mazda's suppliers according to Mazda's specifications in such a manner that it failed to properly

restrain Mr. Andrews in a frontal collision in which it should have properly restrained Mr. Andrews sufficiently to protect him from serious injury.  Those defects include but are not limited to the failure of the airbags to deploy, the spool out of the driver's seatbelt, and the failure of the seat.

2)   The Mazda 3 was not adequately tested by Mazda to determine whether prospective owners, users and occupants of it would be exposed to an unreasonable risk of physical harm during frontal collisions in foreseeable impacts because of the design of the occupant restraint system in the Mazda 3;

3)   Mazda knew, or should have known, from the testing that was performed on the Mazda 3 and other vehicles with the same or similar restraint system that this system could fail to function properly in frontal collisions; and

4)   Mazda knew, or should have known, from other real world wrecks involving the Mazda 3 and other vehicles with the same or similar occupant restraint systems that the subject system as designed could fail to perform properly in frontal collisions.

50.

The defects of the occupant restraint system proximately caused the injuries, damages and losses that Plaintiff has suffered.

51.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

## COUNT TWO

### (Negligence of Mazda)

52.

Plaintiff incorporates herein paragraphs 1 through 51 of this Complaint as if re-alleged in full.

53.

Defendant Mazda, as a product designer and manufacturer, owed a duty to the consuming public in general, and Micah Andrews in particular, to exercise reasonable care to design, test, manufacture, inspect, market, distribute, and recall and/or repair a product so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

54.

At the time Defendant Mazda manufactured, marketed, distributed, and sold the 2005 Mazda 3, Defendant could reasonably have foreseen and did, in fact,

foresee the occurrence of frontal collisions such as the one described in this Complaint.

55.

Defendant Mazda breached its duty to exercise reasonable care as described in the paragraphs set forth above.

56.

Mazda's negligence, along with the acts and omissions of the other Defendants, proximately caused Plaintiff's injuries and damages.

57.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

**COUNT THREE**

**(Strict Product Liability of Autoliv)**

58.

Plaintiff incorporates herein paragraphs 1 through 57 of this Complaint as if re-alleged in full.

59.

Defendant Autoliv is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the injuries suffered by Micah Andrews and Plaintiff because the risks inherent in the design of the occupant restraint system in the

- 20 -

Mazda 3 outweighed any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended.  The defects in the Mazda 3's occupant restraint system include, but are not limited to, the following:

1) The seatbelt system in the Mazda 3 was designed and manufactured by Autoliv in such a manner that it spools out during frontal impact wrecks and fails to restrain the occupants in order to protect them from serious injury or death in such collision.

2) The airbag module was also designed and manufactured in such a manner that it fails to deploy in frontal impact wrecks and fails to restrain the occupants in order to protect them from serious injury or death in such collision.

3) The seatbelt system was not adequately tested by Autoliv to determine whether prospective owners, users and occupants of it would be exposed to an unreasonable risk of physical harm during frontal collisions in foreseeable impacts because of the design of the seatbelt system in the Mazda 3.

4) The airbag module was not adequately tested by Autoliv to determine whether prospective owners, users and occupants of it would be exposed to an unreasonable risk of physical harm during frontal

collisions in foreseeable impacts because of the design of the airbag
module in the Mazda 3.

5)      Autoliv knew, or should have known, from the testing that was
        performed on these components in the Mazda 3 and on other seatbelt
        systems and airbag modules with the same or similar design that those
        seatbelt systems and airbag modules could fail to function properly in
        frontal collisions.

6)      Autoliv knew, or should have known, from other real world wrecks
        involving the components in the Mazda 3 and other seatbelt systems
        and airbag modules with the same or similar design, that those seatbelt
        systems and airbag modules as designed could fail to perform
        properly in frontal collisions.

60.

The defects of the seatbelt system and airbag module combined with other
defects in the airbag system and the occupant restraint system caused the injuries,
damages, and losses that Plaintiff has suffered.

61.

Defendants are jointly and severally liable for the injuries and damages
suffered by Plaintiff.

- 22 -

## <u>COUNT FOUR</u>

### (Negligence of Autoliv)

62.

Plaintiff incorporates herein paragraphs 1 through 61 of this Complaint as if re-alleged in full.

63.

Autoliv, as a product designer and manufacturer, owed a duty to the consuming public in general, and Mr. Andrews in particular, to exercise reasonable care to design, test, manufacture, inspect, market, distribute, and recall and/or repair the occupant restraint system so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

64.

At the time Autoliv manufactured, supplied, marketed, distributed, and sold the occupant restraint system, including the seatbelt and airbag module, to Defendant Mazda for the 2005 Mazda 3, Autoliv could reasonably have foreseen and did, in fact, foresee the occurrence of frontal collisions such as the one described in this Complaint.

65.

Autoliv breached its duty to exercise reasonable care as described in the paragraphs set forth above.

- 23 -

66.

Autoliv's negligence, along with the acts and omissions of the other Defendants, proximately caused Plaintiff's injuries and damages.

67.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

## COUNT FIVE

### (Strict Liability of Bosch)

68.

Plaintiff incorporates herein paragraphs 1 through 67 of this Complaint as if re-alleged in full.

69.

Defendant Bosch is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the injuries suffered by Mr. Andrews because the risks inherent in the design of the airbag system in the Mazda 3 outweighed any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended. The defects in the Mazda 3's airbag system include, but are not limited to, the following:

1)   The airbag system in the Mazda 3 was designed and manufactured by Bosch in such a manner that it failed to deploy in a frontal collision in which it should have deployed in order to protect the occupants from serious injury or death in such collisions.

2)   The airbag system was not adequately tested by Bosch to determine whether prospective owners, users and occupants of it would be exposed to an unreasonable risk of physical harm during frontal collisions in foreseeable impacts because of the design of the airbag system in the Mazda 3.

3)   Bosch knew, or should have known, from the testing that was performed on the airbag system in the Mazda 3 and on the same or similar airbag systems that those systems could fail to function properly in frontal collisions.

4)   Bosch knew, or should have known, from other real world wrecks involving the airbag system in the Mazda 3 and the same or similar airbag systems, that those systems as designed could fail to perform properly in frontal collisions.

70.

The defects of the airbag system combined with the other defects of the occupant restraint system caused the injuries, damages and losses that Plaintiff has suffered.

71.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

## **COUNT SIX**

### **(Negligence of Bosch)**

72.

Plaintiff incorporates herein paragraphs 1 through 71 of this Complaint as if re-alleged in full.

73.

Bosch, as a product designer and manufacturer, owed a duty to the consuming public in general, and Mr. Andrews in particular, to exercise reasonable care to design, test, manufacture, inspect, market, distribute, and recall and/or repair a product so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

74.

At the time Bosch manufactured, marketed, distributed, and sold the airbag system in the 2005 Mazda 3, Bosch could reasonably have foreseen and did, in fact, foresee the occurrence of frontal collisions such as the one described in this Complaint.

75.

Bosch breached its duty to exercise reasonable care as described in the paragraphs set forth above.

76.

Bosch's negligence, along with the acts and omissions of the other Defendants, proximately caused Plaintiff's injuries and damages.

77.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

## COUNT SEVEN

**(Strict Liability Against the John Doe Defendants 1-5)**

78.

Plaintiff incorporates herein paragraphs 1 through 77 of this Complaint as if re-alleged in full.

79.

The John Doe Defendants, who are suppliers of defective components in the Mazda 3's occupant restraint system, are strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the injuries suffered by Mr. Andrews because the risks inherent in the design of the occupant restraint system in the Mazda 3 outweighed any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended.

80.

The defects of the occupant restraint system caused the injuries, damages and losses that Plaintiff has suffered.

81.

Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

## **COUNT EIGHT**

### **(Negligence of the John Doe Defendants 1-5)**

82.

Plaintiff incorporates herein paragraphs 1 through 81 of this Complaint as if re-alleged in full.

83.

The John Doe Defendants, as products designer and manufacturers, owed a
duty to the consuming public in general, and Mr. Andrews in particular, to exercise
reasonable care to design, test, manufacture, inspect, market, distribute, and recall
and/or repair a product so as to make it free of unreasonable risk of harm to
owners, users, and occupants in foreseeable situations.

84.

At the time the John Doe Defendants manufactured, marketed, distributed,
and sold the occupant restraint system in the 2005 Mazda 3, they could reasonably
have foreseen and did, in fact, foresee the occurrence of frontal collisions such as
the one described in this Complaint.

85.

The John Doe Defendants breached their duty to exercise reasonable care as
described in the paragraphs set forth above.

86.

The John Does' negligence, along with the acts and omissions of the other
Defendants, proximately caused Plaintiff's injuries and damages.

87.

Defendants are jointly and severally liable for the injuries and damages
suffered by Plaintiff.

## COUNT NINE

### (Punitive Damages Against Mazda)

88.

Plaintiff incorporates herein paragraphs 1 through 87 of this Complaint as if re-alleged in full.

89.

Mazda acted with conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1, in designing, testing, manufacturing, inspecting, marketing, distributing, selling, and failing to effectively recall or repair the Mazda 3 because Mazda had knowledge of the risks to life and limb described above.  Such conduct warrants the imposition of punitive damages against Mazda.

90.

Defendant Mazda's negligence was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1.  Such conduct warrants the imposition of punitive damages against Mazda.

91.

Punitive damages should be imposed against Mazda and in favor of the Estate of Mr. Andrews.

## COUNT TEN

### (Punitive Damages Against Autoliv)

92.

Plaintiff incorporates herein paragraphs 1 through 91 of this Complaint as if re-alleged in full.

93.

Autoliv acted with conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1, in designing, testing, manufacturing, inspecting, marketing, distributing, selling, and failing to effectively recall or repair the seatbelt system and airbag components in the Mazda 3 because Autoliv had knowledge of the risks to life and limb described above. Such conduct warrants the imposition of punitive damages against Autoliv.

94.

Autoliv's negligence was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1.  Such conduct warrants the imposition of punitive damages against Autoliv.

95.

Punitive damages should be imposed against Autoliv and in favor of the Estate of Mr. Andrews.

## COUNT ELEVEN

### (Punitive Damages Against Bosch Entities,
### Except Robert Bosch GmbH)

96.

Plaintiff incorporates herein paragraphs 1 through 95 of this Complaint as if re-alleged in full.

97.

Bosch acted with conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1, in designing, testing, manufacturing, inspecting, marketing, distributing, selling, and failing to effectively recall or repair the airbag system in the Mazda 3 because Bosch had knowledge of the risks to life and limb described above. Such conduct warrants the imposition of punitive damages against Bosch.

98.

Bosch's negligence was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consumer public as defined under O.C.G.A. § 51-12-5.1. Such conduct warrants the imposition of punitive damages against Bosch.

99.

Punitive damages should be imposed against all Bosch entities, except Robert Bosch GmbH, and in favor of the Estate of Mr. Andrews.

99a.

Plaintiff expressly does not seek punitive damages against Robert Bosch GmbH.

## **DAMAGES & PRAYER FOR RELIEF**

100.

Plaintiff incorporates as if re-alleged herein in full paragraphs 1 through 99a. of this Complaint.

101.

As a direct result of the defectively designed airbag and occupant restraint systems of the 2005 Mazda 3, the Defendants' negligence and failure to remedy or recall those designs, Micah Andrews suffered conscious pain and suffering and an ultimately death.

102.

Plaintiff Jaime Lee Andrews as Surviving Spouse of Decedent Micah Andrews, claims general damages against all Defendants, jointly and severally, for the full value of the life of Micah Andrews, both economic and intangible, pursuant to O.C.G.A. §§ 51-4-2 and other applicable law.

103.

Plaintiff Jaime Lee Andrews as Administrator for the Estate of Micah Lee Andrews, claims general damages against all Defendants jointly and severally,

pursuant to O.C.G.A. § 51-4-5 and other applicable law, for all elements of the

pain and suffering, physical and mental, including post-impact shock, fright and

terror, endured by Micah Andrews from the time of the wreck up until the time of

his death, in an amount determined by the enlightened conscience of the jury after

hearing the evidence at trial.

104.

Plaintiff Jaime Lee Andrews as Administrator for the Estate of Micah Lee

Andrews, also claims special damages for all medical expenses, funeral expenses,

and property damage incurred on behalf of the estate in an amount which reflects

the reasonable value of those services and property as established by the evidence

at trial.

105.

Plaintiff Jaime Lee Andrews as Administrator for the Estate of Micah Lee

Andrews, also claims punitive damages against all Defendants, except Robert

Bosch GmbH, in an amount determined by the enlightened conscience of the jury

to be sufficient to punish, penalize, and deter Defendants in light of the aggravated

nature of their conduct and in light of their financial circumstances.

106.

Plaintiff seeks damages from Defendants to recover all elements of

compensatory and punitive damages allowed by law for the claims alleged in this

Complaint against all defendants, except she does not seek punitive damages against Robert Bosch GmbH.

WHEREFORE, Plaintiff prays for the following:

A.   That process and Summons issue as provided by law, requiring Defendants to appear and answer Plaintiff's Complaint;

B.   That service be had upon Defendants as provided by law;

C.   That Plaintiff have and recover all damages, both compensatory and punitive, to which they are entitled to recover under Georgia law;

D.   That the Court award and enter a judgment in favor of Plaintiff Jaime Lee Andrews, as Surviving Spouse of Decedent Micah Andrews, against Defendants, jointly and severally, in an amount to be proven at trial for the full value of the life of Micah Andrews as shown by the evidence; as well as such other damages authorized by law, plus interest and costs;

E.   That the Court award and enter a judgment in favor of plaintiff Jaime Lee Andrews, as Administrator for the Estate of Micah Andrews, against defendants, jointly and severally, in an amount shown by the evidence to compensate Plaintiff for Micah Andrews' pre-and post-impact fright, shock, and terror;

mental and physical pain and suffering; personal injuries;

property damage; funeral and burial expenses; plus punitive

damages against all Defendants except Robert Bosch GmbH; as

well as all other damages authorized by law, plus interest and

costs;

F.   That the Court award and order punitive damages against all

Defendants except for Robert Bosch GmbH; and

G.   That Plaintiff has such other and further relief as the Court

deems just and proper.

Respectfully submitted this 18th day of March, 2015.

BUTLER WOOTEN CHEELEY & PEAK LLP

BY: s/  Tedra C. Hobson
JAMES E. BUTLER, JR.
  jim@butlerwooten.com
  Georgia Bar No. 099625
ROBERT D. CHEELEY
  bob@butlerwooten.com
  Georgia Bar No. 122727
TEDRA C. HOBSON
  tedra@butlerwooten.com
  Georgia Bar No. 881085
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 32101713 Fax

*[signatures continued on next page]*

- 36 -

BALLARD & FEAGLE, LLP

By:  /s Gregory R. Feagle
WILLIAM L. BALLARD
   bill@ballardandfeagle.com
   Georgia Bar No. 035625
GREGORY R. FEAGLE
   greg@ballardandfeagle.com
   Georgia Bar No. 256913
1180 West Peachtree St., Suite 2250
Atlanta, Georgia 30309
(404) 873-1220

**ATTORNEYS FOR PLAINTIFF**

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

s/ Tedra C. Hobson
JAMES E. BUTLER, JR.
  Georgia Bar No. 099625
ROBERT D. CHEELEY
  Georgia Bar No. 122727
TEDRA C. HOBSON
  Georgia Bar No. 881085
Butler Wooten Cheeley & Peak LLP
2719 Buford Highway
Atlanta, Georgia  30324
(404) 321-1700
(404) 321-1713 Fax

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 18, 2015, I electronically filed **SECOND AMENDMENT TO PLAINTIFF'S COMPLAINT FOR DAMAGES** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

C. Bradford Marsh, Esq.
Ashley W. Broach, Esq.
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St., N.E., Suite 300
Atlanta, GA 30309

Douglas G. Scribner, Esq.
Jenny A. Mendelsohn, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Michael Sullivan, Esq.
Vonnetta L. Benjamin, Esq.
Womble Carlyle Sandridge
   & Rice, LLP
Atlantic Station
271 – 17th Street, N.W., Suite 2400
Atlanta, GA 30363-1017

This 18th day of March, 2015.

BY: s/ Tedra C. Hobson
JAMES E. BUTLER, JR.
   Georgia Bar No. 099625
ROBERT D. CHEELEY
   Georgia Bar No. 122727
TEDRA C. HOBSON
   Georgia Bar No. 881085
Butler Wooten Cheeley & Peak LLP
2719 Buford Highway
Atlanta, Georgia 30324
(404) 321-1700
(404) 321-1713 Fax