IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMIE LEE ANDREWS, as ) <br> Surviving Spouse of ) <br> MICAH LEE ANDREWS, Deceased, ) <br> And JAMIE LEE ANDREWS, as ) <br> Administrator of the Estate of ) <br> MICAH LEE ANDREWS, Deceased, ) <br> ) <br> v. ) <br> ) <br> MAZDA MOTOR CORPORATION, ) <br> MAZDA MOTOR OF AMERICA, INC., ) <br> AUTOLIV JAPAN, LTD., and ) <br> JOHN DOES 1-5, ) <br> ) <br>     Defendants. ) | CIVIL ACTION FILE NO. <br><br> 1:14-cv-03432WSD |

**DEFENDANT MAZDA MOTOR CORPORATION AND MAZDA MOTOR OF AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW MAZDA MOTOR CORPORATION AND MAZDA MOTOR OF AMERICA, INC. (hereinafter "Mazda" or "the Mazda Defendants") and hereby file this, the Reply in Support of their Motion for Partial Summary Judgment, showing this Court as follows:

**REPLY**

Rather than addressing the two discrete issues which the Mazda Defendants put before the Court in their Motion for Partial Summary Judgment, Plaintiff used

1

the Response Brief to argue her entire case. Not only is this completely inappropriate, but Plaintiff has also taken great liberties with the evidence of record and made a number of unsubstantiated assumptions. For example, in an attempt to discredit Mazda's biomechanical expert Dr. Gwin, Plaintiff states that Gwin "used the word 'conscious' because the Mazda lawyers told her to." (Response, p. 6, fn 1). Dr. Gwin did not make that statement (or even one close to it) at her deposition. Instead, Dr. Gwin's actual testimony is that she does not use the word 'conscious' in her practice, "but because that was the – the word that Dr. Burton used, I used it, and because that's what laypeople use." (Gwin Depo., p. 174). This type of blatant mischaracterization of testimony and evidence occurs throughout Plaintiff's entire response.

When the actual issues raised by the Mazda Defendants are considered in light of the true facts relevant to those issues, it is clear Defendants are entitled to summary judgment on the claims for conscious pain and suffering and punitive damages.

### I. Post-Impact Pain and Suffering

Plaintiff has not demonstrated she is entitled to recover for post-impact pain and suffering related to Mr. Andrews' death. It is undisputed that where "there is no evidence the decedent exhibited consciousness of pain, recovery for the

decedent's pain and suffering is not permitted." Grant v. Georgia Pac. Corp., 239 Ga. App. 748, 751 (1999). Thus, the question is not how long Mr. Andrews was alive after the accident but whether, medically, he was able to experience "consciousness of pain." The undisputed medical evidence demonstrates Andrews did not experience this "consciousness of pain" and Plaintiff has not come forward with evidence to the contrary.

Burton's opinion, which is the only evidence Plaintiff has regarding Mr. Andrews' consciousness after the accident, is premised solely on William Kemp's assumption that Mr. Andrews responded to Kemp's question by slightly moving and letting out what Kemp described as a groan. (Kemp Depo., p. 80-81; Burton Depo., p 76, 162). The fact that Mr. Andrews may have moved or made a noise is not indicative of consciousness, as Burton admits that spontaneous movement and auditory sounds can occur regardless of consciousness. (Burton Depo., p. 77-79). Instead, Burton's entire opinion on this issue is predicated on the question of "if" Kemp's assumption regarding Mr. Andrews' conduct is accurate. (Id. at p. 79-80). However, Kemp has no medical training and does not have the medical knowledge to conclude that Mr. Andrews was conscious or responding to his questioning.

(Gwin Depo., p. 177-178).[1] Kemp admitted as much when he testified that he "can only assume" Mr. Andrews was responding to him. (Kemp Depo., p. 81).

Burton's testimony on this issue is too speculative to support Plaintiff's claim for post-impact pain and suffering, and Defendant's Motion should be granted. As Defendants outlined in their opening Brief, the medical evidence demonstrates that Mr. Andrews was not conscious after the accident. (Brief, p. 8-10, 13-14). The subjective assumptions of a lay witness do not create an issue of fact from which a reasonable jury could conclude Mr. Andrews experienced the "consciousness of pain" after the accident.

## II. Pre-Impact Pain and Suffering

As Defendant argued in its Brief and Plaintiff appears to have conceded, no act or omission of Mazda caused Plaintiff to leave the roadway, travel down the embankment and encounter a tree head on. Instead, Plaintiff argues Mr. Andrews should recover for the "shock and pain throughout the failure of his restraint system." (Response, p. 23). However, in order to recover for this pre-impact pain and suffering, there must be evidence that the decedent was aware of the impending collision. Compare Crockett v. Norfolk Southern Ry. Co., 95 F. Supp.

---

[1] Burton himself admits that distinguishing between a moan and agonal breathing is an interpretation that has to be made by the person who heard it. (Burton Depo., p. 79).

4

2d 1353 (N.D. Ga. 2000) (Moye, J.) (noting that "if the skid marks were not made by [the decedent's] vehicle, there is no evidence he was aware of the impending collision or that he could have experienced fright or mental suffering") and <u>Byrd v. Wal-Mart Transp., LLC</u>, 2009 WL 3429562, *5 & fn. 5 (S.D. Ga. 2009) (Pope, J.) (denying recovery for conscious pain and suffering for individuals in one of the vehicles involved in an accident where there was no evidence the decedent experienced pain or suffering after the collision and no evidence she was aware of the impending collision with the other vehicle, including no evidence the vehicle veered or turned before impact) <u>with</u> <u>Beam v. Kingsley</u>, 255 Ga. App. 715, 716 (2002) (jury question of conscious pain and suffering where the "evidence showed that [the decedent] was aware of the impending collision and swerved to avoid it").

In this case, there is no evidence to demonstrate that Mr. Andrews was aware of the impending collision with the tree or any events occurring thereafter. No one knows why Mr. Andrews' vehicle left the roadway.[2] However, members of the law enforcement unit that investigated the accident did not find any evidence that Mr. Andrews attempted to swerve or brake as his vehicle left the road. (Rogers

---

[2] Plaintiff's citation to an unauthenticated 911 recording made by an unidentified caller is not affirmative evidence as to why Andrews left the roadway. This unidentified caller states that the driver was "scared" by a "box or something in the road." The caller's explanation as to Mr. Andrews being "scared" as an explanation for why he exited the roadway is nothing more than speculation or conjecture. This is not properly considered in the context of this Motion.

Depo., p. 72, 100-10; Condry Depo., p. 37; Lyons Depo., p. 28). Kemp told the 911 operator that Mr. Andrews "just went flying right off the road." (Kemp Depo., p. 72). In an accident of this type, the reasonable inference is that the driver would make every effort to stop the vehicle and avoid going off the road. There is no such evidence in this case. In <u>Woodward v. Ford Motor Co.</u>, 2007 WL 4125519 (N.D. Ga. 2007), relied heavily upon by Plaintiff, one of the important facts relied upon by the Court in allowing the pre-impact pain and suffering claim to go to the jury was that "[t]he decedent anticipated the accident that caused her death." <u>Id.</u> at *2. Here, Plaintiff has no evidence to demonstrate that Mr. Andrews anticipated the accident and the physical evidence observed by those investigating the accident allows a reasonable jury to infer that, for whatever reason, Mr. Andrews did not anticipate the accident that caused his death. Without this, Plaintiff cannot recover for pre-impact pain and suffering.

### III. Punitive Damages

The majority of Plaintiff's Response outlines Plaintiff's claim for design and manufacturing defects in the occupant restraint system, notwithstanding the fact that Mazda did not move for summary judgment on those points. Instead, Mazda is seeking summary judgment on the punitive damages claim, which is separate from the defect claim and requires proof of willful or wanton conduct by clear and

convincing evidence. O.C.G.A. § 51-12-5.1; In re Estate of Burton, 265 Ga. 122 (1995). Plaintiff has failed to establish such evidence exists and summary judgment should be granted.

As a general rule, punitive damages are not appropriate in cases where a manufacturer complies with regulatory standards. Welch v. General Motors Corp., 949 F. Supp. 843, 845 (1996) (N.D. Ga. 1996) (Ward, J.). In Welch, there was evidence that the subject car complied with the FMVSS and no evidence that the manufacturer believed the vehicle contained a negligent or dangerous brake system. Id. From that, the Court granted summary judgment on Plaintiff's claim for punitive damages. Id.; see also Hernandez v. Crown Equipment Corp., (92 F.Supp. 3d 1325) (M.D. Ga. 2015) (Lawson, J.) (granting summary judgment to a forklift manufacturer that complied with industry standards set by ANSI and regulations promulgated by OSHA, even where the manufacturer was aware of 741 prior incidents); see also Stone Man, Inc. v. Green, 435 S.E.2d 205, 206 (Ga. 1993) (reversing award of punitive damages on the grounds that compliance with county, state, and federal environmental and safety regulations "does tend to show that there is no clear and convincing evidence of 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.'") (Citing General

7

Refractories Co. v. Rogers, 240 Ga. 228, 230, 239 S.E.2d 795 (1977)); see Richards v. Michelin Tire Corp., 21 F.3d 1048, 1059 (11th Cir. 1994) (holding evidence insufficient to support award of punitive damages in light of compliance with federal safety standards). Similarly here, it is undisputed that Mazda complied with the applicable regulatory standards in the design and manufacture of the subject model year Mazda3 and, thus, Plaintiff cannot recover punitive damages. (Exhibit 2 to Hinger Depo., p. 13, stating "the subject airbag and seatbelt systems were designed and tested to meet and exceed the applicable Federal Motor Vehicle Safety Standards (FMVSS). Certification and testing of the vehicle, seatbelt and airbag system confirms the appropriateness and performance of the design.").

There is no evidence Mazda knew or believed that the occupant restraint system in the model year Mazda3 was negligent or dangerous such that the rule should be ignored in this case. Plaintiff's reliance on one email between Autoliv and Mazda dated January 8, 2008 does not establish evidence sufficient to impose punitive damages. Contrary to what Plaintiff asserts, the January 8, 2002 email makes no reference to a torsion bar or a load limiter, and provides no explanation as to why the results were being observed. (Prentkowski Depo. Ex. 128). Based on this email alone, Plaintiff argues that Mazda knew "people would slam into the steering wheel because of the weak torsion bar in the retractor." (Response, p. 12).

Such an assumption is not warranted based on the language of the email, and there is no citation to any deposition testimony which would in any way support Plaintiff's unfounded assertion.

The FMVSS testing for the occupant restraint system shows that the subject vehicle complied with the applicable regulations. (Hinger Depo. Ex. 2, p. 7). Furthermore, the NCAP frontal crash rating shows Mazda achieved four star performance for frontal crashes, which is an acceptable occupant protection rating, identical to several other vehicles in its class. (Prentkowski Depo., p. 109-110; Prentkowski Depo. Ex. 130; Hinger Depo. Ex. 2, p. 6-7). Plaintiff has pointed to no evidence to demonstrate that any alleged issue identified in the 2002 email was an ongoing problem which Mazda ignored.

Plaintiff's reliance on an Autoliv internal memo for the proposition that Mazda knew it "needed" to change to higher load level is equally unconvincing.[3] The document is an Autoliv document and there is no testimony regarding this document or who at Mazda allegedly reported this information to Autoliv. A description by Autoliv of what an unidentified individual at Mazda allegedly stated is clearly hearsay which is inadmissible and cannot be used to defeat Mazda's

---

[3] Contrary to what Plaintiff argues, nowhere in this document does Autoliv write Mazda "knew [it] needed to" change anything. (Response p. 13, 25). This is another example of the great liberties Plaintiff has taken with the documents and testimony in this case.

summary judgment motion. On a substantive level, the fact that a different level torsion bar exists or that Mazda may have considered using such a torsion bar does not demonstrate evidence sufficient to impose punitive damages. From a system performance standpoint, a higher level torsion bar "doesn't necessarily mean better protection for the occupant." (Prentkowski Depo., p. 87). Further, consideration of the torsion bar must be done in the context of crash testing and the torsion bar itself should not be reviewed in isolation. (Hinger Depo. p. 114). Testing of the occupant restraint system in the subject motor vehicle showed that it met and exceeded Federal standards. (Hinger Depo. Ex. 3, p. 11-13). These facts negate any argument that the change in design of the torsion bar in a subsequent model year is evidence of willful or wanton conduct.

Mack Trucks, Inc. v. Conkle, cited by Plaintiff, is distinguishable. In that case, there was evidence "Mack's engineering division repeatedly informed other divisions of the corporation that the frame rail…was inadequate and should be replaced with a reinforced frame." 263 Ga. 539, 544 (1993). There is nothing in this case that even comes close to the conduct of the defendant in Mack Truck. Instead, the undisputed evidence shows that appropriate testing was done on the model year Mazda3 and that the Mazda3 obtained a 4 star performance on the NCAP system. (Prentkowski, p 119, 122-123; Hinger Depo. Ex. 3 p. 8, 10, 19).

One email from 2002, taken out of context by Plaintiff and with no explanation as to the contents or the relationship to the alleged defect, is not evidence of willful or wanton behavior by Mazda sufficient to allow the claim for punitive damages to go to the jury.

Plaintiff also relies on her experts' testimony related to the design and testing of the UFS cover to support her claim for punitive damages. (Response, p. 17-19, 25).[4] However, for each allegation of negligence or fault with relation to the design and testing of the cover, Mazda has expert testimony to support its design and testing. (See generally Deposition of John Hinger, Expert Report of John Hinger (Ex. 3 to Hinger Depo.)). Competing testimony from expert witnesses regarding the product, testing and the availability and feasibility of other designs are expected in any product liability case. This type of competing testimony does not, on its own, give rise to a claim for punitive damages. If it did, every product

---

[4] On pages 17-19 of Plaintiff's Response, she describes the facts which she claims support the imposition of punitive damages as it relates to the air bag system. However, many of the statements are without any citation to the record. (See e.g. p. 18, paragraph beginning with "Second,…"). Plaintiff also mischaracterizes her own expert's testimony several times. (See Response, p. 19, citation to p. 123 of the Caruso Deposition for the proposition that "Mazda does not have any standard regarding how long a sensor must survive in its laboratory testing." Caruso actually testified that he "did not see any specifications from Mazda regarding" survivability of the sensor.) (Caruso Depo., p. 123). Response, p. 19, citation to p. 52 Caruso testimony for the proposition that Mazda "does not even collect data on how long the sensors survive." Caruso actually testified that the "data was not available to me." (Caruso Depo., p. 52).

liability case would give rise to a claim for punitive damages. Instead, Plaintiff must point to testimony or evidence that Mazda engaged in some conduct that was willful, wanton or done with conscious indifference to the consequences. Plaintiff cannot satisfy this burden with respect to the airbag system, or any component of the occupant restraint system, and summary judgment is appropriate in favor of Defendant on the issue of punitive damages.[5]

Respectfully submitted this 12th day of May, 2016.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By: */s/ Myrece R. Johnson*
C. Bradford Marsh
Georgia Bar No. 471280
Ashley W. Broach
Georgia Bar No. 083593
Myrece R. Johnson
Georgia Bar No. 940301
Daniel J. Kingsley
Georgia Bar No. 541547

*Attorneys for Defendants*
*Mazda Motor Corporation &*
*Mazda Motor of America, Inc.*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231

---

[5] Indeed, while Plaintiff describes the testing related to the airbag system as "grossly inadequate" Georgia case law is clear that even gross negligence does not support the imposition of punitive damages. Mdc Blackshear v. Littell, 273 Ga. 169, 173 (2000).

Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.marsh@swiftcurrie.com
ashley.broach@swiftcurrie.com
myrece.johnson@swiftcurrie.com
daniel.kingsley@swiftcurrie.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANT MAZDA MOTOR CORPORATION AND MAZDA MOTOR OF AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** upon all parties to this matter via First Class United States Mail and electronic service through ECF filing system as follows:

James E. Butler, Jr.
Robert D. Cheeley
Tedra C. Hobson
BUTLER WOOTEN CHEELEY & PEAK LLP
2719 Buford Highway
Atlanta, GA 30324

Douglas G. Scribner
Jenny A. Mendelsohn
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

William L. Ballard
Gregory R. Feagle
BALLARD & FEAGLE, LLP
1180 West Peachtree Street
Suite 2250
Atlanta, GA 30309

Respectfully submitted this 12<u>th</u> day of May, 2016.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By: */s/ Myrece R. Johnson*
C. Bradford Marsh
Georgia Bar No. 471280
Ashley W. Broach
Georgia Bar No. 083593

                    Myrece R. Johnson
                    Georgia Bar No. 940301
                    Daniel J. Kingsley
                    Georgia Bar No. 541547

                    *Attorneys for Defendants*
                    *Mazda Motor Corporation &*
                    *Mazda Motor of America, Inc.*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.marsh@swiftcurrie.com
ashley.broach@swiftcurrie.com
myrece.johnson@swiftcurrie.com
daniel.kingsley@swiftcurrie.com

3176973v.1