IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMIE LEE ANDREWS, as Surviving
Spouse of MICAH LEE ANDREWS,
Deceased, and JAMIE LEE ANDREWS,
as Administrator of the Estate of
MICAH LEE ANDREWS, Deceased,

    Plaintiff,

v.

AUTOLIV JAPAN, LTD.,

    Defendant.

CIVIL ACTION FILE NO.

1:14-cv-3432-SCJ

## ORDER

This matter appears before the Court on the various pending <u>Daubert</u>

motions/motions to exclude expert witness opinions filed by the parties.  Doc.

Nos. [360], [362], [363], [364], and [365]. [1]

_____

[1] All record citations (including transcript and depositions) are to the CM/ECF
electronic docket unless otherwise noted, and all page numbers are derived from the
headers imprinted by the Court's docketing software.  Transcripts are cited as
numbered by the court reporter, utilizing a "Tr." citation.

## I. BACKGROUND

This case involves strict liability and negligence causes of actions following the death of Mr. Micah Andrews after his 2005 Mazda 3 left the highway and hit a cluster of trees.  Doc. No. [90].  Plaintiff alleges that "Mr. Andrews died because the occupant restraint system of the Mazda 3 catastrophically failed him."  Id. at p. 2.  Plaintiff further alleges that "[t]he Mazda 3 was equipped with a seatbelt, which [Mr. Andrews] was using, but the seatbelt was useless because it completely or almost completely spooled out, causing so much slack it did not restrain him."  Id. at p. 3.  Plaintiff also alleges that Defendant Autoliv Japan, Ltd. ("Autoliv") "designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective seatbelt system and airbag components installed in Mr. Andrews's Mazda 3."  Id. ¶ 37.

The parties in this case have elected to proceed by bench trial.  Doc. No. [367].

A review of the record shows that on March 8, 2019, the parties filed their motions to exclude/Daubert motions in accordance with Local Rules 7.2(F) and 26.2(C), NDGa.   More specifically, Plaintiff filed a Motion to Exclude Certain Opinions of William Van Arsdell under Federal Rule of Evidence 702 and

Daubert (Doc. No. [360]) and a Motion to Exclude Certain Opinions of Elizabeth Raphael Under Federal Rule of Evidence 702 and Daubert (Doc. No. [362]). Defendant Autoliv filed Motions to Exclude the Alternative Design and Supplemental Opinions of Steven Meyer.  Doc. No. [363], [364].   Defendant Autoliv also filed a Motion to Exclude the Supplemental Opinions of Chris Caruso.  Doc. No. [365].

The pending motions to exclude have been fully briefed[2] and are now ripe for review.

## II. LEGAL STANDARD

Trial courts serve a critical gate-keeping function concerning the admissibility of expert testimony.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). Expert testimony can be particularly persuasive, and as such, the role of the trial court is to keep speculative and unreliable testimony from reaching the [factfinder]. Daubert, 509 U.S. at 595; McCorvey v. Baxter Healthcare Corp., 298

---

[2] All of the pending motions were noticed for a May 16, 2019 hearing. See Minute Entry of March 14, 2019.  On May 16, 2019, the Court heard oral argument on the Motion to Exclude the Alternative Design Opinion of Steven Meyer (Doc. No. [364]) and the parties opted to have the Court decide the remaining motions on the written briefs as submitted.  Doc. No. [404], Tr. pp. 114, 198–200.

F.3d 1253, 1256 (11th Cir. 2002).  The trial court must examine "the foundations of expert opinions to ensure they meet the standards for admissibility." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original) (citing McCorvey, 298 F.3d at 1257); see also Kumho, 526 U.S. at 147–49, 152.

While the trial court's role is critical, it is not "intended to supplant the adversary system or the role of the [factfinder]." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311 (11th Cir. 1999).  Where the accuracy of evidence is truly the issue—as opposed to its admissibility—the trial court should allow the judicial process to resolve the matter.  Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." Frazier, 387 F.3d at 1260; see also Allison, 184 F.3d at 1312 (stating that the proponent has the burden to show reliability by a preponderance of the evidence).

Federal Rule of Evidence 702 allows a qualified expert to give opinion testimony when it is necessary to help the trier of fact understand the issues, the opinion is based on sufficient facts or data, it was produced using reliable

4

principles and methods, and those principles and methods were reliably applied to the facts of the case. Fed. R. Evid. 702. The Eleventh Circuit employs a "rigorous" three-part inquiry to determine if these admissibility criteria are met. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998). Expert testimony is admissible when:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Harcros, 158 F.3d at 562.  Thus, the admissibility of an expert's opinion turns on three things: qualifications, reliability, and helpfulness.  See Frazier, 387 F.3d at 1260–62.

### 1.    Qualifications

Experts may be qualified in many ways.  Id. at 1260–61.  Rule 702 makes clear that expertise can arise from "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Courts must ensure an individual's experience provides an appropriate foundation for asserting the opinions in question.

5

Frazier, 387 F.3d at 1262. Determining that a witness is qualified to form an opinion is a separate and distinct inquiry from whether that opinion has a reliable basis.  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  In other words, a witness can be qualified, yet offer unreliable testimony. Id. at 1342.

### 2.      *Reliability*

The reliability inquiry focuses on the principles and methodology underlying the expert's opinion, not the expert's conclusions.  Daubert, 509 U.S. at 595.  The question is not whether the expert's opinion is correct, but whether the basis on which it rests is reliable.  Allison, 184 F.3d at 1312.  Generally, if the principles, theories, and methodologies behind the opinion are scientifically valid and can be applied to the facts at issue in the case, then the opinion has a reliable basis.  Daubert, 509 U.S. at 592–93.

The Supreme Court discussed four factors in Daubert that a court might consider in its reliability inquiry: whether the methodology has been (or can be) tested, whether the methodology has been subject to peer review, whether the methodology has a high rate of error, and whether or not the methodology is widely accepted within the scientific community. Id. at 593–94.  However, this

6

list is not comprehensive.  Id. at 593 ("Many factors will bear on the inquiry, and [there is no] definitive checklist or test.").  Courts are not limited to the Daubert factors and may consider other questions in light of the specific facts of the case at hand. Kumho, 526 U.S. at 152 ("[W]hether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."); Allison, 184 F.3d at 1312 (noting that the factors listed in Daubert were not exhaustive). Courts have considered other factors such as whether an expert relied on "anecdotal evidence (as in case reports), temporal proximity, [or] improper extrapolations (as in animal studies)." Allison, 184 F.3d at 1312.

There is an important distinction between scrutinizing the reliability of an expert opinion's underlying methodology (or principles) and scrutinizing the expert's application of that methodology. Quiet Tech., 326 F.3d at 1343. Challenging the underlying methodology in general is an admissibility issue; challenging the expert's application of that methodology is an accuracy issue. Id. at 1344, 1344 n.11, 1345 (finding no error in the district court's decision to admit expert testimony where the parties agreed that the mathematical equation the expert used was a valid equation, but the plaintiff asserted it was the wrong

equation to use).  Issues of accuracy are best resolved through cross-examination and the adversarial process.  Id. at 1345; see also Daubert, 509 U.S. at 596; Bazemore v. Friday, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility").  Generally, as long as the methodology is "rooted in science" and is "empirically testable," the resulting opinions are admissible.  Quiet Tech., 326 F.3d at 1346.

### 3.    *Helpfulness*

The helpfulness prong of the inquiry requires that an expert's testimony involve matters beyond the understanding of the average lay person.  Frazier, 387 F.3d at 1262.  The opinion must also have a "valid scientific connection to the disputed facts in the case."  Daubert, 509 U.S. at 591.  The expert may be qualified and the basis for his opinion may be reliable, but if his opinion is not necessary for resolving the issues in the case, then the opinion is not relevant and should not be admitted.  See id.

As stated above, this case will be tried as a bench trial.  It has been held that "[w]hile Daubert's standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial."  Attn. Gen. of Okl. v. Tyson Foods, Inc., 565

8

F.3d 769, 779 (10th Cir. 2009).  It has also been held that the traditional barriers to opinion testimony are "more relaxed in a bench trial situation, where the judge is serving as factfinder . . . . [as] [t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.  United States v. Brown, 415 F.3d 1257, 1268–69 (11th Cir. 2005).  In addition, it has been held that "[w]here the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened." In re Salem, 465 F.3d 767, 777 (7th Cir. 2006), *disapproved of on other grounds by* Matter of Anderson, 917 F.3d 566 (7th Cir. 2019).  "[T]he point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial."   Id.   "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." Id.

"Determinations of the admissibility of evidence are left to the broad discretion of the district court."  Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990).

9

## III. ANALYSIS

### A. Dr. William Van Arsdell

In its proposed pretrial order Defendant Autoliv designated Dr. Van Arsdell, a registered professional engineer, as a seatbelt expert, who will offer testimony on the following: (1) the airbag and pretensioner in the subject vehicle would have deployed if they had been sent a signal to deploy; (2) a properly deployed airbag and pretensioner would have reduced or mitigated Mr. Andrews's injuries; (3) the seatbelt in the subject vehicle provided restraint; (4) the seatbelt in the subject vehicle deployed as designed by Mazda; (5) the seatbelt in the subject vehicle is not defective; (6) the subject accident was in the 98th–99th percentile of severity; and (7) Autoliv served as a prototypical component supplier for Mazda's J48C program.[3]  Doc. No. [358-8], p. 5.

Defendant Autoliv notes that "Dr. Van Arsdell obtained his Ph.D. from the Massachusetts Institute of Technology ("MIT") in Mechanical Engineering." Doc. No. [375], p. 6; [360-2], pp. 13–15.  His professional experience includes working at Exponent and General Motors and numerous publications, as well as

---

[3] As stated in the Court's prior order, "J48C refers to the platform for the 2005 Mazda 3." Doc. No. [407], p. 14, n.16 (citing Doc. No. [349], p. 4, n.3).

conducting over one hundred full-scale vehicle crash and sled tests, investigating hundreds of motor vehicle collisions, testing over one thousand seat belts, and significant research related to occupant kinematics, accident reconstruction, mechanics, material selection, and deformation, fatigue and fracture of materials. Doc. No. [360-2], p. 13.  In his deposition, Dr. Van Arsdell described his expertise as: "occupant protection which includes seat belts, airbags, crash worthiness and structures of the vehicle, the overall systems that provide occupant protection in a collision." Doc. No. [232], Tr. p. 18, lines 1–6.  He also testified that he considered himself an expert in airbags as well as in seat belts.  Id. at lines 7–9.

As stated above, Plaintiff has filed a motion to exclude certain opinions of Dr. Van Arsdell under Federal Rule of Evidence 702 and Daubert.  Doc. No. [360]. In her motion, Plaintiff asks the Court to order that Dr. Van Arsdell "cannot offer opinions about any of the new subjects identified for the first time on March 7, 2019, in Autoliv's Attachment F-2 to the Consolidated [Pretrial Order}, both because those opinions are not timely and because [Dr. Van Arsdell] is not qualified to testify about those subjects."  Doc. No. [360].[4]  Specifically, Plaintiff

---

[4] Plaintiff also asks the Court for an anticipatory and all-encompassing "Order excluding any opinion [of Dr. Van Arsdell's that] was not timely disclosed."  Doc.

11

seeks to exclude the following opinions by Dr. Van Arsdell (*which are listed according to the numbering in the proposed pretrial order*):  Opinion Nos. 2, 3, 4, 6, and 7. Doc. No. [360], p. 3.

### 1. *Opinion No. 2*

In her motion to exclude, Plaintiff challenged Dr. Van Arsdell's Opinion No. 2 (i.e., that a properly deployed airbag and pretensioner would have reduced or mitigated Mr. Andrews's injuries).  The Court understands Defendant's response brief[5] as impliedly withdrawing Opinion No. 2.  Doc. No. [375], p. 17. Accordingly, the motion is **GRANTED** as to Opinion No. 2.  The Court **ORDERS** that Dr. Van Arsdell may not offer an opinion at trial that a properly deployed and pretensioner would have reduced or mitigated Mr. Andrews's injuries.[6]

———————————

No. [360], p. 20.  Without more, the Court **DENIES WITHOUT PREJUDICE** this request.  Plaintiff, through Counsel, may object at the time the testimony is offered to the extent it is objectionable on the ground of untimely disclosure.  The Court will rule thereafter.

[5] See e.g., Doc. No. [375], p. 17 ("Plaintiff's biomechanics expert (Dr. Mariusz Ziejewski), and Autoliv's biomechanics expert (Dr. Elizabeth Raphael) have each previously testified that a properly deployed airbag and pretensioner would have reduced or mitigated Mr. Andrews' injuries, **Dr. Van Arsdell does not need to offer this opinion and will not do so at trial**.") (emphasis added).

[6] The Court will, however, permit Defendant Autoliv to "limit Dr. Van Arsdell's testimony . . . to his opinion that occupant restraint systems, including airbags and pretensioners, generally reduce the likelihood that drivers suffer life-threatening

Plaintiff's request for a broader ruling that Dr. Van Arsdell may not testify about any biomechanical and accident reconstruction issue (Doc. No. [380], pp. 12–13) is **DENIED WITHOUT PREJUDICE**, as the Court's above-stated specific ruling as to opinion No. 2 is determinative and Plaintiff, through Counsel, may object to any particular testimony that she finds objectionable at trial.  <u>See</u> <u>Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.</u>, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009) ("Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

### 2.  *Opinion No. 3*

As stated above, in her motion to exclude, Plaintiff originally challenged Dr. Van Arsdell's Opinion No. 3 (i.e., that the seatbelt in the subject vehicle provided restraint).  It appears to the Court that Plaintiff withdrew her challenge to Opinion No. 3 in her reply brief by stating:  "[g]iven the relaxed <u>Daubert</u> standard in a bench trial, Plaintiff withdraws her motion to exclude

_____

injuries during collisions." Doc. No. [375], p. 17. Plaintiff's meaningless and waste of time arguments are **OVERRULED** in the exercise of the Court's discretion.  Doc. No. [380], pp. 3–4.

Dr. Van Arsdell's opinion that the seatbelt 'restrained' Mr. Andrews."   Doc. No. [380], p. 4, n.2.   Accordingly, Plaintiff's motion as to Dr. Van Arsdell's Opinion No. 3 stands **WITHDRAWN**.

### 3. *Opinion No. 4*

As stated above, Dr. Van Arsdell's Opinion No. 4 is that "the seatbelt in the subject vehicle deployed as designed by Mazda."   Doc. No. [358-8], p. 5.

As correctly noted by Defendant Autoliv in its briefing, "Plaintiff . . . suggests, in the introduction section of her [motion to exclude], that Dr. Van Arsdell's seatbelt deployment opinion should be excluded as a new, additional opinion, but Plaintiff does not offer any further argument regarding why the opinion should be excluded."   Doc. No. [375], p. 13, n.42.   Defendant also states:   "Dr. Van Arsdell's opinion that the 'the seatbelt in the subject vehicle deployed as designed by Mazda' is also not a 'new' opinion. Dr. Van Arsdell offered this opinion in his initial report and at his deposition."   Id. (citing Doc. No. [232], Tr. pp. 80, 109; 360-2, pp. 8–9).[7]

_____

[7] Plaintiff also makes an argument that Dr. Van Arsdell should be precluded from offering an opinion that the airbag should have deployed in the accident (Doc. No. [360], p. 18); however, Defendant states that this specific opinion is not listed in the proposed pretrial order. Doc. No. [375], p. 18.  Defendant Autoliv also states that "Dr. Van Arsdell

In her reply brief, Plaintiff makes several arguments concerning Opinion No. 4 that were not raised in the initial brief as to Opinion No. 4.[8] Doc. No. [380], pp. 5–9. While the Court recognizes that Plaintiff's reply brief arguments are similar to the arguments she made in her original brief with respect to a different opinion (i.e., Opinion No. 7), in the absence of these specific arguments being substantively raised in the original brief with respect to Opinion No. 4, the Court in the exercise of its discretion deems it proper to **DEFER** ruling on Opinion No. 4 at this time and order the following procedure.  Defendant Autoliv may not offer testimony concerning Dr. Arsdell's Opinion No. 4 at trial until further ruling of the Court.  Prior to Dr. Arsdell's testimony, Defendant Autoliv shall seek a final ruling as to Opinion No. 4 from the Court.  Any argument shall include citation of authority and address the arguments raised in Plaintiff's reply brief (Doc. No.

---

is not going to testify as to why the airbag failed to deploy in this accident," as such will be explained by experts Chris Caruso and Neil Hannemann.  Doc. No. [375], p. 18. Plaintiff makes additional arguments in the reply brief.  Doc. No. [380], pp. 11–12. However, the Court does not understand Defendant to be offering this evidence.  So, the Court makes no ruling on the additional reply brief arguments.

[8] The Court recognizes that a number of the arguments are similar or the same as the arguments raised as to Opinion No. 7.

[380], pp. 5–9), with a focus on the Rule 26(e)(2) failure to supplement arguments, which are of particular concern to this Court.

### 4. *Opinion No. 6*

As stated above, Dr. Van Arsdell's Opinion No. 6 is that "the subject accident was in the 98th–99th percentile of severity. Doc. No. [358-8], p. 5.

In its response brief, Defendant notes that "[i]n the introduction section of her [motion to exclude], Plaintiff suggests that Dr. Van Arsdell's severity opinion should be excluded as a new, additional opinion, but Plaintiff does not offer any further argument regarding why the opinion should be excluded." Doc. No. [375], p. 12, n.40. Defendant Autoliv further states: "Dr. Van Arsdell's opinion that 'the subject accident was in the 98th–99th percentile of severity' is not a 'new' opinion. Dr. Van Arsdell offered this opinion in his initial report and at his deposition." Id. (citing Doc. No. [232], Tr. pp. 66, 71, and 224).

In her reply brief, Plaintiff states that the statistical opinions will be the subject of a "short motion in limine because they are inadmissible as a matter of law." Doc. No. [380], p. 13, n.9.[9]

---

[9] While the Court declines to rule that no motions in limine can be filed prior to trial, the Court instructs the parties to be mindful of the following authority:  Singh v.

As Plaintiff has indicated that additional motion practice is forthcoming, Plaintiff's motion is **DENIED WITHOUT PREJUDICE** (to raising the statistical opinion subject in a future motion) as to Opinion No. 6.

### 5. *Opinion No. 7*

Plaintiff objects to Dr. Van Arsdell providing an opinion that "Autoliv served as a prototypical component supplier for Mazda's J48C program."[10]  Doc. No. [360], p. 12.  Plaintiff argues that Dr. Van Arsdell should not be permitted to offer this opinion because Defendant Autoliv "'concealed facts [revealed in November 2018 and January 2019 late discovery productions] about Autoliv's responsibilities as a component supplier' from [Dr. Van Arsdell], rendering his opinion unreliable and 'not based on sufficient facts or data to support it.'"  Id. at pp. 14–15.

_____

Caribbean Airlines Ltd., No. 13-20639-CIV, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) (citations omitted) ("[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence . . . . [C]ourts are advised to deny motions in limine in non-jury cases . . . .[in that] [w]hen ruling on motions in limine, a court is forced to determine the admissibility of evidence without the benefit of the context of trial.").

[10] As stated in the Court's prior order, "J48C refers to the platform for the 2005 Mazda 3." Doc. No. [407], p. 14, n.16 (citing Doc. No. [349], p. 4, n.3).

In response, Defendant Autoliv states: "contrary to Plaintiff's suggestion, Autoliv has not deprived Dr. Van Arsdell of the relevant facts and data regarding its interactions with Mazda.  Dr. Van Arsdell has reviewed the documents that Autoliv produced in November 2018, and his opinions remain unchanged."  Doc. No. [375], p. 16.

In reply, Plaintiff asserts that there is an absence of an affidavit (or other evidence) to support Defendant Autoliv's statements and that the time for supplementing the expert report has passed.  Doc. No. [380], p. 2.

Similar to Opinion No. 4, the Court is concerned that there has been no supplemental report (in accordance with Rule 26(e)) to account for Dr. Arsdell's November 2018 review.  To this regard, Rule 37(c) requiring that the party not be allowed to use the information at issue at trial appears to be applicable unless Defendant Autoliv can show that the failure to provide the information/supplement the report was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1).

Accordingly, the Court **ORDERS** that Defendant Autoliv may not offer testimony concerning Dr. Arsdell's Opinion No. 7 at trial until further ruling of the Court.  Prior to Dr. Arsdell's testimony, Defendant Autoliv shall seek a final

ruling as to Opinion No. 7 from the Court.  Any argument shall include citation

of authority and explanation as to whether Rule 26(e) was required to be

complied with in the context of Dr. Arsdell's November 2018 review of the

discovery materials as well as discussion of Rule 37(c)(1).   Defendant Autoliv

shall also address Plaintiff's argument that Dr. Arsdell has not reviewed the

January 2019 <u>Stegall</u> evidence.  Doc. No. [380], p. 10.  The Court will issue a final

ruling after both sides have had an opportunity to present argument (and citation

of authority) as to the Court's Rule 26(e) and Rule 37(c) concerns.

### B.  **Dr. Elizabeth Raphael**

Defendant Autoliv has designated Dr. Elizabeth Raphael as its

biomechanics expert.  Doc. No. [358-8], p. 6. [11]

---

[11] In its proposed pretrial order, Defendant Autoliv designated Dr. Raphael as follows:

> Dr. Raphael is a biomechanics expert who will offer
> testimony under Federal Rule of Evidence 702 regarding the
> matters set forth in her report and deposition in this matter
> including: (1) Mr. Andrews' chance of survival would have
> increased significantly if the airbag and pretensioner had
> deployed; (2) the evidence is consistent with Mr. Andrews
> having a medical event or falling asleep; (3) Mr. Andrews'
> seatbelt provided restraint; and (4) had Mr. Andrews'
> seatbelt included a "stop" feature, he would have been
> exposed to serious or fatal thoracic injuries.

Doc. No. [358-7], p. 6.

19

A brief review of the record is necessary to show how Dr. Raphael appeared in this case.  Through no fault of Plaintiff, her original biomechanics expert, Dr. Joseph Burton, became unavailable during the course of this case due to his arrest and ultimate conviction for federal crimes.  Doc. No. [316].  On August 28, 2018, the Court issued a revised scheduling order that allowed Plaintiff to identify a biomechanics expert to replace Dr. Burton by September 7, 2018.   Doc. No. [322], p. 2.   The Court further ordered that Defendant Autoliv "may identify an expert to rebut the opinions of Plaintiff's new biomechanics expert" by November 7, 2018.  Id.

Plaintiff identified Dr. Mariusz Ziejewski as her new biomechanics expert[12] and Defendant identified Dr. Raphael.

In her Motion to Exclude, Plaintiff asserts that Dr. Raphael's opinions "have nothing whatsoever to do with 'rebutting' Dr. Ziejewski's testimony," and that Defendant Autoliv is therefore in violation of the Court's August 28, 2018 revised scheduling order that only permitted Defendant to identify an expert to rebut the opinions of Plaintiff's new biomechanics expert. Doc. No. [362], pp. 4,

---

[12] Dr. Ziejewski's deposition is in the record at Doc. No. [359] and his report is in the record at Doc. No. [379-1].

6.  Plaintiff requests that the Court strike Dr. Raphael's report for violation of the Court's Revised Scheduling Order or in the alternative,  strike all of Dr. Raphael's non-rebuttal opinions, including all medical opinions, seatbelt design opinions, accident reconstruction opinions, and anything else not specifically in response to Dr. Ziejewski's opinions Doc. No. [362], pp. 7, 23.  "Plaintiff further moves the Court to prevent Raphael from testifying on all opinions or topics on which she lacks sufficient facts or data."  Id. at p. 7.

"Under Federal Rule of Civil Procedure 26, testimony is considered rebuttal testimony when it is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Tuscumbia City Sch. Sys. v. Pharmacia Corp., No. CV-12-S-332-NW, 2014 WL 12605648, at *1 (N.D. Ala. Sept. 3, 2014) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)) (emphasis omitted).  "In the context of expert reports, the relevant 'subject matter' is the specific contentions made by the other party's experts." Id.  "To be considered a rebuttal, the [expert report] must have been intended solely to rebut the specific contentions made in [the opposing party's] expert reports." Id. "[A] rebuttal report is limited to contradicting or rebutting evidence on the same subject matter identified by another party and is not an opportunity to advance new opinions or new

21

evidence." Coward v. Forestar Realty, Inc., 282 F. Supp. 3d 1317, 1331 (N.D. Ga. 2017); see also Northrup v. Werner Enter., No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947, at *3 (M.D. Fla. Aug. 11, 2015) ("[t]here is no requirement that a rebuttal witness's area of expertise match the area of expertise of the opposing party's initial expert. Rather, Rule 26 only requires that the evidence contradict or rebut evidence on the 'same subject matter.'") and Theoharis v. Rongen, No. C13-1345RAJ, 2014 WL 3563386, at *3 (W.D. Wash. July 18, 2014) (explaining the "scarce appellate authority" on the difference between initial expert and rebuttal disclosures and discussing the various district court views on expert rebuttal testimony). "[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." Withrow v. Spears, 967 F. Supp. 2d 982, 1002 (D. Del. 2013).

### 1. *Sanction request*

As stated above, in her motion, Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 16(f)(1)(C) for Defendant "failing to obey a scheduling or other pretrial order." Doc. No. [362], p. 6. Plaintiff asserts that Defendant Autoliv affirmatively chose not to name a rebuttal expert before the

close of discovery, then took advantage of Plaintiff's biomechanic expert becoming unavailable to convince the court to also allow it a rebuttal expert. Doc. No. [379], p. 3. Plaintiff asserts that Defendant Autoliv hired Dr. Raphael months before requesting an amendment to the scheduling order and never told Dr. Raphael about the Court's order that limited her opinions to rebuttal. Doc. No. [379], p. 3.

After review, the Court finds that portions of Dr. Raphael's expert report actually do rebut specific contentions made in Dr. Ziejewski's report and in light of the fact that Dr. Raphael is a non-lawyer (who the Court does not expect to understand the legal aspects of rebuttal testimony when asked at deposition), without more, Plaintiff's request for the Court to strike the entirety of Dr. Raphael's testimony for violation of the Court's scheduling order, as amended, is **DENIED** in the exercise of the Court's discretion as the more appropriate course of action is to review each challenged topic at issue and decide the admissibility of the subject testimony. Doc. Nos. [362], [379], p. 4.[13]

---

[13] The fact that Defendant Autoliv contacted Dr. Raphael (on March 19, 2018) prior to formally petitioning the Court to amend the scheduling order does not change the Court's opinion, considering the news coverage concerning Dr. Burton's indictment at the time—as even if Dr. Burton had not pled guilty (in May 2018), his ability to serve as

23

### 2. *Asserted topics that do not rebut*

In the alternative to total exclusion of Dr. Raphael's expert report, Plaintiff asserts that "[a]t the very least, Raphael cannot testify about anything that does not specifically contradict or respond to Dr. Ziejewski's testimony."  Specifically, Plaintiff seeks exclusion of testimony about the following topics: (1) the collision's so-called "severity," (2) any supposed "medical events" that caused or contributed to causing the collision, (3) Mr. Andrews's likelihood of survival with an alternative design or with an airbag deployment, and (4) load limiter or seatbelt design.  Doc. No. [362], p. 14.

### a.  Topic 1:  the severity of the subject collision

Plaintiff asserts that Dr. Raphael "admitted that Dr. Ziejewski did not testify about the 'severity' of the collision, yet Autoliv has her opining about the collision's 'severity.'"  Doc. No. [362], p. 13. [14]

---

a witness in the case *sub judice* would have been at issue.  See e.g., Doc. No. [316], p. 3, n.2.

[14] As correctly noted by Defendant (Doc. No. [376], p. 13), Plaintiff argues that the "severity" opinion should also be dismissed for reasons stated in her motion to exclude statistics (Doc. No. [362], p. 13, n.5); however, to date, no such motion has been filed on CM/ECF.  In her reply brief, Plaintiff acknowledged that no such motion was filed and indicated that she will move in limine to have the evidence excluded.  Doc. No. [379][], p. 14, n.10.  See note 9, *supra*.

In response, Defendant Autoliv asserts that "Dr. Raphael's opinion that '[t]he subject collision is an extremely severe one, in the top 99 percentile of all frontal collisions' responds to Dr. Ziejewski's opinion that if the subject seatbelt would have incorporated a 'stop' feature, Mr. Andrews 'would not have hit the steering wheel with enough force to cause fatal skull fractures or other injuries' and would have 'most likely' survived the accident at issue with moderate to no injuries."  Doc. No. [376], p. 14.

After review, as Defendant Autoliv has not pointed to a specific content reference in Dr. Ziejewski's report or deposition in which he discussed or testified about the severity of the frontal collision at issue in this case, the Court deems it proper to **GRANT** Plaintiff's motion to exclude Dr. Raphael's severity opinion as non-rebuttal.  Accordingly, Dr. Raphael may not testify that the subject collision is an extremely severe one, in the top 99 percentile of all frontal collisions.

### b. **Topic 2:  medical events**

Plaintiff asserts that "[b]ecause Dr. Ziejewski has no opinion about whether Mr. Andrews had a heart attack or another 'medical event' before the collision, there is nothing for Dr. Raphael to 'rebut.'" Doc. No. [379], pp. 7, 13.

25

In its response brief, Defendant Autoliv states that this testimony "responds to Dr. Ziejewski's testimony that the subject accident was initiated by an 'avoidance maneuver.'"  Doc. No. [376], p. 15.

In her reply brief, Plaintiff asserts that Defendant Autoliv's "claim that Dr. Ziejewski had an opinion about an avoidance maneuver is false," because at deposition he stated that he did not have an "independent opinion on that," as the avoidance maneuver statement was actually an opinion from another expert, i.e., Mr. G. Bryant Buchner's opinion.  Doc. No. [379], p. 3 (citing Doc. No. 359, Tr. p. 128, lines 1–9) and p. 8.   Plaintiff also states that "[t]he record proves that the 'avoidance maneuver' opinion Autoliv wants Dr. Raphael to try to 'rebut'— comes from Buchner, not Dr. Ziejewski."  Doc. No. [379], p. 9.  Plaintiff further asserts that "Autoliv's attempt to rebut [Mr. Buchner's opinions] now through Dr. Raphael violates the Court's August 2018 Scheduling Order."  Id.

After review, the Court upholds Plaintiff's argument and citations and **GRANTS** Plaintiff's motion on this ground.   Dr. Raphael's "medical events" opinion is **EXCLUDED** as non-rebuttal testimony.[15] Dr. Raphael may not testify

---

[15] Plaintiff also argues that Dr. Raphael may not testify that Mr. Andrews had a heart attack or suffered some other medical event because she "could not testify to a

about any supposed medical events that caused or contributed to causing Mr. Andrews's collision.

### c.  Topic 3:  likelihood of survival

In her motion to exclude, Plaintiff challenges Dr. Raphael's opinion that "Mr. Andrews' chance of survival would have increased significantly if the airbag and pretensioner had deployed."  Doc. No. [362], p. 19.  Plaintiff asserts that the testimony is non-rebuttal to Dr. Ziejewski's testimony on the issue, but unlike the other sections of her brief, Plaintiff's argument on this rebuttal issue is somewhat abbreviated.  Id. at p. 14.  In her reply brief, Plaintiff's argument appears to be that there is no contradiction, as Dr. Ziejewski and Dr. Raphael are saying the same thing, i.e., had the airbag deployed in the collision, Mr. Andrews would have likely survived.  Doc. No. [379], p. 14.

In the exercise of the Court's discretion, the Court will allow the testimony at issue to be presented and determine admissibility issues later.  See Johnson, 616 F. Supp. 2d at 1256 ("Indeed, in the context of a non-jury trial, the district

---

'reasonable degree of medical certainty that Micah Andrews had a 'medical event' before his impact with the trees.'"  Doc. No. [362], p. 12, 22.  However, as the above-stated exclusion ruling is determinative, the Court does not see a need to address medical certainty/apportionment arguments at this time.

court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

### d.  <u>Topic 4:  load limiter or seatbelt design</u>

Plaintiff seeks to exclude testimony from Dr. Raphael opining about the topics of load limiters being designed to work in conjunction with deployed airbags and the objectives of load-limiting seat belts.  Doc. No. [362], p. 13. Plaintiff asserts that "Dr. Raphael's praise of load limiters does not 'rebut' any of Dr. Ziejewski's opinions but rather is designed as untimely 'rebuttal' to the testimony of [another Plaintiff's expert, Steven Meyer], in violation of the Court's August 2018 Scheduling Order."  Doc. No. [379], p. 13.

In opposition, Defendant Autoliv states:

> To the extent Dr. Raphael has opinions regarding load limiter or seatbelt design, those opinions respond directly to Dr. Ziejewski's opinions, including his opinions that (i) a seatbelt with a "stop" feature is "better from a biomechanics perspective" than the load-limiting seatbelt in Mr. Andrews's 2005 Mazda 3 and (ii) if Mr. Andrews's seatbelt had included a "stop" feature, he most likely would have survived the subject accident with moderate to no injuries.

Doc. No. [376], p. 16.

Defendant Autoliv also states: "[w]hile Dr. Raphael's opinions and other statements may reference the design of various seatbelts, Dr. Raphael does not

offer an opinion as to the defectiveness of the designs she discusses."  Doc. No. [376], p. 16, n.47.  Defendant Autoliv further states that to rebut Dr. Ziejewski's opinions, any competent biomechanics expert will need to explain the various seatbelt designs at issue and how occupants move about the vehicle's cab under each design.  Id. at p. 17.

After review of the parties' proffers and arguments, the Court cannot definitively say that Dr. Raphael's proposed testimony is improper rebuttal testimony, as the Court agrees with Defendant that some explanation of the biomechanic expert's understanding of seatbelt design will be needed to fully explain occupant movement under the design; however, the Court also agrees with Plaintiff that Dr. Raphael cannot go so far with her testimony that she is effectively serving as a rebuttal for Mr. Meyer's testimony, for which she was not designated.  To this regard, in the exercise of the Court's discretion, the Court will allow the testimony at issue to be presented and determine admissibility issues later.  See Johnson, 616 F. Supp. 2d at 1256 ("Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

### 3. *Lack of sufficient data*

Plaintiff also asks that the Court exclude testimony from Dr. Raphael on various topics for which she "lacks sufficient facts and data to opine."  Doc. No. [362], p. 15.  Those topics are discussed as follows.

### a. <u>Reconstruction</u>

Plaintiff asserts that Dr. Raphael is not an accident reconstructionist and that she may not rely on the accident reconstruction opinion of Greg Stephens, a former Mazda witness, who has not been designated as a witness for trial by Defendant Autoliv.  Doc. No. [362], p. 16.

In response, Defendant Autoliv states that "Dr. Raphael will not offer opinions as an accident reconstructionist at trial."  Doc. No. [376], pp. 4, 23. Defendant Autoliv further states:  "[t]o the extent Dr. Raphael must rely on testimony from an accident reconstructionist for her opinions, she will rely on the testimony of Bryant Buchner, Plaintiff's accident reconstructionist. Indeed, Dr. Raphael testified unequivocally that none of her opinions would change if she relied exclusively on Buchner's accident report."  <u>Id.</u>

Accordingly, Plaintiff's motion on this topic is **MOOT and to the extent not moot, GRANTED**.

30

### b.  <u>Airbag deployment</u>

Plaintiff asserts that Dr. Raphael "cannot testify about why the airbag did not deploy or whether the airbag was defective."  Doc. No. [362], p. 18.

In response, Defendant Autoliv states that Dr. Raphael will not offer opinions "as to why the airbag did not deploy or was defective."  Doc. No. [376], pp. 4, 23.

Accordingly, Plaintiff's motion on this topic is **MOOT and to the extent not moot, GRANTED**.

### c.  <u>Seatbelt defect</u>

Plaintiff asserts that Dr. Raphael "cannot opine that the seatbelt was not defective when Autoliv manufactured and sold it to Mazda for use in Mr. Andrews'[s] car."  Doc. No. [362], p. 19.

In response, Defendant Autoliv states that Dr. Raphael will not offer opinions that the seatbelt was not defective.  Doc. No. [376], pp. 4, 23.

Accordingly, Plaintiff's motion on this topic is **MOOT and to the extent not moot, GRANTED**.

### d. <u>Survival</u>

Plaintiff asserts that Dr. Raphael lacks sufficient facts and data to provide an opinion that Mr. Andrews's "chance of survival would have increased significantly if the airbag and pretensioner had deployed." Doc. No. [362], pp. 19–20. Plaintiff asserts that "[w]hat Autoliv intends to elicit from [Dr. Raphael] is purest speculation. It is therefore irrelevant." <u>Id.</u> at p. 20.

In response, Defendant Autoliv asserts that "[t]his argument should fail, as an initial matter, because Dr. Ziejewski—Plaintiff's own biomechanics expert—has opined that Mr. Andrews would have survived if his airbag had deployed." Doc. No. [376], p. 18. Defendant Autoliv further asserts that "Plaintiff's argument should also fail because, in forming her likelihood of survival opinion, Dr. Raphael relied on widely-circulated articles, including a report by the National Highway Transportation Safety Administration." <u>Id.</u> Defendant Autoliv further states that "Dr. Raphael also relied on her extensive biomechanics and automotive knowledge and experience in forming her opinion." <u>Id.</u> at p. 19. Defendant Autoliv argues that "[g]iven these facts, Plaintiff's contention that this opinion is 'purest speculation' is demonstrably false." <u>Id.</u> at p. 20.

After review, the Court exercises its discretion to receive Dr. Raphael's testimony on this subject and accord it the weight, if any it deserves.  Plaintiff may attack the testimony at trial through vigorous cross-examination and the presentation of contrary evidence.  See Cahill v. United States, No. 8:05CV2379T24MSS, 2008 WL 341347, at *1 (M.D. Fla. Feb. 5, 2008).

### e.  Life expectancy

Plaintiff asserts that Dr. Raphael cannot opine about Mr. Andrews's life expectancy.  Doc. No. [362], p. 20.

In response, Defendant Autoliv states that Dr. Raphael will not offer opinions about Mr. Andrews's life expectancy and has already stipulated that Mr. Andrews had a life expectancy of 36.18 years.  Doc. No. [376], pp. 4, 24.

Accordingly, Plaintiff's motion is **MOOT and to the extent not moot, GRANTED**.

### 4.  *Plaintiff's request for designation of a medical doctor*

In her brief, Plaintiff states: "if the Court does not exclude Dr. Raphael's medical testimony, Plaintiff requests time to name a rebuttal witness to address these new opinions."  Doc. Nos. [362], [379], p. 15, n.11. In light of the ruling above, excluding the "medical event" testimony, Plaintiff's request is **MOOT**.

33

## C. <u>Steven Meyer</u>

Mr. Steven E. Myer is a professional engineer who has been designated by Plaintiff as an expert in the areas of occupant crash protection and restraint system design and analysis.  Doc. No. [358-7], p. 8.

### 1. *Alternative Design Opinion*

In its pending Motion to Exclude, Defendant Autoliv "moves the Court to exclude Steven Meyer's opinion that the subject seatbelt should have incorporated a load-limiting deployment threshold higher than 2.0 kN,"(the "Deployment Threshold Alternative"), on the grounds that the opinion is unhelpful to the factfinder (Rule 702) and unfairly prejudicial (Rule 403).  Doc. No. [363], p. 1.

### a. <u>Rule 702, unhelpful to the factfinder</u>

Defendant Autoliv asserts that "Meyer's Deployment Threshold Alternative should be excluded as unhelpful to the [factfinder],[16] pursuant to Federal Rule of Evidence 702,"[17]because Plaintiff has not presented any evidence

---

[16] Defendant's motion was originally written in terms of the perspective of the jury; however, the parties subsequently agreed to a bench trial.  To this regard, all "jury" references are changed to the term "factfinder."

[17]   As stated above, Federal Rule of Evidence 702 allows a qualified expert to give

that Mr. Andrews could have survived the subject crash if his seatbelt incorporated a Higher Development Threshold Doc. No. [363-1], pp. 10, 13.[18] Defendant Autoliv asserts that Plaintiff's biomechanics expert, Dr. Ziejewski, "did not offer any opinions—nor did he conduct any analysis—regarding whether Mr. Andrews would (or could) have survived the crash if the seatbelt incorporated Meyer's Deployment Threshold Alternative." Doc. No. [363-1], p. 2. Defendant Autoliv also asserts that allowing Meyer's opinion to be admitted into evidence "would only waste time and resources on a theory of liability that is fundamentally flawed." Doc. No. [383], p. 3.

As both parties recognize, in Banks v. ICI Americas, Incorporated, the Georgia Supreme Court adopted a risk-utility analysis to evaluate design defectiveness, i.e., "a test balancing the risk inherent in a product design against the utility of the product so desired." 264 Ga. 732, 735, 450 S.E.2d 671, 674 (1994).

_____

opinion testimony when it is necessary to help the trier of fact understand the issues, the opinion is based on sufficient facts or data, it was produced using reliable principles and methods, and those principles and methods were reliably applied to the facts of the case. Fed. R. Evid. 702.

[18] Defendant Autoliv's brief does not appear to address the other two Daubert inquiries (i.e., qualification to give an alternative design/Higher Development Threshold opinion and reliability). The Court assumes without deciding that those are established for purposes of this motion and will solely focus on the helpfulness arguments of the parties.

The Georgia Supreme Court also stated: "in determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible." Id. at 736, 450 S.E.2d at 674–75. The Georgia Supreme Court further stated:

> we can no longer accept the position that a manufacturer cannot be liable for injuries proximately caused by a product that functions for its intended use, regardless of the risks associated with the product and its utility to the public **or the plaintiff's ability to adduce evidence that a feasible alternative design, which could have prevented or minimized the plaintiff's injury**, was available at the time the manufacturer made its design, manufacturing, and marketing decisions.

Id. at 737, 450 S.E.2d at 675 (emphasis added).  In Wilson Foods Corporation v. Turner, the Georgia Court of Appeals cited the above-stated language from Banks and held: "[t]he plaintiff in a suit involving a claim of defective design may introduce evidence 'that a feasible alternative design, which could have prevented or minimized the plaintiff's injury, was available at the time the manufacturer made its design decisions.'"  218 Ga. App. 74, 78, 460 S.E.2d 532, 536 (1995).

36

As correctly noted by Plaintiff (Doc. No. [404], Tr. P. 132) and through the Court's independent research, it appears that the particular phrasing in <u>Wilson Foods</u> does not carry forward in Georgia jurisprudence, though the <u>Wilson Foods</u> case is cited for other propositions, such as remedial measures and failure to warn.[19]

Also as correctly pointed out by Plaintiff, in subsequent Georgia Supreme Court design defect opinions, the court makes no mention of the "could have prevented or minimized the plaintiff's injury" language when setting forth the alternative design standard.  See e.g., <u>Certainteed Corp. v. Fletcher</u>, 300 Ga. 327, 328, 794 S.E.2d 641, 644 (2016) ("the risk-utility analysis applies to determine whether the manufacturer is liable . . . . [I]n determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at

_____

[19] At the May 16, 2009 hearing, Defendant Autoliv, through Counsel presented a copy of Georgia Pattern Instruction No. 62.660 to rebut any arguments that he "made up" the rule that he is asserting in his arguments.  Doc. No. [404], Tr. P. 124; Def. Hearing Ex. 3 ("Strict Liability; Design Defect; Alternative Design Evidence," . . . "In determining whether a product was defective, you may consider evidence of alternative designs that would have made the product safer and could have prevented or minimized the plaintiff's injury.").  The Court recognizes that the Georgia Pattern Instruction contains this language and that Defendant Autoliv's counsel has not "made up" rules to this regard; however, it is also important to note that in federal court, pattern jury instructions are not binding.  <u>See generally</u> <u>United States v. Dohan</u>, 508 F.3d 989, 994 (11th Cir. 2007).

the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible.") (citations and quotations omitted) and Jones v. NordicTrack, Inc., 274 Ga. 115, 118, 550 S.E.2d 101, 103 (2001) (indicating that "the appropriate analysis [for a design defect case] . . . includes the consideration of whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the product").

It is possible that as argued by Plaintiff, the language at issue (i.e., "could have prevented or minimized the plaintiff's injury") is *dicta* in the Banks case or that the construction of the language in the Wilson case presents a conflict in Georgia law—in which case, the older case, i.e., Banks controls.[20]  See Sharpe v. Seaboard Coast Line R. Co., 528 F.2d 546, 548 (5th Cir. 1976) ("Under Georgia law, the rule of *stare decisis* applies, which means that the older case law must control.") and Se. Fair Ass'n v. Ford, 64 Ga. App. 871, 14 S.E.2d 139, 140 (1941)

---

[20] "[D]icta is defined as those portions of an opinion that are 'not necessary to deciding the case then before [the court].'" United States v. Kaley, 579 F.3d 1246, 1253 (11th Cir. 2009).

("if there is any conflict between the decisions . . . the latter, being the older adjudication, is controlling in this court.").[21]

While it is not necessary at this stage of the case for the Court to make a determinative ruling as to the applicable standard/principle of law, the Court is reluctant to exclude Mr. Meyer's testimony at this stage of the litigation and in the absence of *binding* authority that indicates that an expert's testimony should be excluded on the grounds asserted by Defendant.[22]   In returning to the helpfulness prong of the Rule 702/Daubert inquiry, which as stated above, requires that an expert's testimony involve matters beyond the understanding of the average lay person and be necessary for resolving the issues in the case, the Court finds that Plaintiff's proffer of evidence (in her brief and at the hearing)

---

[21] The Court also recognizes that the United States Supreme Court has held that "'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Comm'r v. Bosch's Estate, 387 U.S. 456, 465 (1967); see also Gooding v. Wilson, 405 U.S. 518, 526 n.3 (1972) ("the Court of Appeals of Georgia is a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of Georgia. Federal courts therefore follow these holdings as to Georgia law.").

[22] The Court agrees that the non-binding authority cited by Defendant Autoliv is distinguishable on the grounds asserted by Plaintiff in her opposition brief.  Doc. No. [383], pp. 5–8.

39

concerning Mr. Meyer's alternative design potential testimony meets the standard.

Accordingly, Defendant Autoliv's motion to exclude is **DENIED** on this ground.

### b. Rule 403, unfair prejudice

Defendant Autoliv also asserts that "Meyer's Deployment Threshold Alternative should also be excluded pursuant to Federal Rule of Evidence 403,"[23] as unfairly prejudicial in that the probative value of Meyer's Deployment Threshold Alternative is substantially outweighed by the danger of unfair prejudice to Defendant Autoliv in the absence of expert testimony confirming that Mr. Andrews could have survived the subject crash (or even had a better chance of surviving)  Doc. No. [363-1], pp. 3–4, 10. Defendant further states: "because Plaintiff has presented no scientifically reliable evidence that Mr. Andrews could have survived the subject crash if his seatbelt had a deployment threshold higher than 2.0 kN, Meyer's Deployment Threshold

---

[23] Federal Rule of Evidence 403 states in relevant part: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Alternative has little to no probative value." <u>Id.</u> at p. 14.  Defendant Autoliv further asserts that "[t]here is a substantial risk that the [factfinder] would unfairly punish Autoliv for manufacturing a seatbelt with the 'lowest' deployment threshold despite the fact that there is no evidence that a higher threshold would have made any difference here." Doc. No. [363-1], p. 15.

The Court recognizes that <u>Daubert</u> indicates that a judge assessing a proffer of expert testimony under Rule 702 should also be mindful of other applicable rules, including Rule 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." <u>Daubert</u>, 509 U.S. at 595.  However, as correctly noted by Plaintiff, it has been held that "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure [in a bench trial]. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper

41

inferences from his mind in reaching a decision." <u>Gulf States Utils. Co. v. Ecodyne Corp.</u>, 635 F.2d 517, 519 (5th Cir. 1981). [24]

The motion is **DENIED** on this ground.[25]

### 2. *Supplemental Opinions*

In its Motion to Exclude Supplemental Opinions of Steven Meyer, Defendant Autoliv seeks to exclude "all opinions in Steven Meyer's January 28, 2019 supplemental report and all 'additional details' contained within his February 26, 2019 supplemental report." Doc. No. [364].[26]  Defendant Autoliv asserts that Myer's supplemental opinions are made up of (i) legal

---

[24] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered prior to the close of business on September 30, 1981 by the United States Court of Appeals for the Fifth Circuit.

[25] To the extent that this portion of Defendant's motion is actually a motion in limine, the Court notes that it has been held that "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence . . . . [C]ourts are advised to deny motions in limine in non-jury cases . . . .[in that] [w]hen ruling on motions in limine, a court is forced to determine the admissibility of evidence without the benefit of the context of trial." <u>Singh</u>, 2014 WL 4101544, at *1 (citations omitted); <u>see also</u> <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984) (indicating that a motion in limine is a pretrial motion by which a party seeks to exclude inadmissible or prejudicial evidence before it is actually offered at trial).

[26] The reports are in the record at Doc. No. [364-6] and [364-7].

opinions, (ii) lay opinions, and (iii) discovery arguments and should be excluded as unhelpful to the factfinder pursuant to Federal Rule of Evidence 702 and unfairly prejudicial pursuant to Federal Rule of Evidence 403.  Doc. No. [364-1], p. 2.[27]

### a. **Rule 702, unhelpful to the factfinder**

### i. *Legal opinions*

Defendant Autoliv asserts that Mr. Meyer's "Supplemental Opinions 1, 2, 4, 9, and 11 Involve Legal Opinions and Should Be Excluded as Unhelpful to the [Factfinder]."  Doc. No. [364-1], p. 13.  More specifically, Defendant Autoliv asserts that Mr. Meyer's "Supplemental Opinions 1, 2, 4, and 11 should be excluded as unhelpful to the [factfinder] because they each involve a legal conclusion regarding contractual relations between Autoliv and Mazda."  Doc. No. [364-1], p. 14.  Defendant Autoliv asserts that "Supplemental Opinion 11 should also be excluded as unhelpful to the [factfinder] because it involves a legal conclusion regarding Autoliv's level of involvement in the design of the subject

---

[27] In his supplemental reports, Dr. Meyer does not number his opinions.  In its motion, Defendant Autoliv attributed numbers to the opinions "for ease of reference" and sets out in detail the language of the report that is at issue.  Doc. No. [384], p. 3.  The Court adopts Defendant Autoliv's numbering system for purposes of this Order.

seatbelt." Doc. No. [364-1], p. 15.   Defendant Autoliv asserts that "Meyer's Supplemental Opinion 9 should be excluded as an unhelpful legal opinion because it involves a legal conclusion regarding Autoliv's duty of care."   Doc. No. [364-1], p. 15.

Defendant is correct that the law does not permit an expert to testify as to legal conclusions.[28]  See generally Cook v. Sheriff of Monroe Cty., 402 F.3d 1092, 1113 (11th Cir. 2005); see also United States v. Delatorre, 308 F. App'x 380, 383 (11th Cir. 2009) ("an expert witness may not testify as to his opinion regarding ultimate legal conclusions. However, pursuant to Fed.R.Evid. 704(a), 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'")

However, a review of the parties' arguments and the record shows that it is not clear if Mr. Meyer was rendering the opinions at issue based on his interpretation of contractual documents or years of experience.  In light of such, the Court declines to exclude Supplemental Opinions 1, 2, 4, 9, and 11 at this time.

---

[28] The term "legal conclusion" is defined as "[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result."  Black's Law Dictionary (10th ed. 2014).

The Court will allow Mr. Meyer's challenged testimony and determine admissibility later. See Johnson, 616 F. Supp. 2d at 1256 ("Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

### ii. *Lay opinions*

Defendant Autoliv asserts that Mr. Meyer's Supplemental Opinions 1, 3 through 9, and 11 involve lay opinions and should be excluded as unhelpful to the factfinder. Doc. No. [364-1], p. 15. Defendant Autoliv further asserts that these opinions are unhelpful lay opinions because they involve conclusions that the factfinder can draw without expert testimony. Id. at p. 16. Defendant also asserts that "Supplemental Opinions 1, 3 through 7, and 11 are unhelpful lay opinions because they involve characterizations of various documents," and the factfinder is capable of determining whether to draw such conclusions without any technical assistance from an expert. Id. at pp. 16–17.

In her opposition brief, Plaintiff asserts that contrary to Defendant's arguments, Mr. Meyer has not characterized the documents at issue, but given his expert opinion about Defendant Autoliv's involvement in the seatbelt design based on the documentation. Doc. No. [369], p. 16. Plaintiff also states that

45

Mr. Meyer's "supplemental opinions are the result of his synthesis of technical documents, and they will be very helpful to the Court." Id. at p. 5. Plaintiff further states that expert testimony will help the Court understand complex engineering documents. Id. at p. 16. [29]

"As expert evidence, the testimony need only assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Harcros, 158 F.3d at 564–65.

After review, the Court agrees that the documents at issue are complex engineering documents for which Mr. Meyer's testimony would be helpful. To this regard, the Court **DENIES** Defendant's motion. The Court will allow Mr. Meyer's challenged testimony and determine admissibility later. See Johnson, 616 F. Supp. 2d at 1256 ("Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

---

[29] The Court recognizes that Defendant Autoliv raises trial tactics arguments in reply to this statement by Plaintiff (Doc. No. [384], p. 7); however, in the absence of citation of authority that permits exclusion on such ground, without more, the Court declines to uphold Defendant's argument.

### iii. *Discovery arguments*

Defendant Autoliv asserts that "Supplemental Opinions 5, 6, and 10 involve discovery arguments [and] they should be excluded as unhelpful to the [factfinder] and as unfairly prejudicial."  Doc. No. [364-1], p. 19.

It has been held that discovery issues "are irrelevant for purposes of trial." United States v. Cochran, No. 4:14-CR-22-01-HLM, 2014 WL 12695800, at *4 (N.D. Ga. Nov. 17, 2014).

In light of this authority, the Court excludes Supplemental Opinions 5, 6, and 10 as they involve discovery and "missing document" matters that the Court has addressed in the context of its prior ruling on Plaintiff's Motion for Sanctions in which the Court sanctioned Defendant Autoliv and ordered Defendant Autoliv to search for the eighty "missing"/not produced documents referenced in Plaintiff's Hearing Exhibit 1107.   Doc. No. [407], 21. Defendant Autoliv thereafter filed a "Notice of Compliance with the Court's Order" on October 10, 2019.  Doc. No. [414].

Accordingly, Defendant Autoliv's motion is **GRANTED** on this ground. Supplemental Opinions 5, 6, and 10 are **EXCLUDED** as not helpful/relevant discovery matters.

47

**b. Rule 403, unfair prejudice**

The Court's ruling, *supra*, concerning Rule 403 exclusions in a bench trial as a useless procedure, controls and the Court accordingly **DENIES** Defendant Autoliv's motion on this ground.

**D. Chris Caruso**

As stated by Plaintiff in the proposed pretrial order, Mr. Chris Caruso "is an expert in the fields of automotive safety, including air bag system design, development, testing, and investigation into air bag system failures." Doc. No. [358-7], p. 9. "He is expected to testify that based on the documents Autoliv produced, Autoliv's role was to provide its expertise and guidance to Mazda about the components Autoliv was supplying, including the seatbelt system, and to make suggestions to improve the design of the seatbelt." Id.

Defendant Autoliv seeks to exclude all of the opinions found in Mr. Caruso's February 28, 2019 supplemental report on the ground that they are legal, lay, and untimely new opinions. Doc. Nos. [365], [385].

In its motion, Defendant Autoliv asserts that Caruso's "'supplemental' opinions are wholly unrelated to his prior airbag opinions, they should be excluded as 'new,' untimely opinions." Doc. No. [365-1], p. 2. Defendant Autoliv

further argues that Caruso's supplemental opinions should be excluded because they are unhelpful legal and lay opinions.  Id.

### 1.  Unhelpful opinions

In response to Defendant's motion, Plaintiff asserts that based on the bench trial status of this case:  "[t]he Court need not decide now, before trial, whether the supplemental opinions of Caruso are admissible."  Doc. No. [372], p. 5.

In addition, in its reply briefing on a separate motion, Defendant Autoliv recognized that "[t]here is simply less risk that the Court will be persuaded by Meyer's and Caruso's legal, lay, and discovery-related opinions, as a jury may have been."  Doc. No. [383], p. 3, n.4.

As stated above, the law does not permit an expert to testify as to legal conclusions.  See generally Cook, 402 F.3d at 1113.  However, Plaintiff is correct in that due to the bench trial status of this case, it is not necessary to provide a definitive ruling at this time.  The Court exercises its discretion to allow Mr. Caruso's testimony (as well as vigorous cross-examination) and determine admissibility later.  See Johnson, 616 F. Supp. 2d at 1256 ("Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability.").

## 2.  Timeliness

In response to Defendant Autoliv's timeliness arguments, Plaintiff asserts that Mr. Caruso "was not designated to give an opinion on the relationship between Autoliv and Mazda before the end of discovery in 2016 because Autoliv was concealing crucial evidence about that relationship."  Doc. No. [372], p. 2. Plaintiff further asserts that Mr. Caruso prepared his supplemental report "because there was new evidence and that evidence allowed him to form his opinions."  Id. at p. 10, n.8.

After review and considering the discovery history of this case, as well as well as the evidence presented at the May 16, 2019 hearing (on the matter of sanctions), the Court, in the exercise of its discretion, is unable to uphold Defendant's untimeliness arguments.  Defendant Autoliv's motion is **DENIED** on this ground.

## CONCLUSION

The Motion to Exclude Certain Opinions of **William Van Arsdell** under Federal Rule of Evidence 702 and Daubert (Doc. No. [360]) is **DENIED IN PART**

**(WITHOUT PREJUDICE) AND GRANTED IN PART** in accordance with the rulings herein.  Certain rulings are also **DEFERRED** until trial.

The Motion to Exclude Certain Opinions of **Elizabeth Raphael** under Federal Rule of Evidence 702 and <u>Daubert</u> (Doc. No. [362]) is **DENIED IN PART, GRANTED IN PART, AND DEEMED MOOT IN PART** in accordance with the rulings herein.  Certain rulings are also **DEFERRED** until trial.

The Motion to Exclude the Alternative Design Opinion of **Steven Meyer** (Doc. No. [363]) is **DENIED**.  The Motion to Exclude the Supplemental Opinions of **Steven Meyer** (Doc. No. [ 364]) is **DENIED IN PART** and **GRANTED IN PART** in accordance with the rulings herein.

The Motion to Exclude Supplemental Opinions of **Chris Caruso** (Doc. No. [365]) is **DENIED** in accordance with the rulings herein.[30]

**IT IS SO ORDERED** this 11th day of March, 2020.

<u>s/Steve C. Jones</u>
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[30] A ruling on the parties' proposed pretrial order (Doc. No. [358]) and trial scheduling will follow at a later date.

51