# EXHIBIT 1

James E. Butler, Jr., P.C.*
Joel O. Wooten
Robert D. Cheeley
Brandon L. Peak
John C. Morrison III

Tedra C. Hobson
Mary K. Weeks
Robert H. Snyder**
David T. Rohwedder*
Morgan E. Duncan    * admitted in GA & AL
Joseph M. Colwell   ** admitted in GA & FL



Butler Wooten
Cheeley & Peak LLP

April 6, 2015

*Via Certified Mail/Return Receipt Requested*
*No. 9414 7266 9904 2020 8507 38*

C. Bradford Marsh, Esq.
Ashley W. Broach, Esq.
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St., N.E., Suite 300
Atlanta, GA 30309

*Via Certified Mail/Return Receipt Requested*
*No. 9414 7266 9904 2020 8506 08*

Douglas G. Scribner, Esq.
Jenny A. Mendelsohn, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

*Via Certified Mail/Return Receipt Requested*
*No. 9414 7266 9904 2020 8505 92*

Michael J. Sullivan, Esq.
Vonnetta L. Benjamin, Esq.
Womble Carlyle Sandridge & Rice, LLP
271 – 17th Street, N.W., Suite 2400
Atlanta, GA 30363-1017

Re:   *Jamie Lee Andrews, et al. v. Mazda Motor Corporation, et al.*, United States District Court for the Northern District of Georgia Atlanta Division
Civil Action File No. 1:14-cv-03432-WSD

Dear Counsel:

This letter represents a one-time, time-limited demand to resolve all of Jamie Andrews' claims in the above-styled case for $9.5 million. This is not an invitation to trade numbers. The offer is firm.

## Liability

At approximately 7:18 p.m. on April 12, 2013, in Cobb County, Georgia, Micah Andrews was involved in a wreck in his 2005 Mazda3. When his car struck a cluster of trees, the safety features of the Mazda catastrophically failed him. His airbag did not deploy. Worse still, his seatbelt spooled completely out. Because of the defects in the Mazda3, Mr. Andrews was essentially an unrestrained occupant in a head-on collision. As a result, his head slammed into the steering wheel. The injuries he received from that impact were fatal.

**REPLY TO Columbus:**
105 13th Street • Columbus, GA 31901
P.O. Box 2766 • Columbus, GA 31902
706.322.1990 • 1.800.242.2962 • FAX 706.323.2962

**Atlanta Office:**
2719 Buford Highway • Atlanta, GA 30324
404.321.1700 • 1.800.242.2962 • FAX 404.321.1713

www.butlerwooten.com

BUTLER WOOTEN CHEELEY & PEAK LLP

C. Bradford Marsh, Esq., Ashley W. Broach, Esq.
Douglas G. Scribner, Esq., Jenny A. Mendelsohn, Esq.
Michael J. Sullivan, Esq., Vonnetta L. Benjamin, Esq.
April 6, 2015
Page 2

      All Defendants have had the opportunity to inspect Mr. Andrews' Mazda3 and review the documents Plaintiff produced at ANDREWS 0001-0890. All Defendants know that the safety features of the Mazda3 indisputably did not work.

      Mr. Andrews was wearing his seatbelt. Autopsy photographs document the seatbelt marks on his chest. And the physical evidence in the car demonstrates his seatbelt was buckled and had to be cut off by first responders. Unfortunately for Mr. Andrews, it simply did not matter that he was wearing his seatbelt. The seatbelt was a useless piece of fabric that provided no protection to him at all in the wreck.

      The questions relating to liability are simple. With respect to the airbag, this was a frontal collision that was significant enough to deploy the airbag. The impact occurred in a location where the airbag sensor should have detected it. But the airbag did not deploy. There is no legitimate defense for that failure to deploy.

      With respect to the seatbelt, one of two things happened in this wreck: either the seatbelt was designed to restrain Mr. Andrews in this collision and it *did not* work as designed, or the seatbelt was designed to fail him in this collision and it *did* work as designed. Either way, there is no legitimate defense for the seatbelt spooling out.

      The questions relating to causation are simple. The collision itself would not have killed or seriously injured Mr. Andrews. In fact, the occupant compartment of the Mazda3 was entirely intact after the wreck. Mr. Andrews' fatal injury was caused not from wreck damage, but rather from the impact of his head slamming into the steering wheel. That impact would not have happened if the airbag and seatbelt would have worked. There is no legitimate defense as to causation.

### Damages

      Mr. Andrews survived after his head struck the steering wheel. He survived at least long enough for a witness, William Kemp, to pull off the highway, approach the Mazda3, open the door, and try to talk to him. Mr. Kemp discovered him slumped over in the car, with blood streaming from his head. He "heard [Mr. Andrews] let out a groan and saw him try to lift his head." Kemp Aff., at ¶ 9. It should go without saying that Mr. Andrews' suffering and pain during this period was immense.

BUTLER WOOTEN CHEELEY & PEAK LLP

C. Bradford Marsh, Esq., Ashley W. Broach, Esq.
Douglas G. Scribner, Esq., Jenny A. Mendelsohn, Esq.
Michael J. Sullivan, Esq., Vonnetta L. Benjamin, Esq.
April 6, 2015
Page 3

This case involves significant special damages. Mr. Andrews had a successful career as a technical professional in some of the biggest concerts and shows in the world. He had parlayed his experience and skills into a leadership position at the Georgia Aquarium. He was a hard worker with a very bright future ahead of him. Obviously, he lost a lifetime of future income.

But the most devastating loss was the loss of Mr. Andrews' life. He had realized his dream of having a family through his marriage to Jamie and the birth of their daughter, Sarah Cadence. "Cady" was the center of his world. Mr. Andrews was an active, loving, involved father. He spent every weekend with his wife, daughter, and extended family. He loved his family, his friends, and most of all, Cady. Cady was four years old at the time her father died. He missed a lifetime of loving his daughter, guiding her, and watching her grow. Certainly his pain and suffering were great, and his lost income was substantial. But the loss of his promising life far eclipses every other element of damages.

### Time-Limited Demand

We hereby submit a time-limited, one-time offer to compromise all claims on behalf of Jamie Andrews for $9,500,000 (nine million five hundred thousand and 00/100 Dollars) cash (payable to Jamie Andrews, individually and as Administrator of the Estate of Micah Andrews, and her attorneys). In exchange for that payment, Jamie Andrews will provide a general release of all claims. A copy of the release to which we will agree is enclosed. It makes no difference to us who or in what proportions Defendants satisfy this demand.

Our demand is a 30-day, time-limited, one-time demand and is made specifically pursuant to O.C.G.A. §51-12-14 for unliquidated damages in a tort action. If Defendants fail to pay the amount demanded, then pursuant to the provisions of that statute, Ms. Andrews shall be entitled to receive interest on the claimed sum if, upon trial of the case in which the claim is made, the judgment is for an amount not less than the sum claimed.

We are providing additional copies of this demand letter and request that the copies be provided to in house counsel for each Defendant.

To be valid, we must receive your acceptance at the Atlanta office of Butler Wooten Cheeley & Peak LLC by fax, mail, or other delivery within **30 days** of receipt of this certified letter. At the end of that 30-day period, this offer will stand withdrawn. If this offer is not accepted within the time and manner specified above, Ms. Andrews will proceed to pursue her claims for damages to judgment.

BUTLER WOOTEN CHEELEY & PEAK LLP

C. Bradford Marsh, Esq., Ashley W. Broach, Esq.
Douglas G. Scribner, Esq., Jenny A. Mendelsohn, Esq.
Michael J. Sullivan, Esq., Vonnetta L. Benjamin, Esq.
April 6, 2015
Page 4

                Sincerely,

                BUTLER WOOTEN CHEELEY & PEAK LLP

                James E. Butler, Jr.

JEBjr/bt
Enclosure
cc:    William L. Ballard, Esq.
        Gregory R. Feagle, Esq.

## RELEASE AND SETTLEMENT AGREEMENT

1. **Release:** IN CONSIDERATION OF NINE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($9,500,000.00), in hand paid by or on behalf of [Defendants] ("Payers") to "the Trust Account of Butler Wooten Cheeley & Peak LLP for the benefit of Jamie Lee Andrews as Surviving Spouse of Micah Lee Andrews, Deceased and Jamie Lee Andrews as Administrator of the Estate of Micah Lee Andrews, Deceased" (Jamie Lee Andrews will be referred to as "Claimant"), Claimant, individually and for and on behalf of any children, wards, heirs, assigns, and successors of Claimant, do hereby release and forever discharge Payers, together with its principals, heirs, executors, administrators, agents and assigns, as well as all parent, subsidiary, and affiliated corporations, joint ventures, component part suppliers, and entities who are or may be liable for and from any and all claims, demands, rights and causes of action of any kind and nature for any and all known and unknown, foreseen and unforeseen personal injury or foreseen and unforeseen property damage, arising or resulting from, connected with or in any way relating to the automobile accident which occurred on April 12, 2013, on Interstate 575 in Cobb County, Georgia, near the intersection with Shallowford Road, as more fully addressed and described in *Jamie Lee Andrews, et al. v. Mazda Motor Corporation, et al.*, currently pending in the United States District Court for the Northern District of Georgia Atlanta Division wherein Claimant is named as Plaintiff and Mazda Motor Corporation, Mazda Motor of America, Inc., Autoliv, Inc., Autoliv ASP, Inc., Autoliv AB, Autoliv Japan, Ltd., Autoliv Safety Technology, Inc., Robert Bosch GmbH, Robert Bosch LLC, Robert Bosch North America Corporation, Bosch Corporation, and John Does 1-5 are currently named as Defendants, same being Civil Action File No. 1:14-CV-03432-WSD ("Incident").

   IT IS UNDERSTOOD AND AGREED that this is a release of any and all claims of Claimant which were or could have been asserted against the above-named Payers in the referenced civil suit, which upon execution of the within Release and Settlement Agreement will be dismissed with prejudice.

   IT IS UNDERSTOOD AND AGREED that the payment of said amount by or on behalf of the Payers is not to be construed as an admission of liability on part of the Payers, but that said payment is in compromise and settlement of a claim which is not admitted but which is denied and disputed by said Payers; and that this Release is being given by Claimant voluntarily and not based upon any representations or statements of any kind made by the Payers or its representatives, as to the merits, legal liability, tax consequences, or value of the claims against the Payers or any other matter relating thereto. It is also understood and agreed that all sums paid hereunder are for compensation for personal injuries and damages arising from an occurrence as defined by the Internal Revenue Code, but that Claimant have not been "made whole" for their losses.

2. **Indemnification.**

   Claimant expressly agree to defend, indemnify and hold harmless the Released Parties against any and every future claim, lien, and expenses of every kind and nature, made by, through, or on behalf of Claimant, including, but not limited to, statutory and common law liens, property liens, medical liens, hospital liens, governmental liens, child support liens, workers' compensation liens, subrogation interests or attorney liens, filed by or owing to any person, firm, company, organization, insurer, state, and/or federal agencies or corporations having a claim against or through the Claimant related to the claims made the basis of the Lawsuit against the Payor should any claim, demand or suit therefore be made. Without limitation of the foregoing and in addition to it, Claimant specifically agree that this indemnity includes an agreement to indemnify and hold harmless the Payor against any and every (a) claim seeking to enforce any health care lien, hospital lien, right of reimbursement for conditional payment for medical services, or statutory claim filed or asserted as a result of medical treatment provided to Claimant as a result of the Incident, including, but not limited to, those asserted by the Veterans Administration, Medicare, Medicaid and any workers' compensation carrier; (b) claim brought by any person related to the injuries suffered by Claimant as a result of the Incident; and (c) claim brought by any person or entity regarding property damage incurred as a result of the Incident. It is expressly understood that the indemnity and hold harmless agreements provided for herein are intended to indemnify and hold harmless the Payers from the consequences of their own strict liability, negligence, or breach of warranty, whether that strict liability, negligence, or breach of warranty, is the sole or concurring cause of any injury, damage, claim, demand, cause of action, suit or liability. Claimant shall not be responsible for Payers' attorneys' fees. Claimant are responsible for any current or future liens including Medicare.

3. **Acknowledgment by Claimant:** IT IS FURTHER UNDERSTOOD AND AGREED that Claimant has completely read and understood the terms of this Release and had the opportunity to discuss same with counsel and agreed that the Release is voluntarily accepted for the purpose of making a full Release of all actions, causes of action, claims and demands for, upon, or by reasons of any damage, loss or injury, known or unknown, which may be traced either directly or indirectly to the above-referenced Incident, as now appearing or as may appear at any time in the future, no matter how remotely they may arise or result from, be connected with, be a consequence of or relate to the aforesaid Incident. This Release is executed with the full knowledge and understanding on the part of Claimant that there may be more serious consequences, damages or injuries or separate or distinct consequences, damages or injuries as a result of the aforementioned Incident, which are not now known, and that more serious and permanent injuries or separate and distinct injuries, may result from the alleged injuries and damages arising or resulting from, relating to or as a consequence of, or in any way connected to the Incident aforementioned, and any payment issued to the Claimant in consideration of this release, is accepted as final payment of the considerations set out herein.

4. **Severability:** This Agreement is intended to be performed in accordance with and to the extent permitted by all applicable laws, ordinances, rules and regulations. If any

provision of this Agreement, or the application thereof to any person, corporation, entity or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances, shall not be affected thereby but rather shall be enforced to the fullest extent permitted by law.

5. **Entire Understanding.** This Agreement contains the entire understanding of the parties and agreement by and between the parties hereto with respect to the subject matter hereof; this Agreement supersedes any prior understandings or agreements, oral, implied or written, and none of the parties is relying on any promises, representations, communications, statements, assertions, declarations, admissions, agreements, arrangements or understandings, oral, implied, or written, that are not fully expressed herein. This Agreement is a result of arms length negotiation between the parties.

6. **Binding Effect:** The terms of this Agreement are binding as to each and every party hereto, their agents, successors, assigns, heirs, administrators, servants, employees, subsidiaries, affiliates and trustees.

7. **Choice of Law:** This Release is to be governed in all respects by the laws of the State of Georgia.

8. **No Assignment of Claims:** Claimant represent that no claim released hereunder has been assigned, expressly or impliedly or by any other operation of law, and that all claims released herein are owned by them, and they have the sole authority to release them.

9. **Cooperative Effort:** This Agreement has been drafted through a cooperative effort of all parties, and no party shall be considered the drafter of this Agreement so as to give rise to any presumption or convention regarding construction of this document.

10. **Amendment of Agreement:** This Agreement may not be changed orally, but only by a writing signed by all parties.

11. **Headings:** The headings contained herein are for purposes of reference only and have no legal significance.

*[Continued on next page.]*

Signed, sealed and read this \_\_\_\_\_ day of _____, 2015.

_____
JAMIE LEE ANDREWS

Sworn to and subscribed before me
this \_\_\_\_ day of _____, 2015.

_____
NOTARY PUBLIC

My Commission Expires:
_____