# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAMIE LEE ANDREWS, as surviving )
spouse of Micah Lee Andrews, Deceased, )
and JAMIE LEE ANDREWS, as )
Administrator of the Estate of Micah Lee )
Andrews, Deceased, ) Case No. 1:14-cv-3432-SCJ
)
     Plaintiffs, )
v. )
)
AUTOLIV JAPAN, LTD., )
)
     Defendant. )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND AND MODIFY THE COURT'S FINAL ORDER AND JUDGMENT

On January 10, 2022, following trial and the issuance of the Court's Final Order and Judgment ("Judgment") in this case, Plaintiff filed a Motion to Amend and Modify the Court's Judgment ("Motion"), arguing—for the first time in this seven-year litigation—that the Court cannot, as a matter of law, reduce the Judgment against Autoliv based on former Defendant Mazda's percentage of fault.

This argument, as an initial matter, should be rejected as untimely. But to the extent the Court considers the argument, the Court should reject it because *Carmichael*, the Georgia Court of Appeals decision upon which Plaintiff relies, was incorrectly decided. Indeed, the Georgia Supreme Court is unlikely to decide the

issue as *Carmichael* did, and this Court must construe the apportionment statute as it believes the Georgia Supreme Court would.

That said, if the Court concludes that it erred (which it did not) in reducing the judgment, the principles of joint and several liability would apply, and the Court would be required to set-off the amount of the Judgment against Autoliv based on the amount of the settlement payments made by Mazda and Bosch to Plaintiff.

With her Motion, Plaintiff also argues that she is entitled an award of prejudgment interest.  In response, Autoliv submits that the Court should consider Plaintiff's entitlement to interest in conjunction with the arguments in Autoliv's forthcoming post-trial motion.  In any event, however, the interest calculation that Plaintiff has submitted is incorrect.

For these reasons, as set forth more fully below, Autoliv respectfully requests that the Court deny the Motion.

**LEGAL STANDARD**

Although Rule 52(b) permits a court to amend its findings following a bench trial, "the purpose of this rule is to allow the court to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence, but not to allow the relitigation of old issues, a rehearing on the merits, or the presentation of new theories of the case." *Hannover Ins. Co. v. Dolly Trans*

*Freight, Inc.*, No. 6:05-CV-576-ORL-19DAB, 2007 WL 170788, at *2 (M.D. Fla. Jan. 18, 2007).  And with respect to Rule 59 in the context of a bench trial, "a trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice." *See Holiday Hosp. Franchising, LLC v. J&W Lodging, LLC*, No. 1:17-CV-01663-ELR, 2021 WL 2980586, at *2 (N.D. Ga. July 12, 2021) (internal quotation marks and citation omitted).  In this case, no such circumstances exist as to warrant the relief that Plaintiff seeks under Rules 52 and 59.

## **ARGUMENT**

### I.   **Autoliv Should Not Be Responsible for All Compensatory Damages.**

#### A.   **Plaintiff's Apportionment Argument Should Be Rejected as Untimely.**

In her Motion, Plaintiff argues—for the first time in this long litigation—that the Court cannot reduce the damages award against Autoliv based on an apportionment of fault to Mazda because Autoliv was the only remaining defendant by the time of trial.  According to Plaintiff, this is not, therefore, a case "brought against more than one person," and O.C.G.A. § 51-12-33(b) does not apply at all. Plaintiff did not raise this argument at any point before trial, at trial, or before the Court issued its Judgment.

Plaintiff maintains that this argument only became available to her on November 1, 2021, when the Georgia Court of Appeals issued its decision in *Georgia CVS Pharmacy, LLC v. Carmichael*, 865 S.E.2d 559 (Ga. Ct. App. 2021), *petition for cert. pending*.[1]  *Carmichael* held that whether a case is "brought against more than one person" depends on whether there is more than one named defendant at trial. 865 S.E.2d at 570.  But on this point, *Carmichael* did not purport to break new ground.  Indeed, the Court of Appeals did not treat the issue as one of first impression in *Carmichael*, and it did not conduct any fresh analysis of the statute.  To the contrary, it simply followed its prior decision in *Schriever v. Maddox*, 259 Ga. App. 558, 578 S.E.2d 210 (2003)—a case decided more than 11 years before the institution of the instant case.[2]  *See id.*

As Autoliv explains below, the Court of Appeals was wrong in *Carmichael* to follow *Schriever,* and the Georgia Supreme Court is unlikely to decide the issue as *Carmichael* did.  But if *Carmichael* were correctly decided, it would only be because

---

[1] Georgia CVS Pharmacy, LLC filed a petition for certiorari with the Georgia Supreme Court on December 29, 2021, and that petition remains pending. In that petition, CVS seeks review of several issues, including the holding in *Carmichael* that a case is "brought against more than one person" only when more than one defendant remains in the case at the time of trial.  Petition for Writ of Certiorari, *Georgia CVS Pharmacy, LLC v. Carmichael* (Ga. filed Dec. 29, 2021) (No. S22C0527), attached as Exhibit 1.

[2] The *Carmichael* Court's reliance on *Schriever* is discussed in more detail in Section I.B *infra*.

*Schriever* preordained the result.  For that reason, Plaintiff could have made her new argument about O.C.G.A. § 51-12-33(b) long before trial—and included it in the pretrial order—but she did not.  As a result, the Court should conclude that this argument is untimely and has been waived.  *See Rockwell Int'l Corp. v. United States*, 549 U.S, 457, 474 (2007) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . ." (internal quotation marks and citation omitted)).

**B.     *Carmichael* Should Not Be Followed Here.**

Even if the Court permits Plaintiff to be heard on the merits of her new apportionment argument, the Court should reject that argument because *Carmichael* is wrongly decided, and the Georgia Supreme Court is unlikely to decide the issue as *Carmichael* did.

As an initial matter, Georgia's apportionment statute—O.C.G.A. § 51-12-33—has three provisions that govern the reduction of damages based on one's percentage of fault.  *See Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 862 S.E.2d 295, 299 (Ga. 2021).  Subsection (a) describes what should be done when the plaintiff shares responsibility for the injury or damages:

> Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the

> percentage of fault of the plaintiff and the judge shall reduce the amount
> of damages otherwise awarded to the plaintiff in proportion to his or
> her percentage of fault.

*Id.* (quoting O.C.G.A. § 51-12-33(a)).  Subsection (g) provides that "the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed."  *Id.* (quoting O.C.G.A. § 51-12-33(g)) (internal quotation marks omitted).   And subsection (b) provides for instances in which someone other than the plaintiff shares responsibility with a named defendant for the injury or damages:

> <u>Where an action is brought against more than one person</u> for injury to person or property, <u>the trier of fact</u>, in its determination of the total amount of damages to be awarded, if any, <u>shall</u> after a reduction of damages pursuant to subsection (a) of this Code section, if any, <u>apportion its award of damages among the persons who are liable according to the percentage of fault of each person</u>. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

*Id.* (quoting O.C.G.A. § 51-12-33(b)) (emphasis added).

In *Hatcher*, the Georgia Supreme Court held that, under O.C.G.A. § 51-12-33(b), there is no right to an apportionment of damages unless an action "is brought" against more than one defendant. *Hatcher*, 862 S.E.2d at 300.  Three months later, in *Carmichael*, the Georgia Court of Appeals cited *Schriever* and held that the determination of whether "an action is brought against more than one person" should

be made at the time of trial, not when the action is actually "brought."  865 S.E.2d at 570-71.

In doing so, the *Carmichael* Court concluded that even if a case was filed against multiple defendants, the case is only "an action . . . brought against more than one person" for purposes of apportionment if there are multiple defendants remaining at the time of trial.  *See id.* (concluding that since "CVS was the only named defendant in the case by the time the case proceeded to trial[,]" then "the case was no longer 'an action [] brought against more than one person' for apportionment purposes" (quoting *Schriever*, 259 Ga. App. at 561, 578 S.E.2d at 213-14)).

The Supreme Court of Georgia is unlikely to follow this holding from *Carmichael*, and for that reason, this Court should not follow it.  Indeed, under the *Erie* doctrine, this Court must construe and apply O.C.G.A. § 51-12-33(b) as it believes the Georgia Supreme Court would. *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005). As the Eleventh Circuit has explained:

> Where the highest court—in this case, the [Georgia] Supreme Court— has spoken on the topic, we follow its rule. Where that court has not spoken, however, we must predict how the highest court would decide this case. Decisions of the intermediate appellate courts—here, the [Georgia Court of Appeals]—provide data for this prediction. As a general matter, we must follow the decisions of these intermediate courts. But we may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise.

*Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) (citations omitted); *see also Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009). And here, with respect to the meaning of O.C.G.A. § 51-12-33(b), there are good reasons to conclude that the Georgia Supreme Court would reject *Carmichael* and instead hold that an "action is brought against more than one person" when more than one person is named as a defendant in the plaintiff's initial pleading.

To begin, when interpreting a statute, the Georgia Supreme Court "presume[s] that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 173, 751 S.E.2d 337, 340 (2013) (internal quotation marks and citation omitted). In other words, the Georgia Supreme Court ascertains the meaning of a statute from its text, which must be read "in its most natural and reasonable way, as an ordinary speaker of the English language would." *Zaldivar v. Prickett*, 297 Ga. 589, 591, 774 S.E.2d 688, 691 (2015) (internal quotation marks and citation omitted). And in this case, the statutory text at issue has a plain meaning inconsistent with the holding in *Carmichael*.

Indeed, dictionaries recognize that to "bring an action" means "to sue; institute an action." Black's Law Dictionary (11th ed. 2019) ("bring an action"); *see also* Black's Law Dictionary 174 (5th ed. 1979) ("To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit.

. . . A suit is 'brought' at the time it is commenced. . . ."); Random House Unabridged

Dictionary, *available at www.dictionary.com* ("to bring") ("Law. to commence: to

bring an action for damages.").   Georgia's appellate courts and other sources also

similarly recognize that the word "brought" refers to the commencement of a legal

proceeding:

> To "bring" an action "has a settled customary meaning at law, and
> refers to the initiation of legal proceedings in a suit." Black's Law
> Dictionary (6th ed. 1990); *see also* Merriam-Webster Online
> Dictionary (2020) ("bring" defined as "to cause to exist or occur," such
> as to institute or to bring a legal action).

*CL SNF, LLC v. Fountain*, 355 Ga. App. 176, 182-83, 843 S.E.2d 605, 612 (2020),

*rev'd on other grounds*, 863 S.E.2d 116 (Ga. 2021).

Moreover, the Georgia Supreme Court stated long ago in *Jordan v. Bosworth*,

123 Ga. 879, 880, 51 S.E. 755, 756 (1905) that "[t]here is no substantial difference

between *bringing* a suit, and *commencing* a suit."   (Emphasis in original); *see also*

*Carter v. Allen*, 940 F.3d 1233, 1239 (11th Cir. 2019) ("[T]his Court has held that

'brought' refers to 'the initiation of legal proceedings in a suit.'"); *Goldenberg v.*

*Murphy*, 108 U.S. 162, 163-64 (1883) ("We see no significance in the fact that in the

legislation . . . the word 'commenced' is sometimes used, and at other times the word

'brought.' In this connection the two words evidently mean the same thing, and are

used interchangeably."); *Soileau v. Smith True Value and Rental*, 2012-1711, p. 9

(La. 6/28/13); 144 So. 3d 771, 778 ("[T]he legislature used the word 'brought' as in 'initially filed' or 'commenced.'").

Thus, when reading the text of Georgia's apportionment statute in light of the common and customary usage of "brought" in a legal context—which is the analysis required by *Hatcher* and a long line of Georgia Supreme Court opinions about how statutes are to be construed—it is clear that O.C.G.A. § 51-12-33(b) applies to actions, like this one, that are filed against multiple defendants.[3]   For its part, however, the Georgia Court of Appeals in *Carmichael* did not engage in this or any other meaningful analysis of the statutory text.  *See* 865 S.E.2d at 570.  To the contrary, in *Carmichael*, the Georgia Court of Appeals simply pointed to *Schriever*—another decision in which the Court did not engage in any meaningful analysis of the statutory text.  *See id.; Schriever*, 259 Ga. App. at 561, 578 S.E.2d at 213-14.

And more importantly, *Schriever* concerned a *different* version of the statute that *only* permitted apportionment among named defendants[4] (and did not contemplate apportionment to nonparties), such that the absence at trial of any

---

[3] In her Complaint, Plaintiff named more than 13 different Defendants.  *See* Dkt. No. [1-2] at 13.

[4] The statute was amended to authorize nonparty apportionment by Ga. L. 2005, p. 1, § 12, two years after *Schriever*.

additional named defendant to whom fault could be apportioned would be dispositive of whether the apportionment-among-named-defendants statute could apply (irrespective of the meaning of "brought against more than one person"). *See Schriever,* 259 Ga. App. at 561, 578 S.E.2d at 213-14; *cf. Dep't of Transp. v. Blair*, 220 Ga. App. 342, 345, 469 S.E.2d 446, 450 (1996) (interpreting the prior version of the statute); *see also Dekalb Cnty. Bd. of Tax Assessors v. Barrett*, 361 Ga. App. 598, 604, 865 S.E.2d 192, 196 (2021) (indicating that a case construing a statute is not precedent for the construction of a different statute, even when the different statute uses some of the same language).

Accordingly, for these reasons, the Court should not—and need not[5]—follow *Carmichael* and increase the award of compensatory damages against Autoliv. Instead, the Court should conclude that it was correct in reducing the damages award

---

[5] *See Lama*, 633 F.3d at 1348; *see also Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 277 (5th Cir. 205) (under *Erie* doctrine, looking to decisions of state supreme court to ascertain applicable rules of statutory construction and stating that "[w]hen we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute"); *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1047 (9th Cir. 2014) ("[T]he text of the statute is 'persuasive data' that the [intermediate state appellate court] misinterpreted [the statute]."); *McGeshick v. Chourcair*, 9 F.3d 1229, 1234 (7th Cir. 1993) (declining to follow intermediate state appellate court decision on statutory interpretation that was "contrary to the clear intent of the statute").

against Autoliv based on Mazda's percentage of fault, as this is a case "brought" against more than 13 different defendants.  *See* O.C.G.A. § 51-12-33(b); Dkt. No. [1-2] at 13.

### C.   To the Extent the Court Follows *Carmichael*, the Judgment Should Be Set-Off by the Amounts Mazda and Bosch Paid Plaintiff in Settlement.

That said, if the Court follows *Carmichael* and concludes that apportionment is inappropriate, further modification of the Judgment would be necessary because Autoliv would be entitled to have the damages award set-off by the amounts of the settlement payments made by Mazda and Bosch.

Indeed, as *Hatcher* recognized, where apportionment does not apply, the principles of joint and several liability that preexisted the apportionment statute still apply.  *See* 862 S.E.2d at 300 n.2 ("Where apportionment does not apply, joint tortfeasors who both proximately cause a single injury are jointly and severally liable for damages caused by the injury, and a tortfeasor may seek contribution from its joint tortfeasor(s)."); *Zurich Am. Ins. Co. v. Heard*, 321 Ga. App. 325, 330, 740 S.E.2d 429, 432 (2013) ("Based upon the plain language of subsection (b), joint liability and the right of contribution no longer exist when damages have been apportioned by the trier of fact . . . . Based upon this plain language, it cannot be

interpreted to abolish the right of contribution between settling joint tortfeasors when there has been no apportionment of damages by a trier of fact." (emphasis omitted)).

And under the principles of joint and several liability, a joint tortfeasor is entitled to a set-off of any payments made by another joint tortfeasor so as to prevent a double recovery. *See Brewer v. Insight Tech., Inc.*, 301 Ga. App. 694, 700-01, 689 S.E.2d 330, 337 (2009) ("[W]here one or more tortfeasors enter a settlement with a plaintiff, a remaining tortfeasor may be entitled to a set off of payments previously made, to prevent double recovery."); *Kroger Co. v. Mays*, 292 Ga. App. 399, 401, 664 S.E.2d 812, 814-15 (2008) ("If the parties are properly considered joint tortfeasors . . . a joint tortfeasor would be entitled to a set-off of any amount paid by another joint tortfeasor.").

Georgia law provides that two entities are joint tortfeasors if their "separate and independent acts of negligence . . . combine naturally and directly to produce a single indivisible injury." *Zurich*, 321 Ga. App. at 331, 740 S.E.2d at 433 (internal quotation marks and citation omitted).  Here, that is the case as to Autoliv and Mazda, as this lawsuit involves a single injury (i.e., a head injury resulting in death) that, according to Plaintiff, was caused by a defectively-designed airbag sensor system (for which she asserted claims against Mazda and Bosch) and a defectively-designed seatbelt (for which asserted claims against Mazda and Autoliv).  *See* Sec.

Am. Compl., Dkt. No. [90], at 2-3 ("Because of these defects, Mr. Andrews's head slammed into the steering wheel, causing fatal injuries."); *id.* ¶¶ 49, 59, 69.

And upon the conclusion of trial, the Court concluded that both the airbag sensor system and the seatbelt were defective. Judgment at 15. In doing so, the Court held Autoliv—the only remaining Defendant—strictly liable for the design of the seatbelt pursuant to Georgia's strict liability statute, O.C.G.A. § 51-1-11. *Id.* at 40, 55. However, the Court also apportioned fault for Mr. Andrews's death equally between Autoliv and former Defendant Mazda, having concluded that Autoliv "produce[d] evidence that Mazda . . . breached a legal duty . . . and that breach was a proximate cause of Mr. Andrew's injuries and death." *Id.* at 72-75; *see also id.* at 63 (specifying the showing necessary for the Court to apportion fault to Mazda).[6] Thus, Mazda is plainly a joint tortfeasor, and the amount Mazda paid Plaintiff should be set-off from the amount of the Judgment for which Autoliv is liable. *See Brewer*, 301 Ga. App. at 700-01, 689 S.E.2d at 337; *Kroger*, 292 Ga. App. at 401, 664 S.E.2d at 814-15. Otherwise, Plaintiff would receive a double recovery. *See id.*

---

[6] *See also* Judgment at 74 ("Plaintiff also acknowledged in her proposed findings of fact that the evidence adduced at trial allows the Court, as factfinder, to conclude that Mazda 'breached a legal duty in the nature of tort' owed to protect Mr. Andrews and thus is at 'fault' for Mr. Andrews's injuries and death.").

Finally, while the Court declined to apportion any fault to Bosch, Autoliv submits that the evidence adduced at trial demonstrates that the elements of Georgia's strict products liability statute are met as to Bosch, and as a result, Bosch is undoubtedly a joint tortfeasor. *See Gault v. Nat'l Union Fire Ins. Co.*, 208 Ga. App. 134, 137, 430 S.E.2d 63, 66 (1993) (noting that "given that the theoretical basis of a strict liability claim is in tort, a defendant in a strict liability action is considered a joint tortfeasor with other negligence defendants provided the other aspects of the joint tortfeasor definition are met" (citation omitted)).

Under Georgia law, three elements must be satisfied in order to prove a claim for strict products liability:

(1)     The entity at issue manufactured the product at issue;

(2)     when sold, the product at issue was not merchantable and reasonably suited for its intended use (i.e., it was defective); and

(3)     that its condition when sold was a proximate cause of the injuries at issue.

*See* Judgment at 37 (citing O.C.G.A. § 51-1-11(b); *Chi. Hardware & Fixture Co. v. Letterman*, 236 Ga. App. 21, 24, 510 S.E.2d 875, 877-78 (1999)).  And here, the trial record plainly demonstrates that all of these elements are met as to Bosch.

Specifically, as to the first element, the trial record demonstrates that Bosch manufactured the airbag sensor system in Mr. Andrews's 2005 Mazda 3.  *See*

Judgment at 20, 71 (noting, on multiple occasions, that "<u>Bosch's</u> airbag electronic front sensor system component ultimately [] caused the non-deployment of the airbag" (emphasis added)); Trial Tr. Vol. 3 A.M. at 119:19-21 (Plaintiff's airbag expert, Chris Caruso, testifying that Bosch "ma[de] available to Mazda[] the option to select two sensors instead of one").[7]

Bosch also "manufactured" the airbag sensor system at issue, for purposes of strict liability under O.C.G.A. § 51-1-1, because it was "actively involved in the design, specifications, or formulation" of the system. *See Davenport v. Cummins Ala., Inc.*, 284 Ga. App. 666, 671, 644 S.E.2d 503, 507 (2007); Judgment at 20, 71; Def. Trial Ex. 101 (nine-page Bosch document discussing design options for the airbag sensor system for the subject vehicle); Trial Tr. Vol. 3 A.M. at 107:10--12 (Plaintiff's airbag expert testifying that if the "<u>Bosch-designed</u> electronic system had sent a signal to the Autoliv airbag, it would have deployed" (emphasis added)), 119:19-18 (Plaintiff's airbag expert acknowledging that "Bosch sa[id] to Mazda . . . the use of two [electronic front sensors] enhances the performance of the sensing system especially for compliance").

---

[7] *See also* Dkt. No. [90] ¶¶ 38 ("Bosch designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective airbag system installed in Mr. Andrews's Mazda 3."), 41 ("Bosch built and sold to Mazda designs for those parts of the occupant restraint system that were not reasonable but were instead unreasonably dangerous . . . ."), 74.

As to the second element, the trial record demonstrates that, when the 2005 Mazda 3 was sold, its airbag sensor system was defective.  *See* Trial Tr. Vol. 3 A.M. at 96:23-97:2 (Plaintiff's airbag expert acknowledging his opinion that the "airbag electronic front system was defectively designed"), 107:10-114:25 (Plaintiff's airbag expert explaining that if the system had been designed with any one of his proposed alternative designs (including the use of dual sensors), the system would not have been unsafe and unreasonably dangerous); *see also* Judgment at 20, 71 (noting, on multiple occasions, that "Bosch's airbag electronic front sensor system component ultimately [] caused the non-deployment of the airbag"); Trial Tr. Vol. 3 A.M. at 20:14-16 (Plaintiff's airbag expert testifying that "the failure to deploy the seatbelt pretensioner and airbag in the subject collision was defective, unsafe, and unreasonably dangerous").

And as to the final element, the record also demonstrates that the defectively-designed sensor system was the proximate cause of Mr. Andrews's wrongful death. *See* Trial Tr. Vol. 3 A.M. at 107:10-114:25 (Plaintiff's airbag expert explaining that if the system would have been designed with any one of his proposed alternative designs (including the use of dual sensors), "they would have prevented the unsafe condition that ultimately led to [Mr. Andrews's] death"); Judgment at 20, 71 (noting, on multiple occasions, that "Bosch's airbag electronic front sensor system

component ultimately [] caused the non-deployment of the airbag"). Indeed, testimony from Plaintiff's own experts demonstrates that had the airbag sensor system sent a signal to deploy, the airbag would have deployed, and Mr. Andrews would be alive today. *See* Trial Tr. Vol. 3 A.M. at 107:10-12 (Plaintiff's airbag expert testifying that if the "Bosch-designed electronic system had sent a signal to the Autoliv airbag, it would have deployed"); Trial Tr. Vol. 2 P.M. at 103 (Plaintiff's biomechanics expert, Mariusz Ziejewski, testifying that "if the airbag had deployed, Mr. Andrews would have survived this accident").

Therefore, Mazda <u>and</u> Bosch are joint tortfeasors in this case, and the payments they made to Plaintiff should be set-off from the amount that Autoliv owes under the Judgment. To the extent Plaintiff replies arguing that the amount of the settlement payments cannot be disclosed in light of confidentiality concerns, that argument should fail, as such concerns are not a valid basis for withholding information relevant to a claim of set-off, and Plaintiff should be required to disclose the amounts of the payments. *See Wright v. Farouk Sys.*, *Inc.*, No. 3:09-CV-92-JTC, 2010 WL 11597147, at *2 (N.D. Ga. Mar. 25, 2010) ("The settlement agreements Defendant seeks are relevant to Defendant's claim for a set off. Accordingly, Plaintiff's settlement agreements . . . are discoverable.").

**II.    Plaintiff Should Not Be Awarded Prejudgment Interest.**

**A.    The Court Should Consider Autoliv's Post-Judgment Apportionment Arguments Before Ruling on Plaintiff's Request for Prejudgment Interest.**

Under O.C.G.A. § 51-12-14(a), if certain conditions precedent are satisfied with respect to a prior demand by a claimant, the claimant is entitled to receive "interest on the amount demanded if, upon the trial of the case in which the claim is made, the judgment is for an amount not less than the amount demanded."

When excluding punitive damages (which are not considered for purposes of the prejudgment interest analysis[8]), the Court's judgment against Autoliv is currently $13,509,671.90, which exceeds the $9.5 million amount previously demanded by Plaintiff. However, for the reasons above and for those in Autoliv's forthcoming post-trial motion, Autoliv maintains that fault should be apportioned to Bosch such that the compensatory damage award against Autoliv should be reduced considerably, thus negating Plaintiff's claim for prejudgment interest. Accordingly, Autoliv submits that the Court should consider those arguments before issuing a ruling on Plaintiff's request for prejudgment interest.

---

[8] *See* Motion at 11 n.12 ("Under Georgia law, prejudgment interest is available only if the judgment for compensatory damages is for an amount not less than the amount demanded; punitive damages are not considered in the comparison." (internal quotation marks and citation omitted)).

**B.   Prejudgment Interest Is Calculated Using Simple, Not Compound, Interest.**

Assuming all conditions precedent are met under O.C.G.A. § 51-12-14, the claimant is entitled to "interest on the amount demanded," calculated "at an annual rate equal to the prime rate . . . plus 3 percent, and shall begin to run from the thirtieth day following the date of the mailing [of the demand] or delivering of the written notice until the date of the judgment." O.C.G.A. § 51-12-14(a), (c). There is no indication within O.C.G.A. § 51-12-14 that the interest should be compounded, nor is there any indication as to how often interest should be compounded.

To the contrary, the statute simply provides that the claimant shall be entitled to "interest on <u>the amount demanded</u>," which is most reasonably interpreted as simple interest (i.e., "interest upon the principal"), not compound interest (i.e., "interest upon interest"), particularly in light of the strict construction rules applicable to this statute. O.C.G.A. § 51-12-14(a) (emphasis added); *Wolf Camera, Inc. v. Royter*, 253 Ga. App. 254, 261, 558 S.E.2d 797, 803 (2002) ("As [O.C.G.A. § 51-12-14] is in derogation of the common law, it must be strictly construed."); 4 *Damages in Tort Actions* § 39.01 (Matthew Bender 2021) (collecting cases and stating that "[p]rejudgment interest rates are traditionally based on simple rather than compound interest; the compounding of interest for purposes of damages has been regarded as punitive rather than simply compensatory"); Michael S. Knoll, *A Primer*

*on Prejudgment Interest*, 75 Tex. L. Rev. 293, 306-07 (1996) (stating "[t]he traditional, common-law rule is that prejudgment interest is not compounded" and indicating that simple interest appears to be the majority rule for prejudgment interest today).

Therefore, to the extent the Court elects to award prejudgment interest based on the current compensatory damage award against Autoliv—and it should not—the Court should not award prejudgment interest in the amount that Plaintiff has requested ($4,734,349.55), as that amount was calculated using compound interest. Instead, the proper amount would be $3,960,312.50, which was calculated using the following simple interest formula:

$$I = Prt$$

where $I$ = total interest, $P$ = initial principal ($9.5 million, amount demanded), $r$ = annual interest rate (6.25 percent), and $t$ = number of years elapsed (6.67 years).

## **CONCLUSION**

For these reasons, Autoliv respectfully requests that the Court deny Plaintiff's Motion.  To extent the Court follows *Carmichael* and concludes that apportionment is inappropriate, Autoliv requests that the Court (i) order Plaintiff to produce to Autoliv copies of her settlement agreements with Mazda and Bosch and (ii) permit Autoliv to conduct discovery regarding Plaintiff's settlements with those entities for purposes of the set-off arguments articulated above.

Respectfully submitted this 24th day of January, 2022.

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000 (telephone)

/s/ William J. Repko III, Esq.
Doug Scribner, Esq.
Georgia Bar No. 632755
doug.scribner@alston.com
Jenny A. Hergenrother, Esq.
Georgia Bar No. 447183
jenny.hergenrother@alston.com
William J. Repko III, Esq.
Georgia Bar No. 301797
jay.repko@alston.com

*Attorneys for Autoliv Japan, Ltd.*

## <ins>CERTIFICATE OF COMPLIANCE</ins>

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14 point font.

<ins>/s/ William J. Repko III, Esq.</ins>
Doug Scribner, Esq.
Georgia Bar No. 632755
doug.scribner@alston.com
Jenny A. Hergenrother, Esq.
Georgia Bar No. 447183
jenny.hergenrother@alston.com
William J. Repko III, Esq.
Georgia Bar No. 301797
jay.repko@alston.com

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)         *Attorneys for Autoliv Japan, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 24, 2021, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James E. Butler, Jr.
Michael F. Williford
BUTLER WOOTEN & PEAK LLP
2719 Buford Highway
Atlanta, Georgia 30324

Tedra Cannella
Rory Weeks
CANNELLA SNYDER LLC
Post Office Box 1399
Decatur, Georgia 30031

William L. Ballard
Gregory R. Feagle
BALLARD & FEAGLE, LLP
4200 Northside Parkway NW
Atlanta, Georgia 30327

***Attorneys for Plaintiff***

/s/ William J. Repko III
William J. Repko III
Georgia Bar No.  301797