# EXHIBIT 1

# IN THE SUPREME COURT OF THE
# STATE OF GEORGIA

Georgia CVS Pharmacy, LLC,

*Petitioner-Defendant*,

vs.

James Carmichael,

*Respondent-Plaintiff.*

SUPREME COURT NO.

_____

Court of Appeals Docket
Number: A21A0677

---

## PETITION FOR WRIT OF CERTIORARI

---

Laurie Webb Daniel
Georgia Bar No. 204225
Matthew D. Friedlander
Georgia Bar No. 416707

HOLLAND & KNIGHT LLP
1180 West Peachtree Street NW, Suite 1800
Atlanta, Georgia 30309
Phone: (404) 817-8500
Fax: (404) 881-0470
laurie.daniel@hklaw.com
matthew.friedlander@hklaw.com

*Attorneys for Petitioner Georgia CVS Pharmacy, LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF THE CASE ...............................................................4

    A.   Supreme Court Jurisdiction ............................................................4

    B.   Facts and Proceedings Below .........................................................4

    C.   Court of Appeals Opinion ...............................................................6

    D.   The Motion for Reconsideration ....................................................7

III.  QUESTIONS PRESENTED ....................................................................8

IV.  WHY THE PETITION SHOULD BE GRANTED ..............................9

    A.   The Court Should Clarify the Test for Foreseeability of Criminal Conduct in the Premises Liability Context. .............................9

        1.  The *Sturbridge* foreseeability test is confusing ...................10

        2.  The *Sturbridge* test has generated inconsistent outcomes. .................13

        3.  The decision here is untenable. ...........................................21

    B.   The Court Should Resolve Open Issues of Apportionment Law............24

        1.  It is important to know whether apportionment of damages under O.C.G.A. 51-12-33(b) is triggered by the number of defendants when an action is brought or when it is tried ......................................24

        2.  The Court should decide whether a verdict is void if it allocates zero percent fault to criminal conduct that undisputedly contributed to the plaintiff's injury. ....................................26

        3.  This case is a good vehicle for addressing these open issues .............30

V.   CONCLUSION ......................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston & Bird, LLP v. Hatcher Management Holding, LLC*,
— Ga. —, 862 S.E.2d 295 (2021) ...............................................................*passim*

*Matt v. Days Inns of Am., Inc.*,
212 Ga. App. 792 (1994) ................................................................................20

*Anderson v. State*,
351 Ga. App. 275 (2019) ...............................................................................17

*Carter v. Allen*,
940 F.3d 1233 (11th Cir. 2019) .....................................................................25

*Cham v. ECI Management Co.*,
311 Ga. 170 (2021) ........................................................................................13

*CL SNF, LLC v. Fountain*,
355 Ga. App. 176 (2020) ...............................................................................25

*Couch v. Red Roof Inns, Inc.*,
291 Ga. 359 (2012) ........................................................................................29

*Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P.*,
268 Ga. 604 (1997) ...............................................................................*passim*

*Drayton v. The Kroger Co.*,
297 Ga. App. 484 (2009) .........................................................................14, 16

*Goldenberg v. Murphy*,
108 U.S. 162 (1883)........................................................................................25

*Goldstein Garber & Salama v. J.B.*,
335 Ga. App. 416 (2015) ..........................................................................27, 29

*Goldstein, Garber & Salama, LLC v. J.B.*,
300 Ga. 840 (2017) ...............................................................................*passim*

*Johnson v. Avis Rent A Car System, LLC*,
311 Ga. 588 (2021) ....................................................................2, 13, 19, 20

*Jordan v. Bosworth*,
   123 Ga. 879 (1905) ........................................................................................25

*Lau's Corp., Inc. v. Haskins*,
   261 Ga. 491 (1991) .....................................................................................10, 11

*Martin v. Six Flags Over Georgia II, L.P.*,
   301 Ga. 323 (2017) ...............................................................................13, 20, 22

*McClendon v. Citizens & S. Nat. Bank*,
   155 Ga. App. 755 (1980) ............................................................................14, 15

*McCoy v. Gay*,
   165 Ga. App. 590 (1983) .......................................................................14, 15, 19

*Medical Center Hosp. Authority v. Cavender*,
   331 Ga. App. 469 (2015) ......................................................................10, 18, 21

*Munroe v. Universal Health Srvcs., Inc.*,
   277 Ga. 861 (2004) ....................................................................................13, 22

*Pappas Restaurant, Inc. v. Welch*,
   —S.E.2d —, 2021 WL 5898809 (Ga. Ct. App. Dec. 14, 2021)................*passim*

*Savannah College of Art and Design v. Roe*,
   261 Ga. 764 (1991) ...............................................................................10, 11, 12

*Shadow v. Federal Express Corporation*,
   359 Ga. App. 772 (2021) ......................................................................10, 19, 21

*Soileau v. Smith True Value and Rental*,
   144 So.3d 771 La. 6/28/13, 9 (La. 2013).........................................................25

*St. Jude's Recovery Cntr., Inc. v. Vaughn*,
   354 Ga. App. 593 (2020) ...............................................................................21

*Sturbridge Partners v. Walker*,
   267 Ga. 785 (1997) ..................................................................................*passim*

*Tyner v. Matta-Troncoso*,
   305 Ga. 480 (2019) .......................................................................................13

*Vega v. La Movida, Inc.*,
  294 Ga. App. 311 (2008) ...................................................................15

*Wal-Mart Stores, Inc. v. Lee*,
  290 Ga. App. 541 (2008) ...................................................................20

*Woods v. Kim*,
  207 Ga. App. 910 (1993) ...................................................................19

**Statutes**

O.C.G.A. 51-12-33(b) .........................................................................24

O.C.G.A. § 16-8-40 .......................................................................17, 18

O.C.G.A. § 16-8-41(b) ........................................................................18

O.C.G.A. § 51-12-33 ...................................................................*passim*

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ..............................................24

Black's Law Dictionary 174 (5th ed. 1979) .........................................24

## I.    INTRODUCTION

In this petition, Georgia CVS Pharmacy, LLC ("CVS") asks the Court to resolve questions of exceptional public importance that are arising with increasing frequency in civil cases where harm is inflicted by third-party criminal conduct. The first addresses the test for foreseeability that is essential to both the duty and the proximate cause elements of a "negligent security" claim. The second, which has two subparts, asks whether a verdict is invalid, contravening O.C.G.A. § 51-12-33(b), if it allocates zero percent fault to a non-party criminal who undisputedly contributed to the plaintiff's injury where, as here, the action was brought against more than one person but only one defendant remained at the time of trial.

Normally, a proprietor is not responsible for harm inflicted by third-party criminal conduct, but an exception exists if the harm was reasonably foreseeable. *See Sturbridge Partners v. Walker*, 267 Ga. 785, 785–86 (1997). In *Sturbridge*, the Court granted certiorari to address "the showing that must be made by the plaintiff seeking to establish the foreseeability of a criminal attack for the purpose of premises liability." *Id*. at 785. The majority opinion adopted a multi-factored test to hold that a burglary-turned-rape was foreseeable due to prior burglaries of unoccupied apartments at the premises. *Id*. at 785–786. But shortly thereafter the Court held that, under the *Sturbridge* test, a rape in an apartment parking lot was not foreseeable despite prior robberies there. *See Doe v. Prudential-Bache/A.G.*

*Spanos Realty Partners, L.P.*, 268 Ga. 604, 606 (1997). And the dissent in *Doe* pointed out that *Doe* and *Sturbridge* are incongruous. *Doe* at 607 (Hunstein, J.).

This incongruity has spawned much confusion. For example, the decision here, which upheld a $42 million verdict based largely on non-specific safety concerns, cannot be reconciled with a decision issued just a few months later, holding that general crime statistics are not probative of foreseeability. *See Pappas Restaurant, Inc. v. Welch*, —S.E.2d —, 2021 WL 5898809 (Ga. Ct. App. Dec. 14, 2021). And other inconsistencies abound in the case law. *See infra* at 13-21.

Certiorari is needed to eliminate this disparity. Negligent security cases must be governed by traditional tort law that bars liability absent probative evidence of foreseeability—and the test for this must be clear, providing uniform results. Notably, this Court has not examined the *Sturbridge* test since 1997. This is problematic because the *Sturbridge* test does not address the foreseeability principle embraced twenty years later in *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840 (2017). *Goldstein* made clear that foreseeability of criminal conduct is not shown by proof that a consequence was a known "possibility." *Id*. at 842. The defendant is responsible "only for a consequence which is probable, according to ordinary and usual experience." *Id.* (internal citations omitted); *see also Johnson v. Avis Rent A Car System, LLC*, 311 Ga. 588, 595 (2021) (holding that the plaintiff's injuries must be "the reasonably foreseeable 'probable or natural consequence' of

the defendants' alleged negligence"). The Court should revisit the *Sturbridge* test to clarify the quality and quantum of proof needed to show foreseeability of crime.

The apportionment issues also are worthy of certiorari. The Court previously granted review of a zero percent apportionment verdict. *See Goldstein*, Case No. S16C0744 (Ga. May 9, 2016), *available at* 2016 Ga. LEXIS 358. But the Court did not resolve the question because it rejected liability on other grounds. *See Goldstein*, 300 Ga. at 843. With this case, it is apparent that the issue is recurring and should be again taken up. Moreover, this case is a good vehicle for certiorari because it provides the opportunity to timely resolve an important threshold issue left open by *Alston & Bird, LLP v. Hatcher Management Holding, LLC*, — Ga. —, 862 S.E.2d 295 (2021) (holding that apportionment of damages is not allowed "where an action is brought" against only one defendant).

Relying on *Hatcher*, the Court of Appeals held in this case that the right to apportionment of damages based on non-party fault depends on whether there is more than one defendant when the case goes to trial rather than when the "action is brought"; but that holding is contrary to the plain language of the apportionment statute as interpreted by *Hatcher*. *See infra* at 24-26. If not promptly rectified, the ruling will allow plaintiffs to evade apportionment of damages by simply dismissing "extra" defendants in pending cases. These concerns—and the public's interest in judicial efficiency—weigh in favor of granting review now.

3

## II.   STATEMENT OF THE CASE

### A.   Supreme Court Jurisdiction

This Court has jurisdiction to review decisions of the Court of Appeals by writ of certiorari. *See* S. Ct. R. 38. CVS has satisfied all the conditions for seeking this writ. The Court of Appeals' decision was issued on November 1, 2021. (The Opinion ("Op.") is attached as Exhibit A). CVS timely filed a motion for reconsideration, which was denied on November 18, 2021. CVS then timely filed its intent to petition for certiorari, and obtained an extension of the deadline for this petition. (A copy of this order is attached as Exhibit B). And this petition is timely filed by the new deadline.

### B.   Facts and Proceedings Below

On December 20, 2012, Plaintiff James Carmichael asked an acquaintance, Frankie Gray, to meet him at the Moreland Avenue CVS in Atlanta to complete a previously discussed sale of an iPad. Op. at 3. According to Carmichael, he planned to purchase toiletries at the CVS following the transaction. *Id*. But, when Gray left Carmichael's vehicle, an unknown man jumped in, put a "big" gun to Carmichael's head, threatened to kill him, and said, "Give me your money." *Id*. Carmichael then grabbed his own pistol and attempted to shoot, but the gun jammed. *Id*. The robber then fired several rounds into Carmichael's stomach, back, and shoulder, resulting in serious injury. *Id*. at 3—4.

CVS employees testified at trial that the store was located in a high-crime area, that the parking lot was "unsafe," that male employees regularly walked female employees to their cars, and that they rated "the safety problems at the store" as an "8" and "9" out of ten. *Id*. at 4. Three employees testified that they were "not surprised" about the shooting. *Id.* And Carmichael's expert witness testified that "there's an overwhelming body of research which confirm[s] that [armed security] has a high deterrent effect." *Id*. at 5. In his opinion, having a security guard stationed in front of the store more likely than not would have prevented the incident. *Id*. The investigating officer also testified that armed security guards are an effective deterrent. *Id*. at 6. But the trial record shows that, prior to the Carmichael shooting, there were only three criminal incidents at this CVS: two in-store robberies of the CVS' cash register and a weaponless purse-snatching in the parking lot. These incidents occurred in 2011 or 2012. *Id*. at 5.

The above facts are presented in the Court of Appeals opinion, but there also are a few interesting undisputed facts established at trial that the opinion omitted. For example, Carmichael conceded at trial that he had met Gray only shortly before the incident when he was selling used electronics out of his vehicle at a convenience store parking lot. V.13/T.331–32. When Gray expressed interest in an iPad, Carmichael told Gray to meet him at the CVS parking lot. *Id*. at 332. Gray did so and entered Carmichael's vehicle to discuss a possible deal. Surveillance

5

Video at 6:42:22–6:43:34, available at https://vimeo.com/497059927 (1:24–2:44). When they could not agree on price, Gray exited the vehicle but left the passenger door open—and the shooter instantaneously replaced Gray in the passenger seat before Carmichael ever had the chance to set foot on the ground. V.13/T.334, 381–84. These facts were not only admitted by Carmichael, but the immediate substitution of the shooter in Gray's place was confirmed by Carmichael's expert after examining video footage of the incident. V.10/R.4732–33.

After hearing this evidence, the jury found CVS 95% at fault, Carmichael 5% at fault, and both Gray and the shooter 0% at fault for the incident. Op. at 6. The jury then awarded Carmichael an adjusted total of $42,750,000 in damages (representing 95% of its total verdict of $45,000,000). *Id.*

### C.   Court of Appeals Opinion

CVS appealed, arguing that (1) Carmichael's shooting was not foreseeable and that CVS lacked superior knowledge of the danger; (2) the trial court erred in failing to give a "personal malice" charge in light of the evidence that the robbery was set-up by Gray and the shooter; (3) the verdict is void due to the zero percent apportionment to the criminal who undisputedly shot Carmichael, thereby directly causing his injury; and (4) Carmichael was actually a licensee, not an invitee, because the shooting occurred on the heels of a failed electronics transaction inside Carmichael's vehicle. See Op. at 6–7, 17, 20, 26.

The Court of Appeals affirmed, however. Op. at 26. Regarding the issues raised in this petition, the Court held that foreseeability of the shooting was established by the non-specific evidence of "high crime" in the area and general safety concerns plus the two prior in-store armed robberies targeting the CVS cash register and the single prior weaponless purse-snatching in the parking lot. *Id.* at 8-11. The Court also held the assignment of zero percent fault to the shooter was acceptable and that, regardless, any error would be harmless in light of the *Hatcher* decision because, by the time of trial, CVS was the only defendant. *Id.* at 23-25.

### D.   The Motion for Reconsideration

CVS filed a motion for reconsideration relating solely to the Court of Appeals' analysis of *Hatcher*, which was decided after briefing and oral argument in this case. CVS pointed out that, under *Hatcher's* textual analysis, the right to apportionment of damages under O.C.G.A. § 51-12-33(b) depends on whether there is more than one defendant when the action is brought, not when the case goes to trial. *See Hatcher*, 862 S.E.2d at 300 (holding that there is a right to apportionment under O.C.G.A. § 51-12-33(b) only where "an action is brought" against more than one person). Carmichael argued in response that the issue was waived, as it was raised in a motion for reconsideration, but that motion gave the Court of Appeals the chance to correct this error. Thus, there is no waiver. Nonetheless, the Court denied the motion.

### III.   QUESTIONS PRESENTED

This petition presents the following questions of gravity addressing responsibility for harm inflicted by third-party criminal conduct:

1.      The established rule is that a proprietor is not liable for harm inflicted by third-party criminal conduct, but there is an exception if the plaintiff proves the harm was foreseeable. In 1997, the Court's *Sturbridge* decision adopted a flexible foreseeability test that requires proof of "substantially similar" prior incidents, but this test has not been consistently applied, with some appellate decisions subjecting proprietors to liability based on prior criminal activity that other cases have held is too dissimilar as a matter of law. Accordingly, the Court should grant certiorari to revisit the question presented in *Sturbridge*: What is "the showing that must be made by a plaintiff seeking to establish the foreseeability of a criminal attack for the purpose of premises liability?" *See Sturbridge*, 267 Ga. at 785. A definitive ruling from this Court is needed to resolve conflicting precedents and provide guidance to the lower courts—and more importantly to Georgia businesses—on when liability will or will not arise.

2.      In *Goldstein*, the Court granted certiorari on the following question but did not answer it because that case was decided on other grounds: "[M]ust a jury apportion at least some fault to an intentional tortfeasor when the evidence is undisputed that the tortfeasor directly caused the plaintiff's injuries?" *Goldstein*,

No. S16C0744, 2016 Ga. LEXIS 358. In this case, the Court of Appeals answered this question with a "no" and also held that, in any event, the zero percent apportionment would be harmless error in light of *Hatcher*. In *Hatcher*, this Court held that there can be no apportionment of damages based on non-party fault where the action was brought against only one defendant. *See Hatcher*, 2021 WL at *\_\_\_. But, unlike *Hatcher*, the Court of Appeals held that the right to apportionment of damages based on non-party fault depends on whether there is more than one defendant when the case is tried, not when the action is brought. Accordingly, regarding apportionment, the Court should grant certiorari to decide these questions:

(a) Does apportionment of damages under O.C.G.A. § 51-12-33(b) apply where "an action is brought against more than one person for injury to person or property" but only one defendant remains at the time of trial; and, if so,

(b) Is a verdict void if the trier of fact, when performing apportionment under O.C.G.A. § 51-12-33(b), allocates zero percent fault to a non-party whose criminal conduct undisputedly contributed to the plaintiff's injury?

## IV.   WHY THE PETITION SHOULD BE GRANTED

### A.   The Court Should Clarify the Test for Foreseeability of Criminal Conduct in the Premises Liability Context.

The general rule is that a proprietor like CVS is not liable for harm inflicted by third-party criminal conduct, but there is a narrow exception if the plaintiff can

show that the criminal incident at issue was foreseeable. *See Doe*, 268 Ga. at 605. In other words, without foreseeability, there is no duty to protect against the criminal conduct. *Id.* Similarly, where foreseeability is lacking, as a policy matter intervening crime is considered the sole proximate cause of injury, thereby insulating the defendant from liability for whatever negligence the plaintiff claims. *Goldstein*, 300 Ga. at 841—42. And, on the foreseeability question, the same analysis applies whether framed in terms of duty or proximate cause; indeed, Georgia's appellate decisions often conflate those two elements when discussing foreseeability in the premises liability context. *See*, *e.g.*, *Shadow v. Federal Express Corporation*, 359 Ga. App. 772, 776-77 (2021); *Medical Center Hosp. Authority v. Cavender*, 331 Ga. App. 469, 473 (2015). Thus it is critical to have a clear foreseeability test that provides uniform results so that businesses will know what their duty is and how to properly manage risk. Unfortunately, however, the current test has proven to be neither clear nor uniformly applied. Certiorari is needed to clear up this confusion.

### 1. The *Sturbridge* foreseeability test is confusing.

The *Sturbridge* test for foreseeability of criminal conduct followed two decisions that called out for further discussion, *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491 (1991) and *Savannah College of Art and Design v. Roe*, 261 Ga. 764 (1991). *Lau's* briefly discussed foreseeability, finding that a prior purse-snatching

rendered the purse-snatching incident at issue foreseeable. 261 Ga. at 492-93. But the Court rejected liability as a matter of law because a proprietor is not an insurer of safety and there was no evidence that its security measures fell below a standard of care. *Id*. at 494. Thus, *Lau's* discussion of foreseeability was not only brief, it was dicta, as the case was decided on other grounds. A few months later the Court released its decision in *Roe*, but that opinion also was brief, summarily holding that a rape in a dormitory was not foreseeable despite evidence of various crimes not involving a sexual assault, including a burglary at the dormitory. 261 Ga. at 765.

Then, in 1997, the Court granted certiorari in *Sturbridge* to resolve "the showing that must be made by a plaintiff seeking to establish the foreseeability of a criminal attack for the purpose of premises liability." *Sturbridge*, 267 Ga. at 785. Rejecting "a restrictive and inflexible approach," *Sturbridge* adopted a multi-factored test that requires proof of "substantially similar" prior incidents.

> Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity.
>
> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question.

*Id*. at 786 (internal citations omitted).

11

Stressing that "substantially similar" does not mean identical, *Sturbridge* held that prior burglaries of unoccupied apartments were sufficient to render a burglary-turned-rape a foreseeable danger. *Id*. at 787. And the Court specifically disapproved of the *Roe* holding to the extent it relied on a formalistic distinction between property crimes and crimes against a person. *Id*. at 786. While the majority opinion claimed *Sturbridge* was consistent with prior law except for the holding in *Roe*, *id*., three of the seven justices disagreed, *see id.* at 787-791 (Benham, J.) (dissenting on the ground that the decision "abandon[s] precedent and employ[s] a process . . . contrary to current law, a process which, other than making most proprietors insurers, lacks predictability").

Confusion soon followed when, just a few months after *Sturbridge*, the Court decided *Doe*, holding that prior incidents of theft in an apartment parking lot did not render foreseeable a subsequent robbery and rape at the same location. *Doe*, 268 Ga. at 606. *Doe* purported to apply *Sturbridge's* foreseeability test, but the dissenting opinion argued that *Doe* is fundamentally inconsistent with the approach articulated in *Sturbridge*. *Id*. at 607 (Hunstein, J.) (dissenting).

*Sturbridge* aimed to settle foreseeability jurisprudence in the premises liability context. But the "flexible" test it adopted is not clear, nor does it generate "predictable" outcomes. *See Sturbridge*, 267 Ga. at 788, 790 (Benham, J.) (dissenting). Moreover, the *Sturbridge* test does not incorporate an important

12

aspect of foreseeability embraced by this Court twenty years later in *Goldstein*. Substantial similarity of prior crime does not give rise to foreseeability unless the plaintiff's injury is a natural or probable consequence of the alleged negligence "according to ordinary and usual experience." *Goldstein*, 300 Ga. at 842.

Meanwhile the tension between *Sturbridge* and *Doe*—and the omission of the "probable consequence" requirement from the *Sturbridge* test—has spawned confusion in the lower courts, resulting in divergent outcomes. The Court, therefore, should revisit the *Sturbridge* test—which it has not examined since 1997—to clarify the quality and quantum of evidence needed to show foreseeability of criminal conduct in the premises liability context.[1]

### 2. The *Sturbridge* test has generated inconsistent outcomes.

In this case, Carmichael was shot inside his car in the CVS parking lot when he pulled a gun on an armed robber who had slipped into the passenger seat on the heels of a failed electronics transaction. After noting that the CVS was located in a

---

[1] This Court has cited *Sturbridge* six times but without examining its foreseeability test. *See Doe*, 268 Ga. at 605–06 (distinguishing *Sturbridge* on the facts); *Munroe v. Universal Health Srvcs., Inc.*, 277 Ga. 861, 864 n.3 (2004) (distinguishing negligent hiring cases); *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 328 (2017) (observing that "the landowner's duty "extends only to foreseeable criminal acts"); *Tyner v. Matta-Troncoso*, 305 Ga. 480, 485 n.7 (2019) (noting that foreseeability of the risk is essential to proving liability for criminal conduct); *Cham v. ECI Management Co.*, 311 Ga. 170 (2021) (observing only that a landowner's liability for criminal conduct "'must be predicated on a breach of duty to 'exercise ordinary care in keeping the premises and approaches safe'"); *Avis*, 311 Ga. at 602 (Ellington, J.) (dissenting from the majority's rejection of liability).

high crime area and that its employees had general safety concerns, the Court of

Appeals held that the *Sturbridge* "substantial similarity" test was satisfied by three

prior criminal incidents at the CVS—two armed robberies inside the store that

targeted CVS' cash drawer and a weaponless purse-snatching in the parking lot

where a customer was hit in the head but reported no serious injury. Op. at 10. This

binding decision, however, is directly contrary to other decisions, generating

further confusion as to what is probative proof of foreseeability of third-party

criminal conduct, which is essential to liability in a negligent security case.

### *In-store Hold-ups v. Parking Lot Crime*

Again, the Court of Appeals held that the two armed robberies of CVS' cash

register inside the store made the shooting in Carmichael's car foreseeable. Op. at

10. But that holding conflicts with a long line of other decisions. *See Pappas*, —

S.E.2d —, 2021 WL 5898809; *Drayton v. The Kroger Co.*, 297 Ga. App. 484

(2009); *McCoy v. Gay*, 165 Ga. App. 590 (1983); *McClendon v. Citizens & S. Nat.

Bank*, 155 Ga. App. 755 (1980).

In *McClendon*, a customer was the victim of an armed robbery in the

parking lot of a bank. There was security in place to combat bank robbery but no

security in the parking lot. In affirming a directed verdict for the bank, the Court

held that "[t]here was no evidence that [the bank] was aware of a dangerous

situation and chose to ignore it" because no armed robberies had previously

14

occurred in the parking lot of the bank. *McClendon*, 155 Ga. App. at 755. Thus, a known risk of bank robbery did not forewarn of a robbery in the parking lot.

In *McCoy*, the Court affirmed a directed verdict on a claim arising from an attack in the hotel's parking lot even though there was evidence of prior assaults inside the hotel—a purse snatching and a robbery of two guests "accomplished through physical violence but without the use of weapons." 165 Ga. App. at 593. The defense verdict was required because "proof of the two prior crimes at a location on the [defendant's] premises other than the asserted 'dangerous' parking lot would have no relevancy or probative value with regard to [the defendant's] knowledge of that 'dangerous condition.'" *Id*. at 592.

Of course, *McClendon* and *McCoy* pre-date *Sturbridge*. But they are consistent with *Sturbridge*, given *Sturbridge*'s identification of location and proximity as important factors in the foreseeability analysis. *See Sturbridge*, 267 Ga. at 786. And post-*Sturbridge* decisions have cited these authorities to hold that crime inside an establishment is not substantially similar to incidents occurring in a parking lot. *See, e.g.*, *Vega v. La Movida, Inc*., 294 Ga. App. 311, 314, 314 n.15 (2008) (citing both *McCoy* and *McClendon*); *see also Pappas*, — S.E.2d —, 2021 WL 5898809 at *3 (citing *Vega* for the principle that "in general, crimes that occur in different locations are not substantially similar, and incidents occurring in a parking lot cannot show there is a risk of danger inside the [establishment].").

In *Drayton*, the Court rejected premises liability as a matter of law, finding that an armed robbery of the store's cash was not substantially similar to an attack on a customer in the parking lot. 297 Ga. App. at 486. Specifically, the in-store armed robbery was <u>*not*</u> "notice that customers were in danger of being the victim of violent criminal activity in the parking lot." *Id*.

The Court of Appeals' decision in this case cannot be reconciled with these prior precedents. Under the approach taken in *Drayton* and *Pappas*, which are post-*Sturbridge* and binding precedent, the robbery of a store's cash inside the building as a matter of law is not substantially similar to a vicious attack on a customer in the store's parking lot. Under those decisions, the two armed robberies inside the CVS store that targeted CVS' cash but not a customer should be too dissimilar to the shooting in Carmichael's car to be probative of foreseeability. The Court, therefore, should grant certiorari to resolve this rift in the law.

### Weaponless Purse-Snatching v. Shootings

Putting aside the two in-store incidents as too dissimilar in nature and location, the only evidence of prior crime at the CVS—as opposed to non-specific crime in the area and general safety concerns—is the single weaponless purse-snatching in the parking lot. But this prior incident is not "substantially similar" to the Carmichael shooting, and the Court of Appeals' holding otherwise creates a dangerous precedent that has strayed far from *Sturbridge*'s objectives.

16

*Sturbridge* rejected a rigid approach to foreseeability that was categorically based on whether the prior incident involved property crime or crime against a person. *See Sturbridge*, 267 Ga. at 786. Instead, *Sturbridge* looked to the definition of "burglary" and explained that the prior burglaries of unoccupied apartments, while involving only theft of property, made the risk of the burglary-turned-rape foreseeable because a burglary involves breaking into a "dwelling," which reasonably could lead to personal harm due to the isolation of the victim. *Sturbridge*, at 787 n.1; *see also Doe*, 268 Ga. at 606. In that context, the property-v.-personal crime distinction was too "restrictive and inflexible" for a meaningful foreseeability analysis. *Id*. In this case, however, the Court of Appeals adopted a rigid approach much like the one rejected in *Sturbridge* when it held that a weaponless purse-snatching is, as a matter of law, substantially similar to an armed robbery. *See* Op. at 10 (comparing the purse-snatching to armed robberies because it involved a "physical attack on a customer").

It is true that a weaponless purse-snatching by definition is a crime involving "force." *See Anderson v. State*, 351 Ga. App. 275, 277 (2019); *see also* O.C.G.A. § 16-8-40 (defining "Robbery" in terms of use of force, intimidation, or sudden snatching). But that does not mean that a single weaponless purse-snatching in a parking lot foreshadows gunfire inside a customer's parked vehicle, as armed robbery is a qualitatively different crime.

Criminal law informs this issue, just as it did in *Sturbridge*. Criminal law recognizes a material distinction between robberies involving a weapon and those that do not, such as the purse-snatching at issue here. Indeed, armed robbery carries a minimum sentence that is ten times that of a purse snatching—and can subject the perpetrator to the most severe punishment possible. *Compare* O.C.G.A. § 16-8-41(b) ("A person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten [years]."), *with* O.C.G.A. § 16-8-40(b) ("A person convicted of the offense of robbery shall be punished by imprisonment for not less than one [year]."). This is a material distinction, reflecting the substantial difference in the nature of these crimes and the risk of harm from criminal activity involving a weapon as opposed to a weaponless robbery. It is a mistake, therefore, to hold categorically that a weaponless purse-snatching in a parking lot renders a parking lot shooting foreseeable just because purse-snatching involves some degree of force. As *Sturbridge* held, the nature of the risk must be examined.

Indeed, the Court of Appeals departed from established tort law by holding that a weaponless purse-snatching made a shooting foreseeable. Other decisions from the Court of Appeals have stressed that crimes involving guns are different from other criminal incidents. *See Cavender*, 331 Ga. App. at 475 (rejecting foreseeability of shooting incident where prior incidents cited by plaintiff did not

involve a shooting, weapon, or serious physical injury in prior incidents); *see also Shadow*, 359 Ga. App. at 777–78 (rejecting foreseeability of workplace shooting despite multiple prior threats of violence and physical attack without serious personal injury); *Woods v. Kim*, 207 Ga. App. 910, 910 (1993) (holding that a weaponless purse-snatching "is no[t] evidence [the proprietor] knew or should have known that conditions on the premises put [the plaintiff] at risk of being robbed and shot").[2]

Just as significant is the departure from the holdings in *Goldstein* and *Avis*. There is no foreseeability unless the plaintiff's injury is the "probable or natural consequence" of the alleged negligence. *Goldstein*, 300 Ga. at 842; *Avis*, 311 Ga. at 595. Knowing that harm is "possible" is not enough. *Goldstein*, 300 Ga. at 842. Thus, the purse-snatching did not make Carmichael's injury foreseeable because a shooting injury is not an ordinary consequence of a weaponless purse-snatching. *See also Pappas*, 2021 WL 5898809 at *6 ("[T]he mere acknowledgment that a robbery *could* happen does not make it "probable, according to ordinary and usual experience.") (alteration in original) (quoting *Goldstein*, 300 Ga. at 842).

It is true that the Court of Appeals, in support of its foreseeability holding, cited cases that included purse-snatchings as part of the evidence that supported

---

[2] *Woods* is a pre-*Sturbridge* case, but the question whether pre-*Sturbridge* cases like *Woods* and *McCoy* are still good law also is an important issue that should be resolved by this Court.

foreseeability of a shooting injury. Op. at 10—11 (citing *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541 (2008) and *Matt v. Days Inns of Am., Inc.*, 212 Ga. App. 792 (1994)). But there the evidence included multiple instances of armed robbery. *See Lee*, 290 Ga. App. at 549; *Matt*, 212 Ga. App. at 793, 795 (considering neighboring hotels). Those decisions do not hold that a single weaponless purse-snatching in a parking lot can make a shooting injury foreseeable. At the very least, the huge difference in the quantum and quality of proof in those cases as compared to this one further shows the need for this Court to revisit the question posed in *Sturbridge*: "[T]he showing that must be made by the plaintiff seeking to establish the foreseeability of a criminal attack for the purpose of premises liability."

### *Generalized Safety Concerns v. Substantially Similar Incidents.*

To shore up its foreseeability opinion, the Court of Appeals relied on non-specific crime in the area and general safety concerns. Op. at 11; *see also id*. at 8—9 (finding that this other evidence "put CVS on notice that a robbery of a customer was a salient possibility").[3]

---

[3] In the court below, Carmichael argued that proof of generalized crime evidence is authorized by dicta in *Six Flags*, 301 Ga. at 331 ("An establishment's location in a high crime area may also support the finding of a duty on the part of the landowner to guard against criminal attacks."). But the actual holding in *Six Flags* is solidly rooted in substantially similar prior gang incidents at the premises. *See Avis*, 311 Ga. at 596 (explaining the *Six Flags* holding).

This approach, however, conflicts with *Goldstein*'s rejection of foreseeability based on mere possibilities, as well as with other decisions from the Court of Appeals that have expressly held that such evidence is not probative of foreseeability in a premises liability case. *See Cavender*, 331 Ga. App. at 476 ("[R]eliance on generalized information like crime statistics does not create issue of fact concerning foreseeability[.]") (citing *Agnes Scott College v. Clark*, 273 Ga. App. 619, 622 (2005)); *see also Shadow*, 359 Ga. App. at 780 (holding that a fact issue as to foreseeability was not raised by expert opinion as to "generalized risk" or "inadequate security measures"); *St. Jude's Recovery Cntr., Inc. v. Vaughn*, 354 Ga. App. 593, 595-96 (2020) (relying on premises liability case law to reject foreseeability of a rape notwithstanding testimony of the defendant's "resident assistant" that the defendant knew its residents "were vulnerable to crime," that men would be "harassing them," that they were afraid to "walk alone [because] Atlanta is dangerous," and "that they 'all' expressed their concern"). Certiorari should be granted, therefore, to clarify the bounds of relevant evidence on this important issue of foreseeability.

### 3.  The decision here is untenable.

Certiorari also should be granted because this decision is untenable. It in essence creates a duty to hire security guards—and possibly an armed security force—if a business chooses to service a "high-crime" area. *See* Op. at 5-6, 11, 16

(citing to evidence that "store was located in a high-crime area," "an overwhelming body of research which confirm[ed] that [armed security] has a high deterrent effect," and the investigating officer found "armed security effective").

The policy considerations of such a duty are beyond the pale, as imposing this burden would disincentivizes businesses from providing essential services to communities that are the most in need. And upholding liability based on such evidence in effect shifts the government's police function to private business. And this is a significant departure from traditional premises liability law, as the danger that comes from operating a business in a high-crime area does not arise from anything unique to the particular premises located there, which normally is a pre-requisite for premises liability. As this Court has observed, a premises owner "has no control over the condition of surrounding properties or the illegal behavior of unknown assailants who come onto its property at different times and injure invitees there." *Munroe*, 277 Ga. at 863 n.3.

Until now, premises liability has been limited to matters that are under the proprietor's control. *See Six Flags*, 301 Ga. at 333-34. "With regard to potential criminal attacks by third parties, the landowner is 'not the insurer of the invitee's safety.'" *Id.* at 328. "'[U]ndertaking measures to protect patrons does not heighten the standard of care; and taking some measures does not ordinarily constitute evidence that further measures might be required.'" *Id*. at 335 n.8 (quoting *Lau's*,

22

261 Ga. at 494-95). The Court of Appeals' decision in this case, however, contravenes these principles, by subjecting CVS to liability based on neighborhood crime. And by holding CVS liable for discontinuing use of security guards before it had experienced notable crime, the Court of Appeals has punished CVS for hiring security guards in the first place.

Indeed, the Court's foreseeability analysis cannot be squared with its own apportionment analysis. When discussing the jury's apportionment of zero percent fault to the shooter, the Court stressed that "there was evidence presented showing that Carmichael attempted to shoot the robber first." Op. at 23. From this the Court concluded that "it is possible that the jury either found that the robber ended up shooting in self-defense and was worthy of no fault or that the jury instead assigned the amount of fault it would have assigned to the shooter to Carmichael instead." *Id*. But either way, the Carmichael incident is nothing like the three prior crimes where the victims were entirely innocent. Those crimes could not forewarn CVS that Carmichael—who was inside his vehicle during this entire incident—had a gun or would open fire first, thereby triggering the violence that injured him. Further, the "self-defense" argument undermines any notion of culpability on CVS' part. If the shooter was not worthy of fault, then the shooter was not a "dangerous condition" that CVS would have a duty to protect against. This outcome calls out for further review.

23

**B.   The Court Should Resolve Open Issues of Apportionment Law.**

**1.   It is important to know whether apportionment of damages under O.C.G.A. 51-12-33(b) is triggered by the number of defendants when an action is brought or when it is tried.**

*Hatcher* held that, under O.C.G.A. § 51-12-33(b), there is no right to apportionment of damages unless an action "is brought" against more than one defendant. *Hatcher*, 862 S.E.2d at 300. And, in this case the Court of Appeals held that *Hatcher* rendered the zero percent apportionment issue "harmless error." Op. at 25. Though the Court recognized that the present action was brought against more than one defendant, Op. at 4 n.1, it held that the time for determining the right to apportionment of damages is when the case is tried, not when it "is brought," *id*. at 25. The Court concluded that, since "CVS was the only named defendant in the case by the time the case proceeded to trial[,]" then "the case was no longer 'an action [] brought against more than one person'" for apportionment purposes.'" *Id*. (quoting *Schriever v. Maddox*, 259 Ga. 558, 561 (2003)).

This holding is wrong, as shown by common usage—even the dictionary meaning—of the language chosen by the General Assembly for O.C.G.A. § 51-12-33(b). To "bring an action" means "to sue; institute an action." Black's Law Dictionary (11th ed. 2019) ("bring an action"); *see also* Black's Law Dictionary 174 (5th ed. 1979) ("To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit. . . . A suit is

24

'brought' at the time it is commenced. . . ."); Random House Unabridged

Dictionary, *available at www.dictionary.com* ("to bring") ("'Law. to commence: to

bring an action for damages.'").

Georgia's appellate courts and other sources also recognize that the word

"brought" refers to the commencement of a legal proceeding.

> To "bring" an action "has a settled customary meaning at law, and
> refers to the initiation of legal proceedings in a suit." Black's
> Law Dictionary (6th ed. 1990); *see also* Merriam-Webster Online
> Dictionary (2020) ("bring" defined as "to cause to exist or occur,"
> such as to institute or to bring a legal action).

*CL SNF, LLC v. Fountain*, 355 Ga. App. 176, 183 (2020), reversed on other

grounds, 863 S.E.2d 116 (Sept. 21, 2021).

As this Court stated long ago in *Jordan v. Bosworth*, 123 Ga. 879, 880

(1905): "There is no substantial difference between bringing a suit, and

commencing a suit." *See also Carter v. Allen*, 940 F.3d 1233, 1239 (11th Cir.

2019) ("[T]his Court has held that 'brought' refers to 'the initiation of legal

proceedings in a suit.'"); *Goldenberg v. Murphy*, 108 U.S. 162, 163–64 (1883)

("We see no significance in the fact that in the legislation . . . the word

'commenced' is sometimes used, and at other times the word 'brought.' In this

connection the two words evidently mean the same thing, and are used

interchangeably."); *Soileau v. Smith True Value and Rental*, 144 So.3d 771, 778,

2012-1711 La. 6/28/13, 9 (La. 2013) ("[T]he legislature used the word 'brought' as in 'initially filed' or 'commenced.'").

Applying the customary usage of the term "brought" to the text of Georgia's apportionment statute—which is the analysis required by *Hatcher*—makes clear that subsection (b) applies to an action that is initiated against multiple defendants. Here, Carmichael commenced a lawsuit against five named defendants, which brings this case within the literal language of O.C.G.A. § 51-12-33(b). And the fact that the other defendants were dismissed before trial does not alter the fact that Carmichael "brought an action" against multiple defendants. Thus, the Court erred by concluding that *Hatcher* rendered the 0% apportionment harmless error.

This is in itself an issue of great public concern because a delay in its resolution could result in huge inefficiencies and wasted resources if this Court were to eventually decide the question contrary to the Court of Appeals, necessitating retrial of all the cases where plaintiffs have dismissed "extra" defendants in an attempt to avoid non-party apportionment of damages.

> **2. The Court should decide whether a verdict is void if it allocates zero percent fault to criminal conduct that undisputedly contributed to the plaintiff's injury.**

The Court previously granted certiorari on the zero apportionment issue as follows, but did not resolve it then because it decided that case on different grounds:

26

> Did the Court of Appeals err in concluding that [the defendant]
> waived its challenge to the failure of the jury to apportion any fault to
> [the criminal], and, if so, must a jury apportion at least some fault to
> an intentional tortfeasor when the evidence is undisputed that the
> tortfeasor directly caused the plaintiff's injuries?[4]

*Goldstein*, No. S16C0744, 2016 Ga. LEXIS 358.

This is an issue of public importance in light of the legislative intent

embodied in the apportionment statute that, where an action is brought against

more than one defendant, the defendant shall be responsible only for those

damages corresponding to its percentage of fault.

> Where subsection (b) applies, the plain language and context of the
> apportionment statute, as well as our precedent interpreting it, indicate
> that the percentage of fault of a nonparty must be considered when
> apportioning damages to party defendants (provided that proper notice
> is given pursuant to subsection (d)), and a given defendant is liable
> only for the damages corresponding to the percentage of fault
> allocated to that defendant.

*Hatcher*, 862 S.E.2d at 300.

In *Goldstein*, a majority of the Court of Appeals upheld zero apportionment

of fault to the criminal conduct based on strained reasoning similar to that in this

decision. *Goldstein Garber & Salama v. J.B.*, 335 Ga. App. 416, 425-27 (2015)

(speculating as to reasons why the jury might have assigned zero percent fault to

---

[4] The Court of Appeals' decision in this case did not find waiver of the issue, just
that the zero percent apportionment to the shooter was justifiable. Thus, the waiver
issue is not addressed in this petition, though it is expected to be in the response
from Carmichael. If so, the waiver question also would be appropriate for
certiorari, as it was when the Court previously approved certiorari on this issue.

the criminal where the evidence was undisputed that the criminal directly caused the injury). The dissenting opinion disagreed, however, arguing that the apportionment statute requires apportionment of some degree of fault to the criminal where it is undisputed that his criminal conduct contributed to the plaintiff's injury. *Id.* at 439—40 (Ray, J.) (dissenting). And this Court granted certiorari on this issue.

The same scenario is now before this Court, with the decision below echoing the majority opinion in *Goldstein* that was vacated with the grant of certiorari. *See* Op. at 22—23 (speculating that the jury might have shifted the fault attributable to the shooter over to the percentage of fault allocated to Carmichael, or that, alternatively, the jury might have found that the shooter was not worthy of fault because Carmichael tried to shoot first). Accordingly, the Court should grant certiorari again to address this question.

Indeed, certiorari is needed to correct the error in the Court of Appeals' upholding of the zero percent apportionment where undisputed facts establish that the shooter initiated the confrontation and thereby contributed to Carmichael's injury. Under O.C.G.A. §§ 51-12-33(b) and (c), apportionment is mandatory. Where fault of a non-party criminal is established by undisputed evidence, the defendant's liability for damages must be reduced accordingly, at least where, as here, the action was brought against more than one person. *See* O.C.G.A. § 51-12-

28

33(c) (trier of fact "shall" consider fault of all parties who contributed to the injury); *see also Couch v. Red Roof Inns, Inc*., 291 Ga. 359, 360-61 (2012) ("As a party at fault, such an assailant must be included with others who may be at fault, e.g., the property owner in a premises liability action, for purposes of apportioning damages among all wrongdoing parties.").

Moreover, the Court of Appeals' rationale for upholding the zero percent apportionment in this case makes no sense. The Court held, with no supporting authority, that the statute's use of the word "consider" in O.C.G.A. § 51-12-33(c) was merely precatory with no mandatory effect—that the jury is authorized to consider but reject undisputed evidence of fault by the criminal. That interpretation of the statute leads to absurd results not contemplated by wording chosen by the General Assembly. As Judge Ray pointed out in his dissent to the now-vacated decision of the Court of Appeals in *Goldstein*:

> A finding that Serdula [the criminal] did not contribute to J.B.'s injuries is wholly incomprehensible. A finding that Serdula was not at fault would logically be a finding that he did nothing wrong. If he did nothing wrong by molesting J.B., how then can GGS [the defendant] be liable for negligently placing him in the position to molest her? A finding of no fault on Serdula's part would seemingly equate to a finding of no fault on GGS' part.

335 Ga. App. at 440 (Ray, J.) (dissenting).

Accordingly, the Court should again grant certiorari to resolve this important issue which it did not resolve in *Goldstein*, to bring the case law in line with the

plain language of the apportionment statute. And the Court should hold that a verdict is void if it allocates zero percent fault to a non-party whose criminal conduct undisputedly contributed to the plaintiff's injury where, as here, the action was brought against more than one defendant.

### 3.  This case is a good vehicle for addressing these open issues.

Regarding the threshold issue, the Court of Appeals rejected apportionment of damages under O.C.G.A. § 51-12-33(b) notwithstanding its express finding that this tort action was brought against more than one defendant. *See* Op. at 4 n.1, 23, 25. And it squarely held that the right to apportionment of damages under this code section depends on whether there is more than one defendant "by the time when the action case proceed[s] to trial," Op. at 25, not when "an action is brought," which is the language chosen by the General Assembly. Thus, this threshold issue is ripe and squarely framed by the decision in this case. Similarly, the zero apportionment issue also is squarely presented by this case with undisputed facts establishing how the shooter contributed to Carmichael's injuries. Thus, this case is a good vehicle for addressing these important issues.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant certiorari to address the foregoing issues of gravity and great public importance.

Respectfully submitted this 29th day of December, 2021.

30

*/s/Laurie Webb Daniel*
Laurie Webb Daniel
Georgia Bar No. 204225
Matthew D. Friedlander
Georgia Bar No. 416707
HOLLAND & KNIGHT LLP
1180 West Peachtree Street NW, Suite 1800
Phone: (404) 817-8500
laurie.daniel@hklaw.com
matthew.friedlander@hklaw.com

*Attorneys for Georgia CVS Pharmacy, LLC*

31

## CERTIFICATE OF SERVICE

I hereby certify that on this December 29, 2021, I served the foregoing **PETITION FOR WRIT OF CERTIORARI** upon the following counsel of record by filing a true and correct copy thereof with the Clerk of Court using the Court's electronic filing system, as permitted by Supreme Court of Georgia Rule 13, by e-mail, as well as by causing true and correct copies thereof to be placed in the United States Mail, with adequate postage affixed thereon, addressed as follows:

Peter A. Law, Esq.
E. Michael Moran, Esq.
Law & Moran
563 Spring Street, NW
Atlanta, GA  30308

Michael B. Terry
Naveen Ramachandrappa
Bondurant, Mixson &Elmore, LLP
1201 W. Peachtree St NW
Atlanta, GA 30309

Brian D. Trulock
Carrie A. Moss
BENDIN SUMRALL & LANDER, LLC
One Midtown Plaza, Suite 800
1360 Peachtree Street, NE

James A. Rice, Jr.,
JAMES A. RICE, JR., P.C.
563 Spring Street, NW
Atlanta, GA 30308

*s/Laurie Webb Daniel*
Laurie Webb Daniel
Georgia Bar No. 204225

**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**November 1, 2021**

# In the Court of Appeals of Georgia

A21A0677. GEORGIA CVS PHARMACY, LLC v. CARMICHAEL.

MILLER, Presiding Judge.

One evening in December 2012, James Carmichael was shot multiple times by an unknown assailant in an Atlanta CVS parking lot, leaving him with multiple severe long-term injuries. Carmichael brought this premises liability case against CVS, arguing that CVS failed to take adequate security measures to protect the property. A Fulton County jury found in favor of Carmichael and returned an adjusted verdict of $42,750,000 against CVS. CVS appeals from the jury's verdict and the denial of its motion for new trial, arguing that (1) there was insufficient evidence to show that CVS caused Carmichael's injury or that CVS had superior knowledge of the danger; (2) the trial court erred in failing to charge the jury on a "personal malice" defense;

Exhibit A

(3) the jury rendered a void verdict when it apportioned 0% of the fault to the unknown assailant; and (4) Carmichael was actually a licensee, not an invitee, and so CVS owed him a lesser standard of care.

We affirm the jury's verdict because (1) a reasonable jury could conclude from the evidence at trial that the robbery was reasonably foreseeable to CVS; that Carmichael did not have superior knowledge of the danger; and that increased lighting or a security guard presence could have deterred the attack; (2) CVS's proposed jury instruction was substantially covered by the trial court's other instructions; (3) the jury properly declined to apportion fault to the two non-parties on the verdict form; and (4) CVS waived review of its licensee argument by failing to present it below.

> In reviewing a verdict after the denial of a motion for new trial, we follow well-established principles. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of the motion for new trial will not be disturbed.

(Citation omitted.) *Golden Isles Cruise Lines, Inc. v. Lowie*, 350 Ga. App. 1, 1-2 (827 SE2d 703) (2019).

The record adduced at trial shows that on December 20, 2012, at around 6:40pm, Carmichael was driving through Atlanta on his way home to Alabama when he decided to stop at a CVS on Moreland Avenue for some toiletries. While there, Carmichael called an acquaintance, Frankie Gray, and asked Gray to meet him at the CVS to complete a previously discussed sale of an iPad. Carmichael thought the CVS store "was a safe place to meet Mr. Gray" because "CVS is a national chain." Carmichael parked by the front door of the CVS store to meet with Gray.

After Carmichael met with Gray and Gray left, an unknown man jumped into Carmichael's car, put a "big" gun to Carmichael's head, threatened to kill him, and said, "Give me your money." Carmichael "took everything out" and pleaded for his life. Carmichael then grabbed his own pistol and attempted to shoot, but the gun jammed. The perpetrator then fired several rounds into Carmichael's stomach, back, and shoulder. After the perpetrator fled, Carmichael ran into the store for help before collapsing. Carmichael was comatose for about a month afterward, and he has since undergone multiple surgeries and continues to suffer from permanent nerve damage,

3

hearing loss, speech deficiencies, and chronic pain. Carmichael also incurred medical bills in the amount of $725,800.

Carmichael filed this premises liability action against CVS, arguing that CVS failed to take adequate security measures to protect the property, such as by having security guards present or having improved lighting in its parking lot.[1]

At trial, many current and former Moreland Avenue CVS store employees testified as to the store's conditions. Numerous employees testified that the store was located in a high-crime area. CVS's employees and managers considered the parking lot at the Moreland Avenue store unsafe, to the point that male employees regularly walked female employees to their cars. The employees would also park close to the building because of the spotty lighting in the parking lot. Two employees respectively rated the safety problems at the store as an "8" and "9" out of ten. Three employees testified that they were "not surprised" that Carmichael was shot on the premises.

Ceilia Wilson, a supervisor with CVS, testified that the store previously had security guards that provided a "good deterrent" and made her feel safer, but they were removed in 2010. The store's employees repeatedly requested security guards

---

[1]Carmichael also initially sued various companies that owned the land, as well as two fictitious CVS employees, but these other defendants were apparently dismissed before trial. CVS was the only named defendant at trial.

from CVS after that point, but their requests were all denied. The witnesses at trial testified that, after security was removed, at least three violent crimes occurred at the Moreland Avenue store. Patricia Ham, a former cashier at the store, testified that, in February 2011, a robber approached her at the register, showed her what she "believe[d] to be a handgun," threatened to kill her, and demanded money. Cierra Langford, a CVS customer, testified that, in June 2012, a robber approached her in the parking lot after she left the store. The robber followed her to her car, which was "parked right in front," and "hit [her] in [the] head and took [her] purse." Holly White, a CVS shift manager, testified that, in November 2012, a robber approached her in the store and demanded at gunpoint that she open the cash registers. Following these crimes, Langford filed an incident report with CVS, and Ham and White both requested security from CVS based on their respective incidents.

Carmichael's expert witness testified that "there's an overwhelming body of research which confirm[ed] that [armed security] has a high deterrent effect." In the expert witness's opinion, if CVS had a security guard present, "the robbery more likely would have been prevented." The expert witness also reviewed the lighting at the Moreland Avenue store's parking lot and testified that, in his opinion, it was spotty and inconsistent, and a uniform lighting would "facilitate better visibility in the

5

area to deter loitering, trespassing, [and] any of those undesirable activities." The investigating officer also testified that he found "armed security effective" and that "in [his] experience . . . people don't rob and shoot people while an officer is sitting there." Finally, CVS's corporate representative, Andrew Edwards, also testified in his deposition (which was read to the jury) that security guards were an effective deterrent, that "CVS wouldn't hire security guards if they didn't believe they were effective," and that "sufficient lighting" could "be a deterrent to violent crime."

The jury found CVS 95% at fault, Carmichael 5% at fault, and both Gray and the shooter 0% at fault for the incident, and it awarded Carmichael an adjusted total of $42,750,000 in damages (representing 95% of its total verdict of $45,000,000). After trial, CVS filed a motion for new trial and a motion for j.n.o.v. Following a hearing, the trial court denied the motions, and this appeal followed.

1. In three related arguments, CVS argues that the trial court erred by failing to direct a verdict or grant a new trial because the evidence was insufficient to support the element of causation and to show that it had superior knowledge of the danger presented by the unknown shooter. Specifically, CVS argues that (1) Carmichael failed to produce evidence showing that the attack was reasonably foreseeable to CVS; (2) the undisputed evidence showed that Carmichael had superior knowledge

of the danger; and (3) Carmichael's contention that increased lighting or a security guard presence would have prevented the attack was too speculative. We reject each of these arguments because there was sufficient evidence from which a reasonable jury could conclude that CVS proximately caused Carmichael's injuries and that CVS had superior knowledge of the danger.

"The standard of appellate review of a trial court's denial of a motion for a directed verdict is the any evidence test. Moreover, in considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. We review any pure questions of law de novo." (Citations and punctuation omitted.) *Camelot Club Condominium Assoc., Inc. v. Afari-Opoku*, 340 Ga. App. 618, 620 (1) (798 SE2d 241) (2017). Additionally,

> [t]he standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.

(Citation omitted.) *Morrison v. Kicklighter*, 329 Ga. App. 630, 631-632 (1) (765 SE2d 774) (2014).

7

> [W]here an owner or occupier of land, by express or implied invitation,
> induces or leads others to come upon his premises for any lawful
> purpose, he is liable in damages to such persons for injuries caused by
> his failure to exercise ordinary care in keeping the premises and
> approaches safe. Although a landowner has a duty to invitees to exercise
> ordinary care to keep its premises safe[,] the landowner is not an insurer
> of an invitee's safety. In order to recover on a premises liability claim,
> a plaintiff must show (1) that the defendant had actual or constructive
> knowledge of the hazard; and (2) that the plaintiff lacked knowledge of
> the hazard despite the exercise of ordinary care due to actions or
> conditions within the control of the owner/occupier.

(Citations and punctuation omitted.) *Camelot Club*, supra, 340 Ga. App. at 620 (1) (a). We also must keep in mind that "questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." (Citation and punctuation omitted.) *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 97 (2) (645 SE2d 559) (2007).

(a) CVS's primary contention is that the prior crimes that happened at the Moreland Avenue store are too dissimilar to the attack on Carmichael to support an inference that Carmichael's attack was reasonably foreseeable by CVS. We conclude that there was ample evidence from which a reasonable jury could conclude that the robbery of Carmichael was reasonably foreseeable to CVS because (1) all three

8

crimes were substantially similar to the present case so as to be probative; and (2) there was substantial other evidence to put CVS on notice that a robbery of a customer was a salient possibility.

> An intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable. In order to be reasonably foreseeable, the criminal act must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers against the risk posed by that type of activity. However, while the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical; rather, such activity must be sufficient to attract the owner's attention to the dangerous condition which resulted in the litigated incident. In determining whether previous criminal acts are substantially similar to the occurrence causing harm[,] the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. The question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Camelot Club*, supra, 340 Ga. App. at 620-621 (1) (a) (i).

9

Here, as outlined above, Carmichael presented evidence of an armed robbery of a cashier, a robbery/"purse-snatching" of a customer in the parking lot, and another armed robbery of an employee, all occuring at the store within two years of the present incident. These robberies all involve similar circumstances to those involved in the present incident: two involved firearms, and at least one involved a physical attack on a customer in the parking lot. Additionally, "[w]hile these theft crimes occurred when the drivers were not near their vehicles, under the circumstances shown to have existed in this case, it was reasonable to anticipate that an unauthorized entry into a vehicle might occur when the driver was nearby and that personal harm to the driver would result." *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 548 (3) (a) (659 SE2d 905) (2008). On multiple occassions, we have found similar crimes to these to be substantially related to other armed robberies so as to show the foreseeability of further criminal activity. See, e.g., *Camelot Club*, supra, 340 Ga. App. at 621 (evidence of several armed robberies and aggravated assaults on the property was sufficient to support a jury finding that the victim's murder during a robbery was foreseeable to the property owner); *Wal-Mart Stores, Inc.*, supra, 290 Ga. App. at 548-549 (3) (a) (multiple thefts and aggravated assaults with firearms were sufficiently similar to armed robbery and shooting of plaintiff); *Carlock v.*

*Kmart Corp.*, 227 Ga. App. 356, 359 (2) (489 SE2d 99) (1997) (an armed robbery and

two "purse snatchings" were substantially similar to an armed robbery and shooting);

*Matt v. Days Inn of Am., Inc.*, 212 Ga. App. 792, 792-795 (443 SE2d 290) (1994)

(prior robberies, including a "purse snatching" and other robberies without weapons,

were substantially similar to a robbery with a weapon).[2]

Additionally, Carmichael presented evidence that these crimes were reported

to CVS. Carmichael also presented evidence from numerous CVS employees and

managers that CVS knew the store was located in a high-crime area. CVS's own

employees, including its managers, considered the parking lot unsafe, and the store's

employees repeatedly requested security guards based on these and other incidents,

but their requests were denied. From all this evidence, the jury could conclude that

the robbery of Carmichael was reasonably foreseeable to CVS.

(b) CVS next argues that the evidence was insufficient to support the jury's

verdict because the evidence conclusively showed that Carmichael had superior

knowledge of the harm. CVS's main contention is that Gray was involved as a

perpetrator of the robbery, and because Carmichael had a prior relationship with

---

[2] Because these other crimes were substantially similar, CVS's argument that
the trial court erroneously admitted this evidence under Rule 404 (b) similarly fails.

11

Gray, Carmichael necessarily had prior knowledge of the danger that Gray potentially presented. CVS further argues that Carmichael "kept a loaded gun handy because he knew his business was risky" and failed to take care of his own safety by shooting first. Contrary to CVS's argument, there was sufficient evidence from which the jury was entitled to find that Carmichael did not have superior knowledge of the danger.

As an initial matter, although Carmichael is correct that CVS did not move for a directed verdict on this basis, "a party may contend on appeal that the evidence is insufficient to support a verdict even if the party failed to move for a directed verdict or new trial in the trial court." *Aldworth Co., Inc. v. England*, 281 Ga. 197, 199 (2) (637 SE2d 198) (2006). Nevertheless, such a party may "obtain only a new trial on appeal if she prevails on a claim that the evidence was insufficient to sustain the verdict," and cannot obtain a judgment as a matter of law in their favor. Id.

Next, contrary to CVS's contention, the evidence was disputed as to whether Gray was involved in the robbery. Although law enforcement arrested Gray in connection with the incident, the charges "fizzled out" because they did not find evidence that Gray and the shooter were working together. Indeed, at trial, Carmichael testified that Gray "was a nice guy" who "didn't do it." Thus, there was some evidence from which the jury could conclude that the attack on Carmichael was

perpetrated by a total stranger and not by someone with whom he had a pre-existing relationship.

Even assuming *arguendo* that Gray was involved in the robbery, there was no evidence presented at trial that Carmichael knew beforehand that Gray potentially presented a risk to him. We previously rejected a similar argument in *Camelot Club Condominium Association, Inc.*, supra, 340 Ga. App. at 623 (1) (a) (ii), which also involved a shooting in a parking lot during a sales transaction. In that case, we concluded that the fact that the victim had a prior relationship with one of the assailants did not necessarily establish that he had prior knowledge of the danger. Id. at 623 (1) (a) (ii) n.7. We noted in that case that, "[a]lthough [the victim] had engaged in prior business dealings with one of the Assailants, the evidence indicated that he did not know the other two, and Camelot has pointed us to no evidence showing [the victim] was aware of or had reason to suspect that any of the three posed a threat." Id. We specifically distinguished cases "in which the plaintiffs had a prior personal relationship with their attackers and knew of a specific threat posed by them." Id.

Here, as in *Camelot Club*, no such evidence existed that Carmichael had any knowledge that Gray posed a particular or specific threat. There was no testimony or evidence showing that the communications between Carmichael and Gray evinced

anything out of the ordinary that would have been seen as threatening. Carmichael testified that he had sold electronics out of his car "hundreds, if not thousands, of times" and "never had a problem." As for the fact that Carmichael had a gun in his car, Carmichael testified that he "always carried a gun" for his own safety long before he started selling electronics. Further, the evidence showed that Carmichael had no knowledge of this particular CVS store or of its conditions. See *Camelot Club Condominium Association, Inc.*, supra, 340 Ga. App. at 622 (1) (a) (ii) (plaintiff did not have superior knowledge when there was no evidence that the plaintiff had any knowledge of prior criminal activity at the location). This case is thus readily distinguishable from those cases where we found that a premises liability claim was precluded based on the plaintiff's *specific* knowledge of the threat posed by the attacker. Compare *Cook v. Micro Craft, Inc.*, 262 Ga. App. 434, 438-440 (1) (585 SE2d 628) (2003) (decedent had superior knowledge of the criminal attack when the attacker and his violent history were previously known by the decedent and when the decedent had several conversations with the attacker wherein the attacker expressed his intention to kill the decedent); *Johnson v. Holiday Food Stores*, 238 Ga. App. 822, 824 (1) (520 SE2d 502) (1999) (plaintiff had knowledge superior to that of her

employer regarding an impending attack by her fiancé because she knew his personality and temperament as well as the extent that they had argued that day).

Thus, the jury was presented with the evidence detailed in Division (1) (a), CVS was aware of the dangers presented by the state of its property, and the jury was presented with no evidence that Carmichael was aware of any prior criminal activity at CVS. The jury was therefore entitled to conclude that Carmichael did not have superior knowledge of any danger posed by the robbery or of any other condition that would have subjected him to an unreasonable risk of harm. See *Camelot Club*, supra, 340 Ga. App. at 622-623 (1) (a) (ii) (jury was entitled to find that a property owner had superior knowledge when evidence was presented that a criminal attack on the property was reasonably foreseeable and when no evidence was presented that the victim had any knowledge of prior criminal activity on the property). Accordingly, CVS is not entitled to a new trial on this basis.

(c) CVS further argues that Carmichael failed to present evidence to prove beyond the realm of mere speculation that additional security measures would have prevented the attack. We conclude that Carmichael indeed presented sufficient evidence from which a jury could conclude that the lack of proper lighting or security officers on CVS's premises contributed to the robbery.

15

CVS's employees testified that the store previously had security guards that provided "a good deterrent" but that they were removed in 2010 and that at least three crimes occurred on the property afterward. CVS's own corporate representative also testified that security guards were an effective deterrent, that "CVS wouldn't hire security guards if they didn't believe they were effective," and that "lighting" could "be a deterrent to violent crime." The investigating officer also testified that he found "armed security effective" and that "in [his] experience . . . people don't rob and shoot people while an officer is sitting there." Carmichael's expert witness testified that "there's an overwhelming body of research which confirm[ed] that [armed security] has a high deterrent effect." In the expert witness's opinion, if CVS had a security guard present, "the robbery more likely would have been prevented." The expert witness also reviewed the lighting at the Moreland Avenue store's parking lot and testified that, in his opinion, if CVS had uniform lighting in the parking lot, it would have "facilitate[d] better visibility in the area to deter loitering, trespassing, [and] any of those undesirable activities."

Carmichael thus provided evidence that showed more than speculation that a lack of security or proper lighting contributed to his injuries. See *Brookview Holdings*, supra, 285 Ga. App. at 94-97 (2) (holding that the victim provided

16

sufficient evidence that the property owner's failure to provide security guards proximately caused his injuries where an expert witness and the investigating officer testified that security guards deterred crime, and noting the "inferences arising from the evidence that when security was provided no tenants were attacked, but once [the defendant] stopped providing security two tenants were the victims of violent crime"). Accordingly, the trial court did not err in failing to grant a new trial or j.n.o.v. on the issue of causation.

2. CVS next argues that the trial court erred by failing to instruct the jury that the "foreseeability of a criminal attack is negated when the plaintiff had superior knowledge, [such] as when an assault arises out of a pre-existing private relationship between the plaintiff and the attacker which was wholly unconnected with the premises." This argument fails because the trial court instructed the jury on the same underlying principles contained in CVS's proposed instruction.

At trial, CVS requested that the trial court include this "pre-existing relationship" instruction, but when the trial court did not include the instruction, CVS did not object after the instructions were finalized and the trial court charged the jury. "In civil cases, exceptions or objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the

17

charge is given do not preserve charging issues for appellate review." (Citations omitted.) *Vaughn v. Metropolitan Property & Cas. Ins. Co.*, 260 Ga. App. 573, 577 (9) (580 SE2d 323) (2003). Nevertheless, despite CVS's failure to object, we may review this enumeration under the substantial error doctrine. "[T]he appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c). A jury charge constituting substantial error harmful as a matter of law "is one that is blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors." (Citation omitted.) *Smith v. Norfolk Southern Railway Co.*, 337 Ga. App. 604, 612 (2) (788 SE2d 508) (2016).

CVS is correct that its proposed jury instruction is an accurate summation of the law. See, e.g., *Johnson*, supra, 238 Ga. App. at 824 (1) (concluding that a plaintiff's premises liability claim failed as a matter of law because the attack on the plaintiff "grew out of a specific private relationship which had no connection with the premises or employment whatsoever.") (punctuation omitted). The trial court,

18

however, properly instructed the jury that Carmichael "could not recover if he had equal or superior knowledge of the risk and failed to exercise ordinary care for his own safety," which is one of the key elements of a premises liability claim. Our case law discussing "pre-existing relationships" as a bar to a premises liability claim do so as a specific application of this superior knowledge element to the facts in those cases. See, e.g., *Cook*, supra, at 440 (1) ("[T]he clear and undisputed evidence demonstrates that the decedent . . . had knowledge about the impending attack that was equal or superior to Micro Craft."); *Johnson*, supra, 238 Ga. App. at 824 (1) ("Given these facts, we cannot say that appellees had any reason to anticipate a criminal assault or superior knowledge of a condition that subjected Johnson to an unreasonable risk of harm."). CVS has pointed us to no case concluding that this "pre-existing relationship" principle constitutes an entirely new or separate defense apart from a simple failure to prove superior knowledge.

Because the trial court's instructions substantially covered the legal principles underlying CVS's proposed "pre-existing relationship" instruction, CVS has failed to show that the trial court erred, much less substantially erred, by failing to include its proposed instruction. See *Byrne v. Fierman*, 256 Ga. App. 443, 445 (2) (568 SE2d 494) (2002) ("The trial court's failure to give a jury charge in the exact language

19

requested is not error where the charges actually given substantially cover the principles contained in the request.") (citation omitted).

3. CVS next argues that the jury's verdict as to damages is void because the jury improperly apportioned fault by determining that the unidentified shooter was 0% at fault for Carmichael's injuries. It argues that such a result contravenes OCGA § 51-12-33 (c)'s directive that juries "shall consider the fault of all persons or entities who contributed to the alleged injury or damages." We conclude that the jury's verdict was not inconsistent, ambiguous, or vague so as to be void.[3]

"In a civil case, a verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside." (Citation and punctuation omitted.) *Anthony v. Gator Cochran Constr., Inc.*, 288 Ga. 79 (702 SE2d 139) (2010). "[T]he trial judge has a duty not to receive an indefinite, imperfect, or ambiguous verdict, and where an inconsistent or void verdict is returned by the jury, the trial judge should refuse to receive it and require

---

[3] Although Carmichael argues at length that CVS has not preserved this issue because CVS raised it for the first time in its motion for new trial, CVS challenges the verdict as void. "[A] party does not waive an objection to a verdict that is void, as opposed to voidable, by failing to object to the verdict form or the verdict as rendered before the jury is released." *Benchmark Builders v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011).

20

the jury to return for further deliberations." (Citation omitted.) *Hillside Orchard Farms, Inc. v. Murphy*, 222 Ga. App. 106, 111 (2) (473 SE2d 181) (1996).

> Of course, not merely any irregularity will render a verdict void. Indeed, under OCGA § 9-12-4, verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity. Thus, the presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them. Even if the verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied. Furthermore, in determining the proper interpretation of a jury verdict and to remove any ambiguity, the trial court may question the jury prior to disbursal in order to clarify the jury's intent.

(Citation and punctuation omitted.) *Anthony*, supra, 288 Ga. at 80-81.

We conclude that the jury's verdict in this case is not void because it is not indefinite, imperfect, ambiguous, or inconsistent. In its verdict, the jury clearly set out that it assigned 95% of the fault to CVS, 5% of the fault to Carmichael, and 0% of the fault to the shooter and Gray. There is nothing inherently inconsistent or vague about these findings that would necessarily render the verdict void. Compare *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011) ("An award of attorney fees but no other damages or affirmative relief under a statute that authorizes

21

an award of attorney fees to the 'prevailing party' is illegal and void[.]"); *Bunch v. Mathieson Drive Apartments, Inc.*, 220 Ga. App. 855, 857-859 (1) (470 SE2d 895) (1996) (jury verdict awarding no wrongful death expenses but awarding funeral expenses was inherently inconsistent and ambiguous and therefore void). The jury, after hearing the evidence in this case, simply found that the shooter was 0% at fault.

Citing to *Curran v. Scharpf*, 290 Ga. 780, 784 (726 SE2d 407) (2012), CVS argues that a jury verdict is void whenever "the jury does something it is not authorized to do," and that the jury was not authorized under the apportionment statute (OCGA § 51-12-33 (c)) to assign 0% fault to the perpetrator of the crime, but we reject these contentions. First, CVS's citation to *Curran* concerning the scope of the void verdict doctrine is to a non-precedential special concurrence by Justice Benham, see *Curran*, 290 Ga. at 784 (Benham, J., concurring specially), and we have found no binding precedent construing the void verdict doctrine as broadly as CVS desires. Second, OCGA § 51-12-33 (c) only directs, in relevant part, that "[i]n assessing percentages of fault, the trier of fact shall *consider* the fault of all persons or entities who contributed to the alleged injury or damages[.]" (Emphasis supplied.). As the trial court below concluded, the jury "considered" the fault of all who potentially contributed when they set out their verdict form assigning percentages of

22

fault between CVS, Carmichael, Gray, and the shooter. The plain language of the statute does not itself require that the trier of fact assign some minimum percentage of fault to each party. Our law instead states that "[w]hether the non-party contributed to the alleged injury is a question of fact for a jury to decide." *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 58 (1) (b) (805 SE2d 60) (2017).

To the extent that CVS argues that the evidence at trial did not support the jury's verdict assigning 0% of the fault to the shooter, we note that there was evidence presented showing that Carmichael attempted to shoot the robber first before the robber shot Carmichael. Thus, it is possible that the jury either found that the robber ended up shooting in self-defense and was worthy of no fault or that the jury instead assigned the amount of fault it would have assigned to the shooter to Carmichael instead. Therefore, there are at least some possible interpretations of the jury's verdict that are consistent with the evidence such that the jury's verdict was entirely proper. See *Lucas v. Charles Schwab & Co.*, 354 Ga. App. 522, 525 (2) (841 SE2d 150) (2020) (jury verdict was not void when the verdict could reasonably be constructed in a way that upheld it); *Golden Isles Cruise Lines, Inc.*, supra, 350 Ga. App. at 9-10 (2) (sufficient evidence supported the jury's verdict assigning 0% of the fault to the plaintiff and 100% of the fault to the defendant).

But even if we assumed that there was insufficient evidence to support the jury's apportionment of the fault, we are compelled to conclude that any such error would be harmless[4] under the Supreme Court of Georgia's recent decision in *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, ___ Ga. ___ (Case No. S20G1419) (Aug. 10, 2021). In *Alston & Bird, LLP*, the Court analyzed the interplay between the statutory text of OCGA §§ 51-12-33 (a), (b), and (c) concerning when a jury is entitled to apportion fault to non-parties. The Court concluded that, under the plain text of the apportionment statute, a trial court is only entitled to apportion damages to non-parties under OCGA § 51-12-33 (b) when there are multiple named defendants in the case. Id. at ___ (2). Otherwise, when only one named defendant is present in the case, OCGA § 51-12-33 (a) controls and provides that damages may only be reduced or apportioned based on the amount of fault assigned to the plaintiff. Id. at ___ (2). The Court therefore concluded that "[t]here is no grant of authority in the

---

[4] "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." OCGA § 9-11-61.

24

apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant." Id. at ____ (2).

In this case, just as in *Alston & Bird, LLP*, CVS was the only named defendant in the case by the time the case proceeded to trial. See *Schriever v. Maddox*, 259 Ga. 558, 561 (2) (c) (578 SE2d 210) (2003) ("[S]ince the company doctor was no longer a party to the action," the case was no longer "an action [] brought against more than one person" for apportionment purposes) (construing a former version of OCGA § 51-12-33). Thus, regardless of how much fault the jury assigned to the non-party shooter, the amount of damages awarded against CVS would not change because OCGA § 51-12-33 (b) does not allow the amount of damages to be reduced based on non-party fault in these circumstances. Thus, any alleged failure by the jury in declining to assign fault to the non-party shooter based on this evidence was ultimately harmless.

To be sure, the jury's decision to apportion no fault to the shooter may well be considered unusual. For the reasons stated above, however, we cannot find any reversible error based on the jury's apportionment of fault.[5]

---

[5] CVS relatedly argues that Carmichael made an improper closing argument when he argued that the jury should apportion 0% fault to the shooter. However, CVS did not object to Carmichael's closing argument, and so it has waived any challenge

4. CVS finally argues that the evidence shows that Carmichael was actually a licensee, not an invitee, and so CVS owed him a lesser duty of care. At trial, however, CVS withdrew any argument that Carmichael was a licensee, and it affirmatively represented to the trial court that it was "not going to make any argument that [Carmichael's] entitled to a lower duty." As a result, the trial court instructed the jury, without any objection from CVS, on the duty of care owed to invitees, not licensees. Accordingly, because CVS expressly acquiesced to the court's instruction and the jury's consideration of the case under an invitee framework, CVS has waived this argument. See *Moody v. Dykes*, 269 Ga. 217, 220 (3) (496 SE2d 907) (1998) (trial counsel's representation at charge conference that "I won't object to anything. I'll accept it all" waived even substantial error review of the jury charge).

We therefore reject all of CVS's arguments and affirm the jury's verdict and the denial of CVS's motion for new trial.

*Judgment affirmed. Hodges, J., concurs. Pipkin, J., concurs in judgment only.*

---

to the argument. *Berryhill v. Daly*, 358 Ga. App. 139, 140 (854 SE2d 338) (2021). Although CVS argues that it can still challenge the closing argument based on *Stolte v. Fagan*, 291 Ga. 477, 479-483 (2) (731 SE2d 653) (2012), we note that, after the briefs were filed in this case, the Supreme Court of Georgia overruled *Stolte* in its decision in *Williams v. Harvey*, 311 Ga. 439, 447-451 (1) (b) (858 SE2d 479) (2021), and so that case does not help CVS and did not influence our analysis.

26



# SUPREME COURT OF GEORGIA
## Case No. S22T0391

November 22, 2021

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed.

GEORGIA CVS PHARMACY, LLC v. JAMES CARMICHAEL.

The request for an extension of time to file a Petition for Writ of Certiorari in the above case is granted. You are given an extension until December 29, 2021 to file.

**SUPREME COURT OF THE STATE OF GEORGIA**

Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

Exhibit B