**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**JAMIE LEE ANDREWS, as Surviving
Spouse of MICAH LEE ANDREWS,
Deceased, and JAMIE LEE ANDREWS,
as Administrator of the Estate of
MICAH LEE ANDREWS, Deceased,**

    **Plaintiff,**

**v.**

**AUTOLIV JAPAN, LTD.,**

    **Defendant.**

**CIVIL ACTION FILE NO.**

**1:14-cv-3432-SCJ**

## ORDER

This matter appears before the Court on Plaintiff's Motion to Amend and Modify the Court's Final Order and Judgment (Doc. No. [536]) and Defendant's Motion to Amend the Judgment or, in the alternative, Motion for New Trial (Doc. No. [543]. [1]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software. Hearing transcripts will utilize the transcript page cite.

## I.     BACKGROUND

On December 31, 2021, after a non-jury trial in this products liability civil action, the Court entered a judgment in favor of Plaintiff and against Defendant in the following apportioned amounts: $9,671.70 for funeral and medical expenses; $1,000,000.00 in general damages for the predeath fright, shock, terror, and pain and suffering that Micah Andrews endured; $12,500,000.00 for the full value of Micah Andrews's life; and $100,000,000.00 for punitive damages. Doc. No. [534].

On January 10, 2022, Plaintiff filed a Motion to Amend and Modify the Court's final Order and Judgment. Doc. No. [536]. Plaintiff seeks amendment and modification as follows. First, Plaintiff requests that the Court amend the Judgment to include the amount of compensatory damages omitted because of apportionment of fault to Mazda: $13,509,671.70. Doc. No. [536], 1. Second, Plaintiff requests that the Court "modify the Judgment to include the amount of prejudgment interest that Autoliv owes for failing to timely accept a settlement demand under O.C.G.A. § 51-12-14: $4,734,349.55." Id. at 2.

On January 28, 2022, Defendant filed its Motion to Amend the Judgment or in the alternative, Motion for New Trial. Doc. No. [543]. In its Motion,

Defendant asserts that "the $100 million punitive damages award should be eliminated altogether because the evidence in this case does not authorize any award of punitive damages as a matter of Georgia law." Id. at 1. Defendant asserts that "[i]f not eliminated entirely, the award should, at a minimum, be reduced because it is unconstitutionally excessive and improperly based on the financial condition of non-party Autoliv, Inc." Id. Defendant further asserts that "[t]he compensatory damages award against Autoliv Japan should similarly be reduced because fault for Mr. Andrews's death should have been apportioned to Bosch." Id. at 1–2. Alternatively, Defendant asserts that "the Court should order a new trial so that compensatory damages and punitive damages can be properly reconsidered." Id. at 2.

The Court held a hearing on the motions on April 6, 2022. Doc. No. [570]. While the Court initially stated at that hearing that it would not rule on this issue until the Georgia Supreme Court made its decision on whether to grant a petition for writ of certiorari for the case on which Plaintiff relies on to support her motion, Georgia CVS Pharmacy, LLC v. Carmichael, 362 Ga. App. 59, 865 S.E.2d 559 (2021), the Court has reconsidered that statement and now deems it proper to move forward with a ruling on this matter.

3

The pending motions have been fully briefed and are now ripe for review.

## II.    LEGAL STANDARD

### A.    Amending the Judgment

Rule 52(b) states in relevant part that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "This Rule permits a court to amend its findings 'to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence, but not to allow the relitigation of old issues, a rehearing on the merits, or the presentation of new theories of the case.'" Holiday Hosp. Franchising, LLC v. J&W Lodging, LLC, No. 1:17-CV-01663-ELR, 2021 WL 2980586, at *2 (N.D. Ga. July 12, 2021) (citing Hanover Ins. Co. v. Dolly Trans Freight, Inc., No. 6:05-CV-576-Orl-19DAB, 2007 WL 170788, at *2 (M.D. Fla. Jan. 18, 2007).

Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend within 28 days from the entry of the judgment. Benoit v. Sec'y, Fla. Dep't of Corr., No. 21-11014, 2022 WL 2743174, at *3 (11th Cir. July 14, 2022). "The only grounds for granting [a Rule 59] motion are newly-discovered

4

evidence or manifest errors of law or fact." <u>PBT Real Est., LLC v. Town of Palm Beach</u>, 988 F.3d 1274, 1287 (11th Cir. 2021) (citations omitted).[2] A party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." <u>Michael Linet, Inc. v. Vill. of Wellington</u>, 408 F.3d 757, 763 (11th Cir. 2005).

### B.   <u>New Trial</u>

Rule 59(a)(2) states in relevant part that "[t]he court may, on motion, grant a new trial on all or some of the issues--and to any party . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). Rule 59 further states that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). "Applying this Rule, courts have explained that 'a trial court should be most reluctant to set aside that which it has previously

---

[2]   As stated by one court, "[a] manifest error . . . arises upon the court's 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" <u>In re Castleberry</u>, 437 B.R. 705, 707 (Bankr. M.D. Ga. 2010) (citing <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000)).

decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice.'" Holiday Hosp. Franchising, LLC, 2021 WL 2980586, at *2 (citing LiButti v. United States, 178 F.3d 114, 118 (2nd Cir. 1999); Tampa Port Auth. v. M/V Duchess, 65 F. Supp. 2d 1303, 1305 (M.D. Fla. 1998)). "A timely motion for new trial is addressed to the sound judicial discretion of the trial court." Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 562 (11th Cir. 1987).

### III.   ANALYSIS

#### A.   **Plaintiff's Motion to Amend and Modify the Court's Final Order and Judgment (Doc. No. [536])**

As stated above, in her motion, Plaintiff requests the following: (1) that the Court amend the Judgment to include the amount of compensatory damages omitted because of apportionment of fault to Mazda; and (2) that the Court "modify the Judgment to include the amount of prejudgment interest that Autoliv owes for failing to timely accept a settlement demand under" Georgia's Unliquidated Damages Interest Act, O.C.G.A. § 51-12-14. Doc. No. [536], 1–2.

Plaintiff's first request is based on the following case: Georgia CVS Pharmacy, LLC v. Carmichael, 362 Ga. App. 59, 865 S.E.2d 559 (2021). In the Carmichael case, the Georgia Court of Appeals held that Georgia's

6

apportionment statute, O.C.G.A. § 51-12-33(b)[3] did not permit the amount of damages to be reduced based on non-party fault in the circumstance where there was only one named defendant in the case by the time the case proceeded to trial. Id. at 72, 865 S.E.2d at 571. The Carmichael court relied upon the 2021 precedent from the Georgia Supreme Court and 2003 precedent from the Georgia Court of Appeals to support its decision. See Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC, 312 Ga. 350, 862 S.E.2d 295 (2021); Schriever v. Maddox, 259 Ga. App. 558, 561, 578 S.E.2d 210, 213 (2003).

Defendant objects to Plaintiff's request (concerning apportionment of fault to Mazda) as untimely and waived for failure to include in the Pretrial Order. Doc. No. [541], 5. In contrast, Plaintiff asserts that Defendant did not raise apportionment at trial. However, the Court notes that apportionment is referenced in the Pretrial Order. Doc. Nos. [485], 9–10; [485-2], 3. As there is some precedent in Georgia law for the apportionment principle that Plaintiff seeks to rely upon dating back to 2003, the Court finds that Plaintiff waived the

---

[3] Georgia's apportionment statute has been amended since the trial of the case *sub judice*. However, said amendment only applied to "cases filed after the effective date of the Act," which was May 13, 2022. See GA LEGIS 876 (2022), 2022 Georgia Laws Act 876 (H.B. 961).

7

apportionment ground of her motion by not adding this ground to the Pretrial Order and bringing the issue to the Court's attention prior to the entry of Judgment. See Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived . . . ."); cf. Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011) ("We find strong support for our conclusion in a Federal Circuit case that holds 'that when there is a relevant change in the law before entry of final judgment, a party generally must notify the district court . . . .'") (citing Rentrop v. Spectranetics Corp., 550 F.3d 1112, 1117 (Fed. Cir. 2008)).

Defendant further asserts that the authority cited by Plaintiff is incorrectly decided and should not be followed here. Doc. No. [541]. The Eleventh Circuit has held that where the highest court of a state has not spoken on a topic, the federal court "'must predict how the highest court would decide this case.'" Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1326 n.5 (11th Cir. 2005)). "Decisions of the intermediate appellate courts," here, the Georgia Court of Appeals, "provide data for this prediction." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011). "As a general matter, we must

8

follow the decisions of these intermediate courts." <u>Id.</u> "But [a federal court] may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise." <u>Id.</u>

Here, there is persuasive evidence to demonstrate that the Georgia Supreme Court would conclude otherwise than the holding in <u>Carmichael</u> and decide that Georgia's apportionment statute (in effect at the time of the trial of the case *sub judice*) permitted the amount of damages to be reduced based on non-party fault in a circumstance where only one named defendant (of an initial multi-defendant case) remained by the time the case proceeded to trial. This is because, as correctly noted by Defendant, the apportionment "statutory text at issue has a plain meaning inconsistent with the holding in <u>Carmichael</u>." Doc. No. [541], 8. The Court adopts Defendant's meaningful analysis of the statutory text (at Doc. No. [541], 7–10) to this regard. The Court rejects Plaintiff's statutory interpretation analysis. Doc. No. [545], 11–14. The Court also agrees with Defendant's argument that the <u>Schriever</u> case, cited in <u>Carmichael</u> is based upon a different version of Georgia's apportionment statute, such that it should not have been relied upon as precedent. <u>See</u> <u>DeKalb Cnty. Bd. of Tax Assessors v. Barrett</u>, 361 Ga. App. 598, 605–06, 865 S.E.2d 192, 197 (2021) ("[W]hen faced with

a post-[court] decision statutory amendment, the 'justifications for 'super stare decisis' not only fail, they actually compel a court's re-evaluation of the statute out of deference to the Legislature's supremacy on statutory issues.").[4]

Accordingly, the Court declines to rely upon <u>Carmichael</u> to amend the Judgment to include the amount of compensatory damages omitted because of apportionment of fault to Mazda.

As for Plaintiff's second request (concerning prejudgment interest), Defendant opposes the request on the grounds that the Court should consider its post-judgment apportionment arguments first and on the ground that Plaintiff incorrectly calculated interest using compound interest as opposed to simple interest. Doc. No. [541], 19–21.

In reply, Plaintiff submitted the declaration of economist, Michael J. Daniels, Ph.D. Doc. No. [545-1]. Dr. Daniels averred that based on his training and experience as an economist, the reference to interest being calculated "at an

---

[4] To the extent that this holding/prediction of how the Georgia Supreme Court would rule conflicts with the above-stated waiver holding, the prediction ruling controls and the waiver ruling is an alternative analysis.

10

annual rate" in the Georgia Unliquidated Damages Interest Act, O.C.G.A. § 51-12-14(c), "means that interest is compounded yearly." Id. ¶ 6.

After review and consideration of all arguments and applicable law, the Court accepts the expert opinion of Dr. Daniels and concludes that that Plaintiff is entitled to prejudgment interest (compounded annually) under O.C.G.A. § 51-12-14. The Court is unable to uphold Defendant's arguments in opposition.

**B.** **Defendant's Motion to Amend the Judgment or, in the alternative, Motion for New Trial (Doc. No. [543])**

The Court will now address the grounds of Defendant's Motion.

*1.* *Authorization for the Award of Punitive Damages*

As stated above, Defendant asserts that "the $100 million punitive damages award should be eliminated altogether because the evidence in this case does not authorize any award of punitive damages as a matter of Georgia law." Doc. No. [543], 1. After review of the parties' arguments, the Court declines to grant Defendant's Motion to Amend the Judgment as the Court is unable to conclude that the judgment contains plain or manifest errors of law or fact.[5]

---

[5] The Court recognizes that Defendant asserts that the Court did not address page 2 of Plaintiff's Exhibit 128 in its Final Order and Judgment. Doc. No. [543], n.15. Defendant also asserts that the Court did not state whether apportionment related to the airbag or

### 2.    *Reduction of the Punitive Damages Award*

Defendant further asserts that "[i]f not eliminated entirely, the award should, at a minimum, be reduced because it is unconstitutionally excessive and improperly based on the financial condition of non-party Autoliv, Inc." Doc. No. [543], 1. In addition, Defendant asserts that "[t]he compensatory damages award against Autoliv Japan should similarly be reduced because fault for Mr. Andrews's death should have been apportioned to Bosch." Doc. No. [543], 1–2.

### a)    <u>Constitutionality</u>

The Court begins with consideration of Defendant's unconstitutionally excessive argument. Doc. No. [543], 1. In support of its argument, Defendant refers the Court to the three guideposts identified by the United States Supreme Court.

When deciding whether a punitive damages award is unconstitutionally excessive, the Court considers three "guideposts": (1) the degree of reprehensibility of the defendant's misconduct; (2) the ratio of the punitive

---

the seat belt. Doc. No. [570], Tr. 50:25–51:1–10. However, in its motion, Defendant did not formally request additional findings of fact under Federal Rule of Civil Procedure 52(b). And the time has expired for the Court to enter additional findings.

damages award to the actual or potential harm suffered by the plaintiff; (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. Cote v. Philip Morris USA, Inc., 985 F.3d 840, 847 (11th Cir. 2021) (citations omitted).

The Eleventh Circuit has recently stated that "[t]he take-away" from its review of Supreme Court cases is as follows: "[w]hether it is a civil or criminal proceeding, the Due Process Clause requires that a defendant be put on fair notice of the severity of the punishment that might be imposed on him for his misconduct." Williams v. First Advantage LNS Screening Sols. Inc., 947 F.3d 735, 749–50 (11th Cir. 2020).

### (1)      Degree of reprehensibility

"The first guidepost considers the reprehensibility of the defendant's conduct, which is the 'most important indicium of the reasonableness of a punitive damages award.'" Cote, 985 F.3d at 847 (citations omitted). The Eleventh Circuit has further set forth five factors to consider under the reprehensibility guidepost:

> (1) whether "the harm caused was physical as opposed to economic"; (2) whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) whether "the target of the

13

> conduct had financial vulnerability"; (4) whether "the conduct involved repeated actions or was an isolated incident"; and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident."

Cote, 985 F.3d at 847. There is no requirement that a certain number of the factors be present, but "reprehensibility grows more likely as more factors are present." Id. (citations omitted).

At oral argument, Defendant, through Counsel, did not "dispute . . . that at least a couple of factors might show some degree of reprehensibility here." Doc. No. [570], Tr. 55:20–22.

Beginning with the first reprehensibility factor, the Court finds that the harm caused was physical and resulted in Mr. Andrew's death. As for the second factor, per the findings in the Final Order and Judgment, the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others." Doc. No. [534], 77–87. As for the third factor, financial vulnerability is not at issue. As for the fourth factor, the Court finds that the conduct involved is not an isolated incident based upon the duty to warn and the Court's prior finding that "Autoliv has not taken a single step to warn Georgians about the risk of serious injury or death." Id. at 86; see also Doc. No. [492]. As to the fifth factor,

14

the Court concludes that the harm was not the result of mere accident based on the testimony of Defendant's corporate representative, David Prentkowski. Doc. No. [543], 83–84.

Because all but one of the factors indicate that Defendant Autoliv's conduct was reprehensible (and because Defendant does not dispute that at least a couple of factors might show some degree of reprehensibility), this guidepost indicates that the punitive damages award is not unconstitutionally excessive. See Cote, 985 F.3d at 848 ("Because all but one of the factors indicate that [defendant's] conduct was reprehensible (and because [defendant] does not contest the reprehensibility guidepost), this guidepost indicates that the punitive damages award is not unconstitutionally excessive.").

### (2)   Ratio

"The next guidepost considers 'the ratio of punitive damages to actual harm inflicted on the plaintiff.'" Cote, 985 F.3d at 848; see also BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575(1996) (describing the guidepost as: "the disparity between the harm or potential harm suffered by [plaintiff] and his punitive damages award"). "In practice, this means [the Court] examine[s] the ratio of punitive damages to compensatory damages." Id. "There is no certain ratio at

15

which a constitutionally permissible award is transformed into an unconstitutionally excessive one." <u>Id.</u> The Supreme Court has recognized that legislative history, while "not binding," but "instructive," demonstrates that "[s]ingle-digit multipliers are more likely to comport with due process." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 425 (2003).

"Compensatory damages are intended to remedy a concrete loss suffered by the plaintiff due to the defendant's wrongful conduct and to make that plaintiff whole." <u>Williams</u>, 947 F.3d at 746. "Punitive damages, on the other hand, 'are aimed at deterrence and retribution': to deter the defendant and others from this type of conduct and to punish the defendant for his particular wrongful conduct." <u>Id.</u>

The parties' briefing and arguments show that there is split of authority on the whether the Court is confined to compensatory damages under particular claims or instead can look at damages awarded by the fact-finder on other related (but not subject to a punitive damages award) claims. There is no binding authority that controls this issue.

More specifically, Defendant cites authority which shows that under Georgia law punitive damages are not available in a wrongful death action. <u>See</u>

16

Roseberry v. Brooks, 218 Ga. App. 202, 209, 461 S.E.2d 262, 268 (1995), as supplemented on denial of reconsideration (July 28, 1995) ("Punitive 'damages are not available in a wrongful death action.") (citing Engle v. Finch, 165 Ga. 131, 134, 139 S.E. 868 (1927). Defendant argues that it is therefore, "not appropriate to count Georgia wrongful death damages as compensatory damages in the ratio because, as the Georgia Supreme Court has explained, the measure of wrongful death damages is inherently punitive." Doc. No. [555], 10 (citing Bibbs v. Toyota Motor Corp., 304 Ga. 68, 80, 815 S.E.2d 850, 859 (2018)).

In opposition, Plaintiff asserts that "[t]he question is not whether punitive damages are recoverable on a wrongful death claim . . . ; rather, the question is what the court may consider in determining the disparity between the harm and the award." Doc. No. [554], 23. Plaintiff, thereafter, cites authority that shows the Georgia Supreme Court categorizing wrongful death damages as compensatory in nature. Id. at n.17 (citing Bagley v. Shortt, 261 Ga. 762, 762, 410 S.E.2d 738, 738–39 (1991)).

The Eleventh Circuit has looked to state law to determine if certain damages are compensatory in nature and if the damages should be included in the necessary comparison. Cf. Action Marine, Inc. v. Cont'l Carbon Inc., 481 F.3d

17

1302, 1321 (11th Cir. 2007) (reviewing Georgia law to determine that attorney fee awards are compensatory in nature and therefore included in the measure of actual damages for the necessary punitive damages comparison).

After review, it appears that wrongful death damages are both compensatory and punitive. The Court notes that in the Bibbs case, cited by Defendant, the Georgia Supreme Court recognized that "a number of [its] cases hold that the wrongful death statute is not only **compensatory** but punitive in nature." Bibbs, 304 Ga. at 80, 815 S.E.2d at 859 (emphasis added).

Thus, because wrongful death damages have a compensatory aspect to them, the Court will consider them for purposes of the ratio/necessary calculation. As for the parties remaining arguments and citation of persuasive authority, it appears to the Court that the more well-reasoned authority is the case cited by Plaintiff, Fastenal Co. v. Crawford, 609 F. Supp. 2d 650, 661 (E.D. Ky. 2009) in which the district court reviewed the Supreme Court's punitive damages precedent and Sixth Circuit precedent to conclude that "the aggregate calculation rather than a claim-by-claim calculation is the proper approach." The Court will accept the Fastenal opinion as persuasive authority that provides

18

guidance. To this regard, the Court will consider the entirety of the compensatory damages award, not just individual claims.

Next, the Court must resolve the question of whether the ratio should include the amount of compensatory damages apportioned to Mazda. After review, the Court deems it proper to calculate the damages using the full amount of the compensatory damages award, not just the amount apportioned to Autoliv, because in this calculation, the Court can consider actual or potential harm to Mr. Andrews. And, as correctly stated by Plaintiff (Doc. No. [554], 25), if the Court uses the <u>Bibbs</u> case as a yardstick for what the potential harm to Mr. Andrews could have been had he sustained a head/catastrophic injury in lieu of death (which the evidence at trial indicated was within the realm of potential outcomes),[6] the compensatory damages range is $36 million. <u>See</u> <u>Bibbs</u>, 304 Ga. at 69, 815 S.E.2d at 852 (noting that after Mrs. Bibbs was involved in a car accident and sustained a head injury that left her in a coma, "[t]he jury returned a verdict for Bibbs, awarding substantial damages, including more than $400,000

---

[6] <u>See</u> 10/6/21 PM Trial Tr. 47:5–9.

19

for past medical expenses, $6 million for future life care expenses, and $30 million for past and future pain and suffering.").

Therefore, it is not improper to include the wrongful death damages in the ratio calculation in that as currently summarized by Plaintiff, "under Bibbs, wrongful death damages closely approximate a potential harm caused by Autoliv's misconduct . . . , and (2) wrongful death damages are akin to personal injury damages and are an accurate estimation of the actual harm that Autoliv's misconduct caused." Doc. No. [554], 27.

The Court recognizes Defendant's argument that potential harm is "irrelevant because Mr. Andrews died in the accident and was not 'threatened with [] additional potential harm,'" however, it does not appear to the Court that the consideration is that narrow. Doc. No. [555], 11 n. 15 (citing BMW, 517 U.S. at 582). "[B]oth State Supreme Courts and [the United States Supreme Court] have eschewed an approach that concentrates entirely on the relationship between actual and punitive damages." TXO Prod. Corp. v. All. Res. Corp., 509 U.S. 443, 460 (1993). "It is appropriate to consider the magnitude of the potential harm that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded." Id.; see also SE Prop. Holdings, LLC v. Judkins, 822 F.

App'x 929, 937 (11th Cir. 2020) ("The appropriate ratio, therefore, is not based on a comparison of compensatory damages to the punitive damages award, but on harm likely to occur or that has actually occurred."). In light of this authority, the Court is unable to sustain Defendant's relevancy argument.

Under these determinations, the damages ratio is approximately 3.7:1, which is within the "[s]ingle-digit multipliers are more likely to comport with due process" under the Supreme Court precedent. Campbell, 538 U.S. at 425; see also Williams, 947 F.3d at 755 ("[W]e will operate under the assumption that a 4:1 ratio is the [Supreme Court's] suggested default guideline, but that this ratio may be adjusted depending on the [certain] factors.").

Lastly, the Court declines to impose a 1-to-1 ratio based on "substantial" damages, "lesser ratio" language from the Supreme Court's State Farm opinion that the Eleventh Circuit has characterized as dicta and found not persuasive. See Cote, 985 F.3d at 849 ("In [defendant's] view, the $6.25 million compensatory damages award is substantial, such that punitive damages should be capped at that amount. We are not persuaded. As an initial matter, this Court has characterized the language [defendant] relies on as dicta.").

In sum, the ratio guidepost indicates that the punitive damages award is not unconstitutionally excessive.

### (3)   *Civil penalties*

The third and final guidepost considers "the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases." Cote, 985 F.3d at 847 (citations omitted). The Eleventh Circuit has held that "[t]here may also be a lack of adequate notice if the difference between the civil or criminal penalties that were or could have been imposed and the punitive damage award is too great." Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1337 (11th Cir. 1999).

After review, the Court upholds Plaintiff's citation of authority and concludes that the product liability case of General Motors Corp. v. Moseley, 213 Ga. App. 875, 447 S.E.2d 302 (1994), (physical precedent) overruled by Williams v. Harvey, 311 Ga. 439, 858 S.E.2d 479 (2021), and abrogated by Webster v. Boyett, 269 Ga. 191, 496 S.E.2d 459 (1998) on other grounds, "provided Autoliv adequate notice that it could face a punitive damages award of $100 million if its conduct warranted it." Doc. No. [554], 30. The Court is unable to uphold Defendant's argument that attempts to distinguish the Moseley case. Further, even if there

were even if comparable case, the Court finds that the punitive damages award is still sufficiently supported by the degree of reprehensibility of Defendant's conduct. See E. Prop. Dev. LLC v. Gill, 558 F. App'x 882, 889 (11th Cir. 2014) ("[E]ven if no comparable civil penalties exist in this case, we think that the punitive damages award is sufficiently supported by the degree of reprehensibility of Gill's conduct.").

### b)   Excessive Fines

Next, Defendant argues that "[t]he punitive damages award should also be reduced because it violates the Excessive Fines Clause of the Georgia Constitution, which, as the Georgia Supreme Court has recognized [in Colonial Pipeline Co. v. Brown, 258 Ga. 115, 120, 365 S.E.2d 827, 831 (1988) (plurality op.)], applies in cases in which punitive damages are awarded." Doc. No. [543], 28. The Excessive Fines Clause states in relevant part: "Excessive bail shall not be required, nor excessive fines imposed . . . ." Ga. Const. art. I, § 1, ¶ XVII.

Here, the Court agrees with Plaintiff that the Excessive Fines Clause of the Georgia Constitution does not prohibit this Court's punitive damages award. Doc. No. [554], 31. More specifically, to the extent that said clause applies, the

23

Court finds that Defendant has failed to show that the Court's punitive damages award is so excessive as to violate Georgia's Excessive Fines Clause.

### c)   Financial condition of a non-party

Next, the Court considers the argument that the punitive damages award was improperly based on the financial condition of non-party, Autoliv, Inc. Doc. No. [543], 1.

The Court adheres to its ruling on the motion in limine to this regard. See Doc. No. [494].

### d)   Apportionment

Lastly, the Court considers Defendant's argument that fault for Mr. Andrews's death should have been apportioned to Bosch. Doc. No. [543], 2. After review, the Court adheres to its prior apportionment ruling and declines to find clear error or manifest injustice as asserted by Defendant.

### e)   Summary of the Motion to Amend Ruling

In sum, after review of the parties' arguments, the Court declines to grant Defendant's Motion to Amend the Judgment as the Court is unable to conclude that the judgment contains plain (or manifest) errors of law or fact.

24

### 3. *Alternative Request for a New Trial*

Defendant asserts that alternatively, "the Court should order a new trial so that compensatory damages and punitive damages can be properly reconsidered." Doc. No. [543], 2. After review, the Court is not convinced that its judgment is based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision works a manifest injustice. The Court declines to uphold Defendant's arguments to the contrary. Accordingly, Defendant's Motion for New Trial (Doc. No. [543]) is denied in its entirety.

### C. **Informal Discovery Dispute Resolution**

Lastly, the Court recognizes that there remains an outstanding discovery dispute issue that was mentioned at the April 2022 hearing in which Plaintiffs' counsel requested an order instruction Defendant to "identify all its insurance coverage pursuant to our interrogatory that was posed years ago." Doc. No. [570], Tr. 67:8–11. The Court also recognizes that there was some email correspondence to the Court's Courtroom Deputy Clerk pursuant to the Court's standing instructions. After review, the Court deems it proper to defer ruling on this discovery matter and allow the issue to be raised again by motion after resolution of the appeal or in a post-judgment discovery context.

25

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART AND GRANTS IN PART** Plaintiff's Motion to Amend and Modify the Court's Final Order and Judgment (Doc. No. [536]). More specifically, the motion is denied as Plaintiff's request to amend the Judgment to include the amount of compensatory damages omitted because of apportionment of fault to Mazda. The motion is granted as to Plaintiff's request for prejudgment interest. The December 31, 2021 judgment (Doc. No. [534]) is amended to include an award of prejudgment interest (*compounded annually*) in favor of Plaintiff in the amount of $4,734,349.55.

The Court **DENIES** Defendant's Motion to Amend the Judgment (Doc. No. [543]). The alternative Motion for New Trial is also **DENIED** in the exercise of the Court's discretion.

The Clerk is **DIRECTED** to enter an amended judgment in favor of Plaintiff to reflect prejudgment interest in the following amount **$4,734,349.55**.[7]

---

[7]  The remaining Motion for Damages Under O.C.G.A. §9-11-68(e) (Doc. No. [567]) will be addressed by separate order following the conclusion of the briefing schedule announced at the September 7, 2022 hearing.

Lastly, the Court recognizes that there remains an outstanding discovery dispute issue concerning production of insurance policies. After review, the Court **DEFERS** ruling on this discovery matter until after resolution of the appeal or the post-judgment discovery context.

**IT IS SO ORDERED** this 30th day of September, 2022.

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**