THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAMIE LEE ANDREWS, as | * | |
| Surviving Spouse of | * | |
| MICAH LEE ANDREWS, Deceased, | * | CIVIL ACTION FILE |
| and JAMIE LEE ANDREWS, as | * | |
| Administrator of the Estate of | * | NO. 1:14-CV-03432-SCJ |
| MICAH LEE ANDREWS, Deceased, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| AUTOLIV JAPAN, LTD., | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL
BRIEFING ON GENERAL DAMAGES UNDER O.C.G.A. § 9-11-68(E)**

Autoliv's latest posttrial briefing is also its latest example of frivolous litigation conduct. The crux of Autoliv's brief is that the "damages" referred to in O.C.G.A. § 9-11-68(e) does not really mean "damages." Rather, Autoliv says, "damages" means only attorney's fees and litigation expenses. Doc. 589 at 6 (claiming that § 9-11-68(e)'s "remedy" "makes sense" (to Autoliv counsel) only if it "is coextensive with the remedy described in O.C.G.A. § 9-15-14").

Autoliv's argument is contrary to the law. The statute itself refers to "damages" that "*may include* reasonable and necessary attorney's fees and

expenses of litigation." O.C.G.A. § 9-11-68(e)(2) (emphasis added). The Eleventh Circuit's 2019 decision in *Showan v. Pressdee repeatedly* refers to that which is awarded pursuant to § 9-11-68(e) as "*damages*" not just "attorney's fees and expenses of litigation." 922 F.3d 1211 (11th Cir. 2019).[1] Since the Eleventh Circuit's clear decision in *Showan*, the Georgia Court of Appeals has agreed with that conclusion. *See Anglin v. Smith*, 853 S.E.2d 142, 144 (Ct. App. 2020) ("[A]n award under this subsection [§ 9-11-68(e)] *is not limited* to attorney fees and expenses of litigation. Rather, the purpose of this Code section is to make the prevailing party whole." (emphasis added)).

---

[1] *Showan*, 922 F.3d at 1222 n.9 ("subsection (e) governs *damages* for frivolous claims or defenses"); 1223 ("The question in dispute is whether Showan is entitled to *compensatory damages*, *including* attorney's fees and litigation expenses, for the injury she purportedly suffered as a result of Defendants' alleged frivolous litigation conduct"); 1224 ("Rule 11 does not speak to whether a prevailing party is entitled to *compensatory damages* to remedy any injury inflicted on the prevailing party by the opposing party's frivolous or bad-faith claims and defenses"); 1225 ("as we have noted, *the statute does more than provide only for attorney's fees*: *it is designed to make whole, through "damages*," a party that had to defend against a frivolous claim or overcome a frivolous defense" and "[t]hat *compensatory purpose* is why the statute says that a prevailing party that has been forced to defend against a 'frivolous claim or defense' is entitled to '*damages*'"); 1226 ("§ 9-11-68(e) concerns something very different: *a hearing on damages* incurred as a result of litigating against frivolous claims, defenses, or positions"); 1227 ("If we failed to recognize the right to a bifurcated hearing under § 9-11-68(e), a defendant who removed a Georgia diversity tort case would divest plaintiffs of their right under Georgia law to have the finder of fact examine alleged frivolity and to *recover the damages* to which the statute entitles them") (emphasis added throughout).

The word "damages" means "compensatory damages."

Autoliv's backup argument is that even though § 9-11-68(e) allows for general compensatory damages, Jamie Andrews cannot recover them because Ms. Andrews did not keep up with every iteration of and technicality about Autoliv's misconduct.  That's nonsense.  For a prevailing party to recover damages under § 9-11-68(e), all Georgia law requires is a connection between the losing party's frivolous litigation conduct and the damages awarded.  Plaintiff's evidence more than establishes that connection.

Responding to Autoliv's backup argument, Plaintiff begins this response with that evidence.

I.   **RESPONSE**

   **A.   Autoliv's frivolous litigation conduct has harmed and continues to harm Ms. Andrews.**

Ms. Andrews has suffered general damages because of Autoliv's frivolous claims, defenses, and positions.  Ms. Andrews' testimony on this point was unrebutted and unequivocal.  She testified that this case has been "grueling." 9/7/22 Hrg. Tr. 7/25.  She described feeling years-long pressure to not fail and to keep going here, and she emphasized how hard that was to do while trying to avoid being emotionally "crushed" by her husband's death and the circumstances of his death.  *Id.* at 7/25-8/7.  She categorized the extended litigation as "cruel."  *Id.* at

8/7. She emphasized that Autoliv's repeated failure to admit any responsibility for Micah Andrews' death made this case "more stressful." *Id.* at 11/9-14.

The Court heard Ms. Andrews' testimony. As the "finder of fact," the Court decides the weight to give her testimony as well as whether "to award damages, if any" to Ms. Andrews for Autoliv's frivolous litigation conduct. § 9-11-68(e).

Here, Autoliv's frivolous positions harmed Ms. Andrews in at least two ways. *First*, Autoliv extended this litigation ***for years*** by denying fundamental facts about the defects, delaying Ms. Andrews' recovery for her husband's death. *Second*, Autoliv caused Ms. Andrews to fear for her family's financial future when Autoliv unbelievably sought to recover from Ms. Andrews its own attorney's fees and expenses—after procuring summary judgment based on a factual claim *that it knew at the time was false.* As a result, Autoliv has caused Ms. Andrews to suffer emotional distress.

This case should have been over years ago. This case persists still only because of Autoliv's continuing frivolous arguments. From the beginning, Autoliv has denied basic, indisputable facts about the defects that caused Micah Andrews' death. A prime example is Autoliv's refusal to admit that the airbag system of Micah Andrews' Mazda3 was defective. Autoliv denied that fact in its first Answer in October 2014 and continued to deny that fact right up until the first day

of trial in October 2021—*seven long years later.* There was never any basis whatsoever for that denial. That denial compelled much of the work that had to be done in this case. Not only that—had Autoliv, the world's largest manufacturer of automotive safety products, admitted upfront as it should have that the airbag system was defective, Plaintiff's litigation with Mazda would have been *entirely different*. There was no good reason for that denial. It seems obvious that Autoliv made and persisted in that denial in order to prejudice Ms. Andrews claim not just against Autoliv, but against its codefendant Mazda as well.

There is no doubt Autoliv knew all along that the airbag system was defective. Nothing changed about the airbag system between Autoliv's denial seven years before trial and the first day of trial. Autoliv is the expert on airbags: it has a *worldwide* 42% market share for airbags (and a 44% market share for seatbelts). PX 1138A. Autoliv knows how seatbelts and airbags are supposed to work. Given its expertise in airbags, Autoliv obviously knew all along that the Mazda3's airbag system was defective.

To show just how frivolous Autoliv's litigation strategy was, consider this: Autoliv's refusal to admit that the airbag system was defective was contrary to Autoliv's own trial strategy. At trial, Autoliv's only defense was to try to shift the blame on to others—Mr. Andrews, Mazda, and Bosch. *See* Autoliv Closing

Argument, 10/13/21 Trial Tr. 75/16-76/16.  Since apportionment is an affirmative defense, to prove apportionment to Mazda, Autoliv had to prove that Mazda was at fault for Mr. Andrews' death.  Final Order and Judgment, Doc. 534 at 60.  The way to prove Mazda was at fault was to prove the airbag was defective.  Yet Autoliv did not even hire an expert to so opine, instead relying on Plaintiffs' expert Chris Caruso.[2]  There was never any legitimate reason for Autoliv to deny that the airbag system was defective.

Autoliv has never provided a reason for its refusal for seven long years to admit the airbag system was defective.  Plaintiff's counsel invited it to do so when discussing Autoliv's refusal during argument on the motion for 9-11-68(e) damages.  *See* 9/7/22 Hrg. Tr. 174/17-175/8.  The refusal to admit the airbag system's defects was frivolous.  That refusal required Plaintiff's counsel (on Plaintiff's behalf) to incur expenses to prove a basic fact Autoliv knew to be true.  This is but one example of how Autoliv's frivolous conduct caused Plaintiff to incur expenses and delayed this case's resolution.

---

[2] The only outside engineer Autoliv hired, William Van Arsdell, testified that Autoliv hadn't paid him to determine why Mr. Andrews's airbag didn't deploy, so he hadn't done that work.  *See* Doc. 232, Van Arsdell Dep. 29/10-19, 55/14-56/5.  Because Autoliv could not establish all elements of is affirmative defense of apportionment (to Mazda) with its own witnesses, Autoliv had to rely on the testimony of an expert Plaintiff hired (i.e., Chris Caruso) at trial.

Autoliv's attempt to blame Mr. Andrews for his own death was entirely frivolous. Autoliv's own corporate representative David Prentkowski admitted at trial that "this case starts when the car hits those trees because that's when the question arises, who is at fault for the airbag not working and the seat belt not working." Prentkowski testimony, 10/7/21 P.M. Trial Tr. 54/19-23; *see also* Doc. 534 at 8-9. Autoliv *never had any factual basis* for its position that Mr. Andrews was at fault for his own death; Autoliv's lawyers just kept blaming him anyway. *See, e.g.*, 10/13/21 AM Trial Tr. 46/11-47/15, 75/16-22 (Autoliv closing argument—claims of "driver error"); Doc. 534 at 8-12 ("Autoliv has contended that Mr. Andrews was at fault for his own death"); 7/10/17 Appellee 11th Cir. Br. at 5 ("Mr. Andrews was traveling really, really fast"); Doc. 358-3, Autoliv "Outline of the Case" at 1 ("Mr. Andrews drove his vehicle off the road"). Ms. Andrews had to endure seven years of that sort of frivolous conduct by Autoliv. The adverse impact on Ms. Andrews is obvious.

Autoliv has long taken other frivolous positions. Autoliv has repeatedly said that it didn't design the seatbelt and thus wasn't responsible for its defects. In fact, Autoliv continues to this day to deny that it's responsible for the seatbelt's defective design. Yet that position has no basis in law or fact. The Eleventh Circuit definitively settled the legal question of whether Autoliv is responsible for

the seatbelt's defects in March 2018. *See* Doc. 309 at 3. But the Eleventh Circuit would not have had to rule on the legal issue if Autoliv had timely produced all design documents in discovery. The documents Autoliv withheld proved, among other things, that Autoliv designed the seatbelt before Mazda even started the Mazda3 program. Withholding those documents, Autoliv won an unjust summary judgment. *See* Doc. 407 at 17 (finding summary judgment inappropriate had Autoliv timely produced withheld documents).

Yet despite always having those documents and knowing that they disproved its main summary judgment argument, Autoliv still sought fees and expenses from Ms. Andrews under O.C.G.A. § 9-11-68(b)(1), securing a judgment against her personally.[3] That judgment was vacated when Ms. Andrews prevailed on appeal

---

[3] In a footnote, Autoliv *now* suggests that O.C.G.A. § 9-11-68(e) doesn't apply in federal court because it's in the Georgia Civil Practice Act. Doc. 589 at 9 n.6. That suggestion has several problems. *First*, if subsection (e) doesn't apply in federal court (as Autoliv says), then no part of § 9-11-68 applies in federal court— including subsection (b)(1), the basis for Autoliv's fees and expenses motion against Ms. Andrews. That invites this question: why did Autoliv ask the Court to force Ms. Andrews to pay its fees and expenses under a statute it now says doesn't apply in federal court? Autoliv does not say—but it should have. If Autoliv knew that 9-11-68(b)(1) didn't apply in federal court and yet sought and got fees and expenses against Ms. Andrews under that subsection, then Autoliv's misconduct is even more egregious.

*Second*, in *Showan v. Pressdee*, the Eleventh Circuit conducted a de novo review and held that O.C.G.A. § 9-11-68(e) applies in federal court. 922 F.3d at 1223 ("Under the applicable framework, federal courts exercising diversity jurisdiction

(even though Autoliv still hadn't produced the design documents that proved Autoliv knew its not-our-design defense had no basis in fact). Despite prevailing, Ms. Andrews continued to have a "crushing" fear of financial peril. 9/7/22 Hrg. Tr. 12/3.

That fear was real and reasonable. Even after Plaintiff prevailed on appeal, Autoliv *never withdrew* its § 9-11-68(b) offer to settle for what amounted to nuisance value. Ms. Andrews testified how her concern about possibly having to pay Autoliv's extensive litigation fees and expenses increased the "instability" in her life and has made it hard for her to make financial plans, especially since the amount of Autoliv's fees and expenses would "literally" take "everything I have. Financially speaking, anyway." *Id.* 11/24-12/17.

This Court held, in a different context, that Autoliv's failure to timely produce documents prejudiced Ms. Andrews. "There can be no doubt that there was prejudice to the Plaintiff in the late-production *by the delay in getting her case*

---

must apply O.C.G.A. § 9-11-68(e)."). Under the Eleventh Circuit's prior panel precedent rule, *Showan*'s holding cannot be overruled by another panel on appeal; rather, that holding is binding precedent unless overruled by the entire circuit sitting en banc or the U.S. Supreme Court. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

Given these well-known aspects about Eleventh Circuit law, Autoliv's suggestion is more evidence of its frivolous litigation conduct.

9

*to final resolution."* Doc. 407 at 17 (emphasis added). That withholding of crucial evidence was entirely frivolous. Ms. Andrews testified that resolving this case sooner would have improved her life and allowed her to move on.

> **Q.** The case was delayed because of the appeal, and coming back and finding out there was additional information that we didn't have. And by my count, that's -- that was about five extra years from January 2017 until where we are today, something around there. How would it have improved your life to have been done with this case in late 2017 or early 2018?
>
> **A.** It would have been immeasurable for me. Just my state of mind, how much I can be present in my own life. Just to have some kind of finality and know what the future holds for me as far as this case or to know that it holds nothing, you know.
>
> Just -- I don't talk about it much with like friends and family, like most of the people that even knew that this case was going on has long since forgot because I don't talk about it. And then if I do happen to mention something, like, oh, I have to go downtown for another hearing, usually what I get is, like, oh, my God, is that still going on? Yeah, it's still going on. It's -- I can't move forward. I can't even put Micah at peace. You know, I can't let him go. And that's a lot.

9/7/22 Hrg. Tr. 12/18-13/10.

Autoliv's frivolous claims, defenses, and positions have made this case last far, far longer than it should have and to be much more painful and expensive than it needed to be. Ms. Andrews testified that the extended duration of this litigation has made her life harder and more unstable. Under § 9-11-68(e), Ms. Andrews is clearly entitled to "damages," as determined by the Court sitting as factfinder, for

10

the suffering Autoliv's frivolous litigation conduct caused.[4]

Autoliv, however, says that Ms. Andrews cannot recover even if the Court finds (as it should) that Autoliv has presented frivolous claims, defenses, and positions. According to Autoliv, Autoliv's frivolous conduct did not cause Ms. Andrews any harm, because Ms. Andrews did not keep up with the "technicalities of the case." Doc. 589 at 11.[5] Autoliv cites no caselaw for its claim that a prevailing party must provide a comprehensive accounting of all the losing party's frivolous conduct to prevail under § 9-11-68(e). Nor is there any such law. Plaintiff has presented unrebutted and irrefutable evidence proving that Autoliv's frivolous litigation conduct has caused her harm. That's all she has to do. *See*

---

[4] In this brief, Plaintiff mentions only some examples of Autoliv's frivolous claims, defenses, and positions. A fuller account of Autoliv's wrongdoing is detailed in Plaintiff's Amended Motion for Damages Under O.C.G.A. § 9-11-68(e), Doc. 567.

[5] In a footnote, Autoliv makes a confusing argument questioning whether Plaintiff can recover under § 9-11-68(e) at all without obtaining a double recovery. *See* Doc. 589 at 10 n.7. The Court need not consider this argument for several reasons. *First*, it's late. This is an argument about the amount of fees and expenses to award, which is why it's relegated to a footnote. The time for Autoliv to argue about those has passed. *Second*, there is no risk of double recovery. Plaintiff has asked the Court for $10 million in attorney's fees. Attorney's fees on the compensatory damages judgment, Plaintiff's share of the punitive damages judgment, and prejudgment interest judgment ($43.2 million) total nearly $17.3 million. *Third*, the "proportionate" share of fees and expenses that the State cannot collect under the punitive damages statute does not transmogrify into damages designed to compensate Plaintiff just because they are not paid to the State.

*Showan v*, 922 F.3d at 1225 ("In contrast, § 9-11-68(e) compensates prevailing parties for litigation costs and other injuries endured because of an opposing party's decision to present meritless or bad-faith claims or defenses.").

### B.   "Damages" in § 9-11-68(e) means "damages."

Autoliv claims in its brief that "damages" in § 9-11-68(e) does not mean "damages." Autoliv says "damages" means ***only*** attorney's fees and expenses of litigation. Autoliv says no other interpretation of § 9-11-68(e)'s "remedy" (i.e., "damages") "makes sense." *See* Doc. 589 at 6 (claiming that § 9-11-68(e)'s "remedy" "makes sense" only if it "is coextensive with the remedy described in O.C.G.A. § 9-15-14"). Autoliv relies on a patchwork of arguments to try to stitch together support for this claim. The seams cannot hold.

Autoliv does not even cite the most important decision interpreting "damages" in § 9-11-68(e): *Anglin v. Smith*, 853 S.E.2d at 142 (Ga. Ct. App. 2020).[6] In *Anglin*, the Georgia Court of Appeals, relying on the text of § 9-11-68(e), the Eleventh Circuit's decision in *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019), and its own decision in *Richardson v. Locklyn*, 793 S.E.2d 640 (Ga. Ct.

---

[6] It goes without saying that Autoliv counsel had a duty to cite to this Court binding and compelling authority like the Court of Appeals' *Anglin* decision. The failure to do so is another example of frivolous litigation conduct.

App. 2016), held that an award of damages under § 9-11-68(e) "*is not limited to attorney fees and expenses of litigation*." 853 S.E.2d at 144 (emphasis added). The Georgia Court of Appeals the concluded that "subsection(e) is distinct from the remaining provisions of O.C.G.A. § 9-11-68, which govern simply an award of attorney fees."[7] *Id.* The "purpose" of § 9-11-68(e) "is to make the prevailing party whole." *Id.* (citing *Showan*, 922 F.3d at 1226). That is what Ms. Andrews' has asked the Court, as factfinder, to do.[8]

*Showan* and *Anglin* clearly defeat Autoliv's claim that "damages" means only attorney's fees and expenses. In *Showan*, the Eleventh Circuit held that § 9-11-68(e) "is designed to make whole, through 'damages,' a party that had to defend against a frivolous claim or overcome a frivolous defense." 922 F.3d at

---

[7] Absent a conflicting decision from the Georgia Supreme Court, the Georgia Court of Appeals' decision controls. "In determining the law of the state, federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).

[8] Though Autoliv might try to claim otherwise, the Georgia Court of Appeals' discussion of § 9-11-68(e) in *Anglin* is not dicta. On appeal, the losing party (the plaintiff) argued that the trial court's attorney's fee award entered under the offer of settlement portions of the statute could not stand because it had made frivolous litigation finding under subsection (e). 853 S.E.2d at 144. Because the distinction between subsections (a)-(d) and subsection (e) was at issue, the court's opinion addressing that distinction is a holding.

13

1225. Subsection (e) achieves the goal of making the prevailing party whole by compensating them "for litigation costs and other injuries endured because of an opposing party's decision to present meritless or bad-faith claims or defenses." *Id.* Autoliv calls this portion of *Showan* that contradicts its claim dicta. Doc. 589 at 7. But it isn't.

*Showan*'s discussion of the scope of § 9-11-68(e) was analysis necessary to the judgment. The question in *Showan* was whether Rule 11 conflicts with § 9-11-68(e) and thus abrogates the state statute in federal court. *Id. at* 1223. To decide that question, the court contrasted Rule 11's deterrence-based purpose with § 9-11-68(e)'s compensation-focused purpose and held that Rule 11 and § 9-11-68(e) do not cover the same ground. *Id.* at 1226. To do so, the court needed to interpret the scope and purpose of § 9-11-68(e). That makes *Showan*'s discussion of § 9-11-68(e) a holding and thus binding authority.[9] Reasoning necessary to reach the court's conclusion is not dicta, even when the court provides multiple reasons for the same conclusion. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67

---

[9] *Lee v. Frozen Food Exp., Inc.*, 592 F.2d 271, 272 (5th Cir. 1979) ("Once a panel of this Court has settled on the state law to be applied in a diversity case, the precedent should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong.").

14

(1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340 (1928) ("It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.").

But *Anglin* and *Showan* are not the only reason Autoliv is wrong. To avoid belaboring the point that "damages" means "damages," Plaintiff briefly addresses other reasons that Autoliv's interpretation is wrong.

The rules of statutory construction compel the conclusion that the word "damages" means "damages." Georgia courts interpret Georgia statutes by presuming that the "General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 751 S.E.2d 337, 341 (Ga. 2013). For the reason, courts "afford the statutory text its plain and ordinary meaning," "view the statutory text in the context in which it appears," and "read the statutory text in the most natural and reasonable way, as an ordinary speaker of the English language would." *Id.* The plain, ordinary meaning of "damages" is "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Damages, *Black's Law Dictionary* (11th ed. 2019); *see also* Damages, *Merriam-Webster's Collegiate Dictionary* 314 (11th ed. 2020) ("compensation in money imposed by law for loss

or injury").[10]

Additionally, interpreting "damages" to mean only attorney's fees and litigation expenses, as Autoliv tries to do, would violate the statutory construction rule against "mere surplusage." *Bowen v. Savoy*, 839 S.E.2d 546, 548 (Ga. 2020). If Autoliv's interpretation were correct, then the General Assembly had no reason to use the word "damages" in subsection (e) at all. Yet the General Assembly used that word "damages" not once but twice in subsection (e). That's significant because "damages" never once appears in any other subsection of § 9-11-68 while "attorney's fees" and litigation "costs" or "expenses" appear throughout subsections (a)-(d).

Under Plaintiff's interpretation, every word in subsection (e) has meaning and is needed. As noted, "damages" appears twice in § 9-11-68(e). The second use, in subsection (e)(2), is not redundant. That provision states, "[d]amages awarded may include reasonable and necessary attorney's fees and expenses of litigation." Because the general rule is that "damages" don't include attorney's fees and expenses of litigation, a prevailing party cannot recover those amounts

---

[10] In Georgia, "[d]amages may be either general or special, direct or consequential." O.C.G.A. § 51-12-1(a). "Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money." O.C.G.A. § 51-12-4.

without statutory or contractual authorization. *SRM Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 841 S.E.2d 729, 732 (Ga. 2020). Subsection (e)(2) is the necessary statutory authorization for prevailing parties to recover attorney's fees and litigation expenses under § 9-11-68(e). This further shows that Autoliv is wrong when it claims "damages" means only attorney's fees and litigation expenses. Doc. 589 at 6.

## II. CONCLUSION

Plaintiff requests that the Court find that Autoliv presented frivolous claims, defenses, or positions in this litigation and then award her damages. Ms. Andrews requests not less than $10 million in general damages, $10 million in attorneys' fees, and $1 million in litigation expenses.

Respectfully submitted on October 24, 2022.

                                            BUTLER PRATHER LLP

                                            */s/ James E. Butler, Jr.*
                                            JAMES E. BUTLER, JR.
                                              jim@butlerprather.com
                                              Georgia Bar No. 099625
                                            MICHAEL F. WILLIFORD
                                              michael@butlerprather.com
                                              Georgia Bar No. 243464
                                            2719 Buford Highway
                                            Atlanta, Georgia 30324
                                            (404) 321-1700
                                            (404) 321-1713 Fax

CANNELLA SNYDER LLC

TEDRA L. CANNELLA
  tedra@cannellasnyder.com
  Georgia Bar No. 881085
RORY A. WEEKS
  rory@cannellasnyder.com
  Georgia Bar No. 113491
315 W. Ponce de Leon Ave, Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365

BALLARD & FEAGLE, LLP

WILLIAM L. BALLARD
  bill@ballardandfeagle.com
  Georgia Bar No. 035625
GREGORY R. FEAGLE
  greg@ballardandfeagle.com
  Georgia Bar No. 256913
Building One, Suite 100
4200 Northside Parkway NW
Atlanta, GA 30327
(404) 873-1220

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14-point font.

*/s/ James E. Butler, Jr.*
JAMES E. BUTLER, JR.
jim@butlerprather.com
Georgia Bar No. 099625