# Basic Trading Agreement for Parts

| Mazda Motor Corporation |
| --- |
| [handwritten:] *Autoliv Japan Inc.* |

(Amended October 1993)



PLAINTIFF'S
EXHIBIT

PX 54

Table of Contents

Chapter 1 – General Provisions                                                          (Page)
Article 1 (Basic Principles)                                                            1
Article 2 (Definitions)                                                                 1
Article 3 (Scope of Application)                                                        1
Article 4 (Commencement of Transactions)                                                2

Chapter 2 – Transactions
Section 1 – Quality Assurance
Article 5 (Quality Assurance)                                                           2
Article 6 (Specifications)                                                              2
Article 7 (Changes to the Specifications and Production Method)                         3
Section 2 – Establishment of Individual Agreements, Delivery and Acceptance Inspection
Article 8 (Individual Agreements)                                                       3
Article 9 (Delivery)                                                                    4
Article 10 (Acceptance Inspection and Acceptance)                                       4
Article 11 (Transfer of Ownership and Bearing of Risk)                                  4
Article 12 (Special Provisions on Direct Delivery Parts)                                4
Section 3 – Unit Price and Payment
Article 13 (Unit Price)                                                                 5
Article 14 (Payment)                                                                    5
Section 4 – Claims and Compensation
Article 15 (Responsibility to Compensate for Claims)                                    5
Article 16 (Acknowledgment of Compensation)                                             5
Article 17 (Content of Compensation)                                                    6
Article 18 (Return of Defective Items)                                                  6
Article 19 (Handling Procedures)                                                        6
Section 5 – Supplied Items and Loaned Items
Article 20 (Supplied Items)                                                             6
Article 21 (Acceptance Inspection of Supplied Items)                                    7
Article 22 (Compensation for Defective Supplied Items)                                  7
Article 23 (Ownership of Items supplied for a Fee)                                      7
Article 24 (Handling of Supplied Items)                                                 7
Article 25 (Loaned Items)                                                               8
Article 26 (Handling of Drawings, Etc.)                                                 8

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda                    AUTOLIV03311
                                                                        AUTOLIV03310_EN_GTB CORRECTED

Section 6 – Intellectual Property Rights
Article 27 (Intellectual Property Rights)                                             8
Article 28 (Technical Cooperation)                                                    8

Chapter 3 – General Provisions
Section 1 – General Rules
Article 29 (Management of Production Equipment)                                       9
Article 30 (Transfer of Rights and Obligations)                                       9
Article 31 (Consent to Transfer Produced Goods)                                       9
Article 32 (Confidentiality)                                                          9
Article 33 (Improvements and Surveys)                                                 9
Article 34 (Safety, Disaster, and Environmental Control)                             10
Article 35 (Matters for Adherence within the Offices of Party A)                     10
Chapter 2 – Notification and Agreement Termination
Article 36 (Voluntary Termination)                                                   10
Article 37 (Obligation of Notification)                                              10
Article 38 (Termination)                                                             10
Article 39 (Matters that shall remain in Effect Upon Termination of this Agreement)  11
Article 40 (Surviving Conditions)                                                    11
Section 3 – Supplementary Provisions
Article 41 (Effective Period)                                                        11
Article 42 (Jurisdiction)                                                            11
Article 43 (Transitional Measures)                                                   12
Article 44 (Consultation)                                                            12


Annex    Claim Compensation Period

**Basic Trading Agreement for Parts**

The parties indicated below hereby execute the following agreement.

(Party A) Mazda Motor Corporation

(Party B) Autoliv Japan Inc.

Chapter 1 – General Provisions

Article 1 (Basic Principles)
1. Party A and Party B, in the spirit of co-existence and co-prosperity, shall endeavor to strengthen their mutual research, creativity, and competitive capacity, shall aim to achieve long term stable growth by building an open and fair trading relationship, and through this, shall contribute to the development of society and the economy.
2. In order to achieve the objectives of the preceding Paragraph, Party A and Party B have prescribed the basic matters for transactions between Party A and Party B through this Agreement, and shall perform this Agreement with a spirit of trust and cooperation, in accordance with the principle of good faith.

Article 2 (Definitions)
The terms indicated in the following items that are used in this Agreement, with the exception of where otherwise defined, shall carry the meaning set forth in the respective item.
(1) "Delivered Part" refers to that of the following items which is manufactured (includes processed or assembled. Hereinafter the same) or sold by Party B, and delivered to Party A, for use in the automobiles and other products (includes KD kits, components) manufactured or sold by Party A.
① Mass production and repair parts (includes packaging)
② Associated items, accessories, and other goods (includes the packaging for these)
③ Vehicles (includes bodywork and modified vehicles)
④ Prototype products of each of the preceding items
(2) "Specifications, Etc." refers to the specifications, standards, MES (Mazda Engineering Standards), inspection specifications, and other technical materials created by Party A for the Delivered Parts.
(3) "Loaned Drawings" refers to the drawings of the Delivered Parts created by Party A and loaned to Party B based on the Specifications, Etc.
(4) "Approved Drawings" refers to the drawings of the Delivered Parts created by Party B and approved by Party A based on the Specifications, Etc.
(5) "Drawings, Etc." refers to the Specifications, Etc., the Loaned Drawings, and the Approved Drawings.
(6) "Individual Agreement" refers to each individual trading agreement between Party A and Party B relating to the Delivered Parts.

Article 3 (Scope of Application)
1. The matters prescribed in this Agreement, with the exception of where otherwise prescribed, shall be applied to all Individual Agreements.
2. Party A and Party B, in the event of wishing to modify, supplement, or delete a provision of this Agreement, shall exchange a letter of confirmation, memorandum of understanding, or other document, upon consultation between Party A and Party B.

-1-

Article 4 (Commencement of Transactions)

1. Party A, in the event of requesting a new Delivered Parts transaction with Party B, shall perform this by issuing to Party B the Specifications, Etc., as well as a Supplier Determination Communication Ledger and other documents prescribed by Party A. Party B shall reply to this, indicating its acceptance or rejection of the request of Party A within five days, and if no indication of intent is given by Party B within that period, Party A shall deem Party B to have accepted the request. It should be noted that in the event of Party B refusing a request, it shall return the Specifications, Etc., received from Party A without delay.

2. In the event of making a change or revoking the supplier determination of the preceding Paragraph due to a change in the production plan or other reasons, Party A shall, if requested by Party B, hold consultation with Party B regarding compensation for this.


Chapter 2 – Transactions

Section 1 – Quality Assurance

Article 5 (Quality Assurance)

1. Party B shall guarantee that the Delivered Parts conform to the specifications prescribed in the following Article, and that they have quality and performance that satisfies the demands of Party A.

2. In order to ensure the quality of the Delivered Parts based on the "Quality Control Standards for Suppliers" issued by Party A, Party B shall establish quality assurance standards, inspection methods, and other quality control standards for the Delivered Parts, shall improve these, and shall conduct quality control at its responsibility.

3. In the event of a new design, design change, or process change of the Delivered Parts, Party B shall endeavor to establish an initial stage management system, and shall conduct sufficient management of the initial stage.

In the event of a special request from Party A, Party B shall submit documents proving the quality of the Delivered Parts to Party A without delay.


Article 6 (Specifications)

1. The specifications of the Delivered Parts (includes packing and packaging specifications. Hereinafter the same) must be in compliance with each of the following items.

(1) Specifications Sheets, Etc.
(2) Loaned Drawings or Approved Drawings
(3) Standards prescribed by law
(4) JIS standards and other officially prescribed standards
However, where these are inconsistent with the Drawings, Etc., the Drawings, Etc., shall take precedence.
(5) Other matters determined upon agreement between Party A and Party B.

2. With regard to the drawings of the Delivered Parts, these shall be confirmed by Party A issuing Loaned Drawings to Party B at the time of the request for the commencement of transaction by Party A pursuant to Article 4 Paragraph 1, or by Party B receiving approval as Approved Drawings by Party A, by the deadline specified by Party A. The same shall be true thereafter in relation to any changes or additions made.

3. In the event of having a doubt or objection regarding the content of the items of Paragraph 1, Party B shall notify Party A of this without delay.

-2-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Article 7 (Changes to the Specifications and Production Method)

1. Party A may decide to change the specifications of the Delivered Parts. However, separate consultation shall be held between Party A and Party B regarding the implementation method and timing.

In addition, in the event that Party A requires an urgent change to the specifications in order to maintain production and sales, Party B shall actively cooperate with Party A.

2. In the event of Party A conducting an urgent change to the specifications pursuant to the preceding Paragraph, if there is a request by Party B, Party A and Party B shall hold consultation regarding the post-processing of the obsolete parts, etc., caused by said change to the specifications.

3. In the event of wishing to change the specifications or production method of the Delivered Parts, Party B shall obtain the prior written approval of Party A. However, this shall not apply to changes to the production method for which it has been separately prescribed that there will be absolutely no effect on the products.

Section 2 – Establishment of Individual Agreements, Delivery and Acceptance Inspection

Article 8 (Individual Agreements)

1. An Individual Agreement shall be established by Party B's approval of the predetermined written document issued by Party A to Party B or of some other method (includes online processing), and as long as Party B does not issue a written rejection within five days after the request (excludes business holidays of Party A), then the Individual Agreement is established.

Prior to making such a request, Party A shall indicate to Party B in advance the expected volume of such Delivered Items that are to be ordered.

2. In the event of Party A issues a request to Party B for the urgent establishment of an Individual Agreement in order to maintain production and sales, Party B shall proactively cooperate upon consultation with Party A.

3. The matters pertaining to each of the following items shall be prescribed in Individual Agreements.

However, with regard to matters common to each Individual Agreement, these may be prescribed in advance upon consultation between Party A and Party B.

    (1)  Order issue date
    (2)  Part numbers and specifications
    (3)  Quantity
    (4)  Unit price
    (5)  Delivery date
    (6)  Delivery location
    (7)  Payment method
    (8)  Handover conditions
    (9)  Other matters to be prescribed in detail

4. In the event of a JUMP system or other just-in-time method being used between Party A and Party B , Party A may use this on each occasion to issue requests to Party B for adjustments of the delivery date.

5. In response to a change in the specifications of the Delivered Items or other needs, Party A may amend or terminate all or a part of the already established Individual Agreements.

It should be noted that Party B may hold consultation with Party A if it has an objection to this.

6. In the event that Party B incurs damages as a result of the preceding two Paragraphs, Party A and Party B shall, at the request of Party B, hold consultation regarding compensation for such damage.

-3-

Article 9 (Delivery)

1. Upon attaching the delivery note stating the necessary matters and other documents prescribed by Party A, Party B shall deliver the Delivered Items in accordance with the Individual Agreement.

2. In the event of becoming unable to deliver all or a part of the Delivered Items by the delivery deadline, or in the event that there is a concern that this may occur, Party B shall immediately contact Party A, and take the necessary measures without delay, in accordance with the instructions of Party A.

3. In the event of incurring damages due to an extension of the delivery deadline, Party A may claim compensation for such damages against Party B. However, in the event of the reason for said damages cannot be attributed to Party B, the amount of compensation shall be reduced in accordance with this, upon consultation between Party A and Party B.

Article 10 (Acceptance Inspection and Acceptance)

1. Each time that the Delivered Items are delivered by Party B, Party A shall promptly conduct an acceptance inspection on all of these or individual lots, by the procedures, etc., prescribed by Party A, and shall only accept those that are confirmed to have passed this inspection (hereinafter referred to as "Acceptance").

2. Notwithstanding the provisions of the preceding Paragraph, in the event that the acceptance inspection of the preceding Paragraph is omitted in advance, Party A shall immediately accept the parts delivered by Party B.

3. In the event that the acceptance inspection results in the discovery of an excess or insufficient quantity, or non-conforming parts, Party A shall immediately notify Party B of this in writing, and with the exception of where Party A instructs otherwise, Party B shall take the measures prescribed in each of the following items at its own responsibility.

(1) In the event of an excess quantity: Shall collect the excess amount by the collection deadline prescribed by Party A

(2) In the event of insufficient quantity: Shall deliver the insufficient amount by the delivery deadline prescribed by Party A

(3) In the event of non-conforming parts: Shall collect the non-conforming parts by the collection deadline prescribed by Party A, and shall deliver replacements by the delivery deadline prescribed by Party A.

Article 11 (Transfer of Ownership and Bearing of Risk)

The ownership and bearing of risk of the Delivered Items shall be transferred from Party B to Party A upon the completion of Acceptance.

Article 12 (Special Provisions on Direct Delivery Parts)

1. In the event that circumstances occur that prevent Party B from being able to deliver all or a part of the ordered quantity by the delivery deadline, or in the event that there is a concern that this may occur in relation to Delivered Items that are delivered directly (hereinafter referred to as "Direct Delivery Parts") to the dealerships of the vehicles and parts of Party A (hereinafter referred to as "Dealerships") pursuant to the instructions of Party A, Party B shall immediately notify Party A and the Dealerships of said circumstances, as well as the expected delivery date, etc., and shall take the necessary measures without delay in accordance with the instructions given.

2. In the event that the acceptance inspection performed by a Dealership results in the discovery of an excess or insufficient quantity, or non-conforming parts, Party B shall take the necessary measures in accordance with Article 10 Paragraph 3, upon consultation between Party A and Party B.

3. The ownership of Direct Delivery Parts shall be transferred from Party B to Party A at the time of shipment by Party B, and the bearing of risk shall be transferred upon Acceptance by the Dealerships.

-4-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

## Section 3 – Unit Price and Payment

**Article 13 (Unit Price)**
1. The unit price of the Delivered Items shall be determined upon consultation between Party A and Party B.
For this purpose, Party B shall, at the request of Party A, submit an estimate and other associated materials.
2. With the exception of where otherwise prescribed, the unit price for the Delivered Items shall include packing and packaging costs, shipping fees, loading and unloading costs, insurance premiums, and all other various costs.
3. The unit price of the Delivered Items may be amended upon consultation between Party A and Party B, but only when there are special circumstances.

**Article 14 (Payment)**
1. Party A shall pay the price of the Delivered Items to Party B according to the separately prescribed method.
2. In the event that Party A has a monetary claim for receipt of payment from Party B for items supplied for a fee, or holds a claim against Party B for other receivables, Party A may offset said amount against the price stipulated in the preceding Paragraph.
3. When offsetting in accordance with the preceding Paragraph, Party A may replace the issuance of a notice of the offsetting through the issuance of a statement or invoice.

## Section 4 – Claims and Compensation

**Article 15 (Responsibility to Compensate for Claims)**
1. In the event that Party A incurs damages that apply to any of the following items after Acceptance due to a defect caused by reasons attributable to Party B (includes the malfunction of auxiliary parts that cause any damages. Hereinafter the same), Party A may issue a written notification to Party B and make a claim for compensation, but this shall only apply to compensation for damages caused by defects discovered during the claim compensation period prescribed in the Annex to this Agreement.
(1) Defects discovered prior to market release (hereinafter referred to as "Factory Claims")
(2) Defects discovered after market release (hereinafter referred to as "Market Claims")
2. In the event that Party A incurs damages due to inventory measures or recalls, etc., even after the compensation for claims period of the preceding Paragraph has elapsed, due to a defect caused by reasons attributable to Party B, and said damages have a significant effect on the quality and function of a Party A's product, Party A may claim compensation for such damages against Party B.
3. In the event that the need arises to make a change to the Annex of this Agreement, Party A may issue to Party B a written notice of the content of the requested change by giving at least one month's prior notice to Party B, and as long as no written objection is raised by Party B within this notice period, the requested change may be made to the Annex of this Agreement.

**Article 16 (Acknowledgment of Compensation)**
1. The content that should be acknowledged by Party A when requesting compensation for claims shall be as set forth in each of the following items.
(1) The existence and content of the defect
(2) The responsibility of Party B for the defect, and the scope thereof
(3) The damage incurred by Party A due to the defect, and the ratio to be borne by Party B.
2. Party B may raise an objection in relation to the acknowledgement made by Party A. In such a case, this shall be resolved upon consultation between Party A and Party B.

-5-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Article 17 (Content of Compensation)

The content of compensation that may be claimed by Party A against Party B based on the acknowledgment of the preceding Article shall be as set forth in each of the following items.

(1) Delivery of replacements

With regard to defective items, Party A may request that Party B deliver a replacement.

(2) Sorting and repair costs

In the event that defective items are sorted or repaired by Party A themselves or through the use of a third party, Party A may claim against Party B the price of the necessary parts, as well as the cost of oils, wages, outsourcing costs, travel costs, freight fees, and other necessary costs. In addition, if Party A obtains consent from Party B, Party A may be in attendance when the sorting and or repair of defective items takes place in order to provide instructions.

(3) Other compensation

Party A may claim compensation from Party B for personal injury and all other damages not compensated for by each of the preceding items.

Article 18 (Return of Defective Items)

In relation to the preceding Paragraph, and upon consultation between Party A and Party B, Party B may request that Party A return the defective items pursuant to the procedures prescribed by Party A

Article 19 (Handling Procedures)

Party A and Party B shall endeavor to perform the procedures of the preceding three articles in a smooth manner in accordance with the compensation for claims procedures prescribed by Party A.

Section 5 – Supplied Items and Loaned Items

Article 20 (Supplied Items)

1. In the event that any of the following items apply, Party A may, upon consultation with Party B, supply to Party B, either for a fee or free of charge, the raw materials, parts, packaging materials or other items that are needed for the production of the Delivered Items (hereinafter such supplied items are referred to as "Supplied Items").

(1) In the event that such items are necessary to maintain the quality, function, or standards of the Delivered Items

(2) In the event that a request for such items is received from Party B

(3) In the event that there is some other valid reason

2. In the event that Supplied Items are supplied by Party A to Party B pursuant to the provisions of the preceding Paragraph, Party B shall use these Supplied Items for the production of the Delivered Items, and shall not procure materials of the same type and standard, etc., as the Supplied Items on their own without obtaining prior written consent.

3. In general, when supplying Supplied Items to Party B,, Party A shall notify Party B in advance of the item numbers, quantity, and delivery date, etc.

-6-

Article 21 (Acceptance Inspection of Supplied Items)
When Party B receives Supplied Items from Party A pursuant to the preceding Article, Party B shall conduct an acceptance inspection, and if there is an excess or deficiency in the quantity manufactured or if defective items are discovered during said inspection of the Delivered Items, Party B shall immediately notify Party A of this, and act in accordance with the instructions of Party A.

Article 22 (Compensation for Defective Supplied Items)
1. If a defect is discovered in the Supplied Items after the acceptance inspection due to some in-process error that is attributable to Party A, Party B may claim compensation for each of the following items.
(1) Delivery of replacements
Party B may request that Party A deliver a replacement.
(2) Sorting and repair costs
In the event defective items are sorted or repaired by Party B, they may claim compensation for the necessary processing costs, etc., from Party A.
2. In the event that there is a major defect in the Supplied Items for reasons attributable to Party A, and as a result, Party B incurs damages, Party A and Party B shall hold consultation regarding compensation for such damages upon the request of Party B.

Article 23 (Ownership of Items supplied for a Fee)
The ownership and bearing of risk for items that are supplied for a fee, shall transfer from Party A to Party B at the time of handover to Party B, with the exception of when otherwise agreed upon between Party A and Party B,

Article 24 (Handling of Supplied Items)
1. Party B shall clearly distinguish the Supplied Items from other items, and shall manage these with the duty of care of a prudent manager, and in addition, with the exception of where deemed particularly necessary by Party A, Party B must not use the Supplied Items for anything other than the designated purpose, or transfer, loan, or pledge them as collateral (hereinafter referred to as "Transfer, Etc.") to a third party.
2. With regard to Supplied Items that are supplied free of charge, Party B shall conduct regular (monthly unless otherwise instructed by Party A) inventories and confirm that the necessary quantity is in stock, and as a result, if it is found that Party B has violated the preceding Paragraph and caused damage to Party A, Party A may claim compensation for damages from Party B. It should be noted that Party A may witness the performance of the inventories.
3. With regard to the Supplied Items owned by Party A (including works in process and completed items manufactured with said Supplied Items that are owned by Party A. Hereinafter the same shall apply in this Article and in Article 39), Party B shall, upon the completion of the purpose of the supply of such goods, or upon the request of Party A, immediately return these to Party A.
4. The handling of excess, remnants and fragments of Supplied Items shall be determined upon consultation between Party A and Party B.
5. In the event that Supplied Items owned by Party A are lost, damaged, or become unsuitable for use for reasons attributable to Party B, they shall immediately notify Party A of this, and shall compensate Party A for an amount equivalent to the book value of said Supplied Items. However, if separate instructions are given by Party A, such as a request to restore these items to their original state or to provide replacements, Party B shall act in accordance with such instructions.
6. In the event that a petition is filed by a third party for seizure, provisional seizure, temporary injunction, compulsory execution, auction, collection of unpaid taxes  or for any other act in relation to the Supplied Items owned by Party A, and the filing of said petition may damage the ownership rights of Party A, or in the event that there is a concern that this may arise, Party B shall separate the applicable Supplied Items from the property of Party B, shall assert and prove that these are not owned by Party B, and shall immediately notify Party A of this matter and act in accordance with the instructions given by Party A.

-7-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Article 25 (Loaned Items)

1. Party A may loan to Party B machinery and equipment, tools, molds, inspection tools, vehicles, parts, or other items in accordance with the needs of Party A or Party B (hereinafter such loaned items are referred to as "Loaned Items").

2. The method, period, lease fee, and other conditions relating to the loaning of said items shall be determined upon consultation between Party A and Party B. The provisions of Article 24 Paragraph 1, Paragraph 2, Paragraph 3, Paragraph 5 and Paragraph 6 shall apply mutatis mutandis to the handling of the Loaned Items. However, with regard to the timing of the performance of inventories on the Loaned Items, these shall be performed every business year of Party A unless otherwise instructed by Party A.

Article 26 (Handling of Drawings, Etc.)

1. Party B shall manage the Specifications, Etc. and the Loaned Drawings with extreme care, and with the exception of where deemed particularly necessary by Party A, shall not use these for anything other than the prescribed purpose, and must not disclose or Transfer, Etc., these to a third party.

2. Upon the completion of the objective for the loaning of the drawings, or upon the request of Party A, Party B shall promptly return the Specifications, Etc., and the Loaned Drawings to Party A. However, if instructions are given by Party A to dispose of said specifications or drawings (burning or shredding), Party B shall act in accordance with these instructions.

3. Party A and Party B may disclose the Approved Drawings to a third party by obtaining the prior written consent of the other party.

Section 6 – Intellectual Property Rights

Article 27 (Intellectual Property Rights)

1. Party B must not use the patents, utility models, designs, trademarks, know-how, copyright or other intellectual property rights of Party A without obtaining the prior approval of Party A.

2. Party B must pay absolute due care when producing and delivering the Delivered Items, in order to avoid damaging the intellectual property rights of a third party.

However, this shall not apply to the Specifications, Etc., Loaned Drawings, or other specific instructions given by Party A.

3. In the event that Party B violates a right prescribed in the preceding Paragraph or some other dispute arises with a third party,, or there is a concern that such a dispute may occur, regardless of the presence or absence of instructions from Party A, Party B shall notify Party A of this in writing without delay.

4. In the event that Party B violates a right prescribed in Paragraph 2 or some other dispute arises between Party A or Party B and a third party, Party B shall resolve such a dispute at its own responsibility and expense, and shall compensate for damages incurred by Party A.

However, this shall not apply where the dispute was caused by the Specifications, Etc., Loaned Drawings, or other specific instructions given by Party A.

Article 28 (Technical Cooperation)

Party A and Party B shall mutually endeavor to make technical improvements relating to the development and production of the Delivered Items, and the handling of inventions, devices, designs, know-how and other technical results shall be determined upon consultation between Party A and Party B.

-8-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Chapter 3 – General Provisions

Section 1 – General Rules

**Article 29 (Management of Production Equipment)**
Even if goods are no longer being delivered to Party A as mass-produced items due to a change in the specifications or for some other reason, Party B shall manage the molds, dedicated tools, and other machinery and equipment, etc., required for the production of the Delivered Items in a manner that does not cause hindrance to the delivery of parts for repair. The scrapping or disposal of said machinery and equipment, etc., shall be prescribed separately upon consultation between Party A and Party B.

**Article 30 (Transfer of Rights and Obligations)**
1. Party A and party B must not Transfer, Etc., to a third party its rights or obligations arising from this Agreement or an Individual Agreement without obtaining the prior written approval of the other party.
2. When producing the Delivered Items, Party B may subcontract a portion of the production, with the exception of where otherwise prescribed by Party A
3. Even in the case of the preceding Paragraph, Party B may not be exempted from its responsibilities in this Agreement and the Individual Agreements regarding the handling of quality assurance, delivery, and Drawings, Etc., of the Delivered Items, intellectual property rights, the transfer of works, confidentiality, and other matters.

**Article 31 (Consent to Transfer Produced Goods)**
Party B must obtain the prior written consent of Party A when producing or transferring produced goods that apply to any of the following items for a third party
(1) Produced goods created on the basis of Approved Drawings that include the technology of Party A
 However, this excludes produced goods with strong marketability that have been developed by Party B, and for which the consent of Party A has been obtained.
(2) Produced goods to be created based on the Loaned Drawings

**Article 32 (Confidentiality)**
1. Party A and Party B must not disclose or leak to a third party the business and technical secrets of the other party that it learns through transactions conducted, without the consent of the other party.
2. Party B must act in accordance with the instructions specifically prescribed by  Party A with regard to the confidentiality of information and the entrance to the offices of Party A and take all necessary measures to maintain confidentiality.

**Article 33 (Improvements and Surveys)**
1. Party B shall endeavor to improve the unit price, quality, function, and production method, etc., of the Delivered Items, and shall actively conduct new technical developments, propose improvements, provide information, and offer other cooperation to Party A in order to achieve this.
2. When deemed necessary, Party A may request that Party B provide management documentation on the quality and manufacturing processes, etc., or may conduct a survey on the quality control and process control methods, or provide instruction on improvements. However, Party B may refuse such a request if there is a valid reason for doing so.
3. In the event that Party A issues a request for the performance of surveys to Party B, Party B shall actively cooperate with this request.

-9-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Article 34 (Safety, Disaster, and Environmental Control)
1. Party B must always pay due care to safety and disaster and environmental management, and must comply with the law, instructions and orders of regulatory agencies, as well as the various regulations and instructions prescribed by Party A when producing and delivering the Delivered Items,
2. In the event that damage, an accident, or pollution occurs in relation to the preceding Paragraph, Party B shall immediately notify Party A of this, take the appropriate emergency measures at the responsibility of Party B, and in addition, shall make every effort to resolve and prevent the recurrence of this.

Article 35 (Matters for Adherence within the Offices of Party A)
1. In the event that Party B has their employee or representative enter the offices of Party A, they shall ensure that said parties adhere to the regulations and instructions of Party A.
2. In the event that employees or representatives of Party B cause an accident within the offices of Party A, or cause damage to an employee of Party A or a third party, Party B shall resolve this in its entirety at the responsibility and cost of Party B, with the exception of when such damages were caused for reasons attributable to Party A, and in the event that Party A incurs damages or defrays the cost of such damages, Party B shall immediately provide compensation or reimbursement.


Chapter 2 – Notification and Agreement Termination

Article 36 (Voluntary Termination)
Party A and Party B may terminate this Agreement at any time by issuing written notice to the other party, and providing at least six month's notice.

Article 37 (Obligation of Notification)
In the event that any of the following items apply to Party B, they must promptly notify Party A.
(1) Transfer, acquisition, or merger of business
(2) Change of address, representative, officer, trade name, or organization relating to the transactions conducted with Party A
(3) Any of the reasons prescribed in the items of Paragraph 1 of the following Article

Article 38 (Termination)
1. In the event of any of the reasons pertaining to the following items becomes applicable to the other party, Party A and Party B may immediately terminate all or a part of this Agreement without the need to give notice or follow any other procedures.
(1) When becoming subject to a disposition for the suspension of business or the revocation of a business license, etc.
(2) When filing a petition on their own behalf, or becoming subject to a petition filed by a third party, for bankruptcy, arbitration, corporate liquidation, or corporate reorganization
(3) When a resolution is made for dissolution
(4) When becoming subject to provisional seizure, temporary injunction, or compulsory execution
(5) When a payment is suspended or insolvency occurs, or when receiving a warning from a clearinghouse or having a check dishonored .

-10-

(6) When the performance of this Agreement or an Individual Agreement becomes difficult due to an accident, labor dispute, or other matter.
(7) When a major business-related matter arises that is equivalent to any of the preceding items
(8) When a provision of this Agreement or of an Individual Agreement is violated

2. In the event that any of the reasons pertaining to the following items become applicable to Party B, Party A may terminate all or a part of this Agreement and the Individual Agreements upon issuing notice and providing a reasonable amount of time to remedy the situation.

(1) When the production of the Delivered Items is not commenced or is stopped without a valid reason
(2) When the Delivered Items are not delivered on the delivery date for no valid reason
(3) When there is a concern that any of the preceding items may occur
(4) When any reasons stated in any of the items of the preceding Paragraph, or Item 1 or the preceding item of this Paragraph occur in relation to  a supplier of Party B
3. The provisions of Paragraph 1 and Paragraph 2 shall not preclude Party A or Party B from claiming compensation for damages against the other party.

Article 39 (Matters that shall remain in Effect Upon Termination of this Agreement)
With the exception of where otherwise agreed upon through consultation between Party A and Party B, the following items shall remain in effect upon termination of this Agreement, regardless of reason.
(1) Party A shall have the right to purchase the Delivered Items, works in process, items supplied for a fee and dedicated materials, equipment, drawings, molds, and tools, etc., used for the production of the Delivered Items with priority given to a third party.
(2) All financial obligations under this Agreement and the Individual Agreements shall become due and payable upon termination of this Agreement.
(3) Party B shall return the Supplied Items or Loaned Items belonging to Party A at their own cost.

Article 40 (Surviving Conditions)
Party A and Party B shall not be exempted from the obligations prescribed in Article 27 Paragraph 3 and Paragraph 4, Article 30 Paragraph 1, Article 31, and Article 32, as well as other obligations that are intended to remain in effect after termination of this Agreement, even after this Agreement has terminated.

Section 3 – Supplementary Provisions

Article 41 (Effective Period)
The effective period of this Agreement shall be from *April 1, 199*8 until *April 1, 2001*. However, unless otherwise indicated by Party A or Party B no later than six months prior to the expiration date, the effective period of this Agreement shall be automatically extended for another year.

Article 42 (Jurisdiction)
Party A and Party B agree that the court of competent jurisdiction for disputes relating to this Agreement, or the various understandings, memoranda, and Individual Agreements based on this Agreement, shall be the court that has jurisdiction over the headquarters of Party A.

-11-

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

Article 43 (Transitional Measures)
1. In the event that, prior to the execution of this Agreement, a "Basic Trading Agreement for Parts", "Letter of Understanding on Claims and Guarantees for Delivered Items", "Memorandum on Special Provision for Export Car Parts" or other agreement regarding the trading of Delivered Items between Party A and Party B is executed, these shall no longer be in effect upon entering into this Agreement.
2. This Agreement shall apply with regard to the performance of Individual Agreements executed between Party A and Party B prior to entering into this Agreement.

Article 44 (Consultation)
Matters not prescribed in this Agreement or an Individual Agreement, or questions that arise regarding this Agreement or an Individual Agreement shall be resolved upon consultation in good faith between Party A and Party B.

IN WITNESS WHEREOF, this Agreement has been executed in duplicate, and Party A and Party B shall each retain one signed or sealed copy thereof.

April 1, 1998

Party A    President and CEO James E. Miller       [Seal: Illegible]
Mazda Motor Corporation
3-1, Shinchi, Fuchu-cho, Aki-gun, Hiroshima Prefecture
[Seal: Illegible]


Party B    President and CEO Curtis B. Sorensen  [Seal: Autoliv Japan Inc.]
Autoliv Japan Inc.
2-15-13, Shinyokohama, Yokohama-shi, Kanagawa Prefecture
[Seal: Autoliv Japan Inc. / Illegible]


[Seal: Illegible]
    [Revenue Stamp: JPY 4,000] [Seal: Illegible]

-12-

Annex

**Claim Compensation Periods**

With the exception of where otherwise prescribed by Party A and Party B the claim compensation periods for Delivered Items under Article 15 Paragraph 1 of this Agreement shall be as set forth below.

1. Compensation period for vehicles registered domestically

| | | | | | Compensation Period |
|---|---|---|---|---|---|
| | | | Factory Claims | | The period from the Acceptance of the Delivered Items by Party A until shipment to the market |
| Market Claims | Parts and Vehicles | New Vehicles, New Assembly Parts | General Warranty Parts | Limousines, taxis, general cargo vehicles, microbus air conditioners, dump mechanisms | The period from shipment to the market until the following period has elapsed:<br>12 months after new vehicle registration |
| | | | | Other parts | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 36 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for 60,000 km |
| | | | Special Warranty Parts | • Engine mechanism parts<br>• Exhaust gas purifier parts<br>• Transmission parts<br>• Steering parts<br>• Suspension parts<br>• Brake parts<br>• Electronic control parts<br>• Occupant protection parts | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 60 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the initial 10,000 km |
| | | | Perforation caused by rust to the outer body plate | | The period from shipment to the market until the time that the first of the following periods elapses:<br><br>Passenger vehicle (includes vans and wagons): 60 months after new vehicle registration<br>Commercial vehicle: 36 months after new vehicle registration |
| | | | Rust to the surface of the outer body plate | | The period from shipment to the market until the time that the first of the following periods elapses:<br><br>Passenger vehicle (includes vans and wagons): 36 months after new vehicle registration<br>Commercial vehicle: 12 months after new vehicle registration |
| | | | Adjustments and Maintenance and Repairs | Radiator water leaks | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 36 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for 60,000 km |
| | | | | Other adjustments and maintenance and repairs | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 12 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the initial 20,000 km |
| | | Repair parts | Parts purchased by the customer and installed at the dealership | | • Six months from the date of installation |
| | | | Parts for which warranty repair has been used | | • The warranty period for new vehicles and parts installed in new vehicles |
| | | Supplies | | | After sale to the customer<br>① Supplies accompanied by a written warranty: The warranty period prescribed in said warranty<br>② Supplies without a written warranty: 12 months |

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

## 2. Compensation period for light automobiles

| | | | | Compensation Period |
|---|---|---|---|---|
| Market Claims | | Factory Claims | | The period from the Acceptance of the Delivered Items by Party A until shipment to the market |
| | Parts and Vehicles | New Vehicles, New Assembly Parts | General Warranty Parts | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 36 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the first 60,000 km |
| | | | Special Warranty Parts — • Engine mechanism parts • Exhaust gas purifier parts • Transmission parts • Steering parts • Suspension parts • Brake parts • Electronic control parts • Occupant protection parts | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 60 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the first 10,000 km |
| | | | Limited Warranty Parts — • Exhaust parts (muffler, exhaust pipe, etc.) • Shield beam • Halogen lamp • Radio, stereo • * Air conditioner | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 12 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the first 20,000 km<br><br>*Only ① above applies. |
| | | | Perforation caused by rust to the outer body plate | The period from shipment to the market until the time that the following period elapses:<br>36 months after sale of the new vehicle |
| | | | Rust to the surface of the outer body plate | The period from shipment to the market until the time that the following period elapses:<br>12 months after sale of the new vehicle |
| | | | Adjustments and Maintenance and Repairs — • Paint • Water leakage from rain • Radiator water leaks | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 12 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the first 20,000 km |
| | | | • Interior noise • Wheel alignment adjustment • Wheel balance adjustment • Taking apart the carburetor and cleaning it | The period from shipment to the market until the time that the first of the following periods elapses:<br>① 3 months after new vehicle registration<br>② The period from new vehicle registration until the vehicle has been driven for the first 5,000 km |
| | | Repair parts | Parts purchased by the customer and installed at the dealership | Six months from the date of installation |
| | | | Parts for which warranty repair has been used | The warranty period for new vehicles and parts installed in new vehicles |
| | Supplies | | Audio equipment | The period from the sale of the vehicle to the customer until the time that the first of the following periods elapses:<br>① 12 months<br>② The period until the vehicle has been driven for the first 20,000 km |
| | | | Other supplies | 12 months after sold to the customer |

3. Compensation Period for Export Vehicles

| | | | | | | Compensation Period |
|---|---|---|---|---|---|---|
| | | | Factory Claims (Includes claims relating to KD parts) | | | The period from the Acceptance of the Delivered Items by Party A until shipment to the market |
| North America | Market Claims | Parts and Vehicles | New Vehicles, New Assembly Parts | General Warranty Parts | | The period from shipment to the market until the time that the first of the following periods elapses: ① 36 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 50,000 miles (80,000 km in Canada) |
| | | | | Exhaust gas purifier parts | | The period from shipment to the market until the time that the first of the following periods elapses: ① 60 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 50,000 miles (80,000 km in Canada) (However, for specified parts in California, United States, 84 months or 70,000 miles) |
| | | | | Parts relating to occupant protection | | The period from shipment to the market until the time that the first of the following periods elapses: ① 60 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 60,000 miles (100,000 km in Canada) |
| | | | | Perforation caused by rust to the outer body plate | | The period from shipment to the market until 60 months following new vehicle registration |
| | | | | Adjustments and Repairs | • Wheel balance • Wheel alignment • Cables, belts, levers, pedal play and stretching • Engine adjustments (idle speed), body fitting | The period from the shipment to the market until 12 months following new vehicle registration |
| | | | | | Other adjustments | The period from shipment to the market until the time that the first of the following periods elapses: ① 36 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 50,000 miles (80,000 km in Canada) |
| | | | Repair parts | | Parts purchased by the customer and installed at the dealership | 12 months from the date of installation |
| | | | | | Parts purchased by the customer and installed by the customer | 12 months from date of purchase |
| | | | | | Parts for which warranty repair has been used | The warranty period for new vehicles and parts installed in new vehicles |
| | | | Supplies Accessories such as Mud flaps Slap [sic] bumper Aerodynamic parts | | Parts purchased by the customer and installed at the dealership | 12 months from the date of installation |
| | | | | | Parts purchased by the customer and installed by the customer | 12 months from date of purchase |

| | | | | | Compensation Period |
|---|---|---|---|---|---|
| Europe | Market Claims | Parts and Vehicles | New Vehicles, New Assembly Parts | General Warranty Parts | The period from shipment to the market until the time that the first of the following periods elapses: ① 36 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 100,000km |
| | | | | Exhaust gas purifier parts (Sweden only) | The period from shipment to the market until the time that the first of the following periods elapses: ① 60 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 80,000km |
| | | | | Perforation caused by rust to the outer body plate | The period from shipment to the market until 72 months following new vehicle registration |
| | | | | Adjustments and Repairs<br>• Carburetor adjustments<br>• Injection timing<br>• Ignition timing<br>• Oil discharge at the metering oil pump<br>• Drive belt tension<br>• Front / rear alignment<br>• Wheel balance, steering wheel play | The period from shipment to the market until the time that the first of the following periods elapses: ① 3 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 6,000km |
| | | | | Other adjustments | The period from shipment to the market until the time that the first of the following periods elapses: ① 36 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 100,000km |
| | | | Repair parts | Parts purchased by the customer and installed at the dealership | 12 months from the date of installation |
| | | | | Parts for which warranty repair has been used | The warranty period for new vehicles and parts installed in new vehicles |
| | | Supplies<br>Accessories such as<br>Mud flaps<br>Slap [sic] bumper<br>Aerodynamic parts | | Parts purchased by the customer and installed at the dealership | 12 months from the date of installation |
| Australia, Asia, Middle East, Africa, Central and South America | Market Claims | Parts and Vehicles | New Vehicles, New Assembly Parts | General Warranty Parts | The period from shipment to the market until 36 months following new vehicle registration |
| | | | | Perforation caused by rust to the outer body plate | The period from shipment to the market until 72 months following new vehicle registration |
| | | | | Adjustments and Repairs<br>• Carburetor adjustments<br>• Injection timing<br>• Ignition timing<br>• Oil discharge at the metering oil pump<br>• Drive belt tension<br>• Front / rear alignment<br>• Wheel balance<br>• Steering wheel play | The period from shipment to the market until the time that the first of the following periods elapses: ① 3 months after new vehicle registration ② The period from new vehicle registration until the vehicle has been driven for the first 6,000km |
| | | | | Other adjustments | The period from shipment to the market until 36 months following new vehicle registration |
| | | | Repair parts | Body panel parts purchased by the customer and installed at the dealership | 24 months from the date of installation |
| | | | | Parts for which warranty repair has been used | The warranty period for new vehicles and parts installed in new vehicles |
| | | Supplies | | Parts purchased by the customer and installed at the dealership | 12 months from the installation date |

[Seal: Illegible]
[Seal: Illegible]
[Seal: Illegible]

Confidential – Produced Pursuant to Protective Order/Andrews v. Mazda

AUTOLIV03320

AUTOLIV03310_EN_GTB CORRECTED