UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMIE LEE ANDREWS, as Surviving Spouse of MICAH LEE ANDREWS, Deceased, and JAMIE LEE ANDREWS, as Administrator of the Estate of MICAH LEE ANDREWS, Deceased<br><br>Plaintiff,<br><br>v.<br><br>AUTOLIV JAPAN, LTD.,<br><br>Defendant. | Case No. 1:14-cv-3432-SCJ |

**PLAINTIFF'S EXHIBIT PX 1095**

### AUTOLIV JAPAN, LTD'S FIFTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES

Defendant Autoliv Japan, Ltd. objects and responds to Plaintiff's First Interrogatories as follows:

### PRELIMINARY STATEMENT

Autoliv Japan, Ltd. is the only proper party to this action because it is the Autoliv entity that supplied the driver seatbelt assembly and the original driver airbag module to Mazda for integration and installation into the subject vehicle. Mazda provided Autoliv Japan, Ltd. with its detailed requirements and specifications for the driver seatbelt assembly and the driver airbag module that it

incorporated into the 2005 Mazda 3, and Autoliv Japan, Ltd. supplied Mazda with products that satisfied those requirements and specifications. Said differently, Autoliv Japan, Ltd. was a component parts supplier to Mazda and not a systems integrator and Autoliv Japan, Ltd. was not otherwise responsible for the overall occupant protection system in the 2005 Mazda 3 vehicle. Consequently, Autoliv Japan, Ltd. refers Plaintiff to the Mazda Defendants as being most knowledgeable about the overall system(s).

## **GENERAL OBJECTION**

Autoliv Japan, Ltd. objects to these interrogatories to the extent they seek, or purport to seek, information related to similar vehicles or similar seatbelt assemblies and airbag modules. Autoliv Japan, Ltd. supplies components that are unique and calibrated for each specific vehicle environment as specified by the Original Equipment Manufacturer (or automaker) (e.g. 2005 Mazda 3s). Accordingly, to the extent Plaintiff seeks documents from Autoliv Japan, Ltd. related to vehicles other than the 2005 Mazda 3, or seatbelt assemblies and airbag modules supplied for other vehicles or to other OEMs, Autoliv Japan, Ltd. objects on the grounds that such documents are irrelevant and those requests are overly broad, and unduly burdensome.

## FIFTH SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES

**Interrogatory No. 2:**

If you contend that some other person or legal entity is, in whole or in part, liable either to Plaintiff in this matter or is liable, in whole or in part, to you, state the full name, address, and telephone number of that person or entity and the basis for such liability.

RESPONSE: The Autoliv Defendants object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving the foregoing objections and General Objection above, the Autoliv Defendants state that, other than Micah Lee Andrews, the Autoliv Defendants know of no person or entity who may be responsible for Plaintiff's alleged damages at this time, but will supplement their response to this Interrogatory, if and when additional information becomes available. The Autoliv Defendants further state that they are in the process of investigating the facts and circumstances surrounding the incident, but understand from the Georgia Uniform Motor Vehicle Accident Report that "Mr. Andrews' actions were the cause of the collision which resulted in his death." *See* Andrews0004.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections and the General Objection above, Autoliv Japan, Ltd.

3

("Autoliv") states that "Mr. Andrews' actions were the cause of the collision which resulted in his death." *See* Andrews0004. Autoliv also states that Mr. Andrews' injuries were caused by Mazda and Bosch—the entities that designed and supplied, respectively, the subject airbag sensor system, which did not send a signal for the subject airbag to deploy when the subject collision occurred. ==Autoliv further states that, to the extent the subject driver seatbelt assembly allegedly caused Mr. Andrews' injuries, those injuries were caused by design decisions made by Mazda.==

**Interrogatory No. 3:**

Do you contend that you, Micah Andrews, or any other person or entity were guilty of any act or failure to act that played any part in causing the subject incident or the injuries or damages complained of? Please state "yes" or "no." If your answer is in the affirmative in any way, please state and describe each specific act or failure to act by each person or entity (specifying which) that you claim supports your contention.

RESPONSE: The Autoliv Defendants object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine and the phrase "guilty of any act or failure to act that played any part in causing the subject incident," as vague and ambiguous. Subject to and without waiving the foregoing objections and General Objection above, the Autoliv Defendants state that, other than Micah Lee Andrews, the Autoliv Defendants know of no person or entity who may be responsible for Plaintiff's alleged damages at this time, but will supplement their response to this

4

Interrogatory, if and when additional information becomes available. The Autoliv Defendants further state that they are in the process of investigating the facts and circumstances surrounding the incident, but understand from the Georgia Uniform Motor Vehicle Accident Report that "Mr. Andrews' actions were the cause of the collision which resulted in his death." *See* Andrews0004.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections and the General Objection above, Autoliv states that "Mr. Andrews' actions were the cause of the collision which resulted in his death." *See* Andrews0004. Autoliv also states that Mr. Andrews' injuries were caused by Mazda and Bosch—the entities that designed and supplied, respectively, the subject airbag sensor system, which did not send a signal for the subject airbag to deploy when the subject collision occurred. ==Autoliv further states that, to the extent the subject driver seatbelt assembly allegedly caused Mr. Andrews' injuries, those injuries were caused by design decisions made by Mazda.==

**Interrogatory No. 4:**

**Please identify any and all persons whom you know or suspect may have knowledge of any kind related to any issue in this matter and describe the issues to which you believe each such person may have knowledge. If you have taken, or are aware of, or have obtained, any statement, be it oral or in writing, from any person purporting to have knowledge of any aspect of the subject incident or any issue in this matter, please identify the name of the person who gave the statement and the name, address, and telephone number of anyone who has possession, custody, or control of such statement,**

**transcript, or summary of such statement or copies thereof, any person present when the statement was made, and any documents relating to the statement.**

RESPONSE: The Autoliv Defendants object to this request as compound, and overly broad and unduly burdensome to the extent it asks the Autoliv Defendants to identify "any and all persons whom you know or suspect may have knowledge of any kind related to any issue in this matter." Subject to and without waiving the foregoing objections and General Objection above, the Autoliv Defendants refer Plaintiff to Attachment A to their Initial Disclosures [Dkt. # 24], and Plaintiff's answer to Interrogatory No. 6 in Plaintiff's Response to Defendant Autoliv Japan, Ltd.'s First Set of Interrogatories to Plaintiff dated January 20, 2015. The Autoliv Defendants will supplement their response to this Interrogatory, if and when additional information becomes available.

THIRD SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv states that William Van Arsdell, Ph.D., P.E. may testify at trial. It is anticipated that he may offer testimony in the areas of mechanical engineering and the design, operation, usage, and performance of occupant restraints and the occupant restraints in the subject vehicle. He may also testify about the opinions identified in his November 23, 2015 report. David Prentkowski, Principal Engineer, Seatbelt Engineering, Autoliv AAM/ATC may

6

testify at trial about the subject seatbelt assembly; features, specifications and testing of seatbelt assemblies; and Autoliv's role as a component parts supplier to the automobile industry.

FOURTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv further states that William Van Arsdell may also testify about the opinions identified in his February 1, 2016 supplemental report. In addition, Hirokazu Hirabayashi of Autoliv Japan, Ltd. may testify at trial about Autoliv's role as Mazda's component supplier and the J48C program generally.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv further states that Elizabeth Raphael, M.D. may also testify at trial. It is anticipated that Dr. Raphael will offer testimony about the opinions in her November 7, 2018 Report (AUTOLIV03510-AUTOLIV03532). Autoliv also states that Chris Caruso may testify at trial. It is anticipated that Mr. Caruso will offer testimony about the opinions in his November 6, 2015 Report (ANDREWS1389-ANDREWS1411), his November 24, 2015 Amended Report (ANDREWS1490-ANDREWS1515), and his February 27, 2016 Supplemental Report (ANDREWS1801-ANDREWS1809). Autoliv further states that Yuji Kamei of Autoliv may testify at trial about Autoliv's role as Mazda's component supplier and the J48C program generally.

**Interrogatory No. 5:**

Identify each person who has investigated this subject incident on your behalf and state the beginning and ending dates of each such person's investigation. This interrogatory applies, but is not limited to, insurance adjusters, persons employed by private adjusting firms, and private investigators.

RESPONSE: The Autoliv Defendants object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine including, but not limited to, the identification of non-testifying experts. Subject to and without waiving the foregoing objections and General Objection above, and excluding legal counsel retained to represent the Autoliv Defendants in this case, the Autoliv Defendants state that Will Van Arsdell of Engineering Principles and David Prentkowski of Autoliv attended the March 31, 2015 inspection in this case and Will Van Arsdell attended the July 8, 2015 seatbelt inspection.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections and the General Objection above, and excluding legal counsel retained to represent the Autoliv Defendants in this case, Autoliv states that Will Van Arsdell of Engineering Principles and David Prentkowski of Autoliv attended the March 31, 2015 inspection; Will Van Arsdell attended the July 8, 2015 seatbelt inspection; Paul Weber of Engineering Principles attended the January 5, 2016

inspection; and Elizabeth Raphael of Delta V Biomechanics attended the September 14, 2018 inspection.

**Interrogatory No. 12:**

State and describe each affirmative defense to the Complaint which you intend to assert in this action, whether pleaded in your answer or not. For each state every factual basis for the affirmative defense.

RESPONSE: The Autoliv Defendants refer Plaintiff to their Initial Disclosures [Dkt # 24] pages 2-7. The Autoliv Defendants further state that they will not raise lack of personal jurisdiction as a defense. The Autoliv Defendants will supplement their response to this Interrogatory, if and when additional information becomes available.

FIFTH SUPPLEMENTAL RESPONSE: The Autoliv Defendants refer Plaintiff to their Second Amended Initial Disclosures pages 2-6.

**Interrogatory No. 23:**

Please state each and every reason known to you that the airbag would fail to deploy and/or the seatbelt would spool out and/or the pretentioners would fail to fire in a frontal impact wreck. Please specify which of those reasons you contend caused the failures in the subject wreck, and whether the front driver's side airbag and seatbelt pretensioners should have deployed if they performed in the manner intended by their design.

RESPONSE: The Autoliv Defendants object to this Interrogatory on the grounds that it is compound, overly broad and unduly burdensome to the extent it asks for "each and every reason," and seeks information that is neither relevant nor

9

reasonably calculated to lead to the discovery of admissible evidence. In addition, the Autoliv Defendants object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving the foregoing objections and the General Objection above, the Autoliv Defendants state that they did not supply, and consequently were not responsible for, the overall occupant safety system in the 2005 Mazda 3. Autoliv Japan, Ltd. was the component part supplier for the driver seatbelt assembly and the original driver airbag module, but not the airbag control module, sensors or other components which determine whether or not deployment of restraints is warranted (and which restraint to deploy) in a crash situation. Finally, the Autoliv Defendants state they have not been able to review the ACM data and examine the driver airbag module in the subject vehicle so they cannot draw any conclusions regarding the accident involving the subject vehicle at this time. The Autoliv Defendants will supplement their response to this Interrogatory, if necessary, after they receive the ACM data are able to further inspect the driver airbag module.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections and the General Objection above, Autoliv further states that the subject driver airbag module and subject pretensioner did not deploy

because they did not receive their respective signal deployment currents. According to Plaintiff's expert Chris Caruso, the subject driver airbag module and subject pretensioner did not receive their respective signal deployment currents because of "the electrical disconnection of the [Electronic Frontal Sensor] from the [Supplemental Airbag System] module at the onset of the recorded crash event." *See* November 24, 2015 Report of Chris Caruso at ANDREWS1506. Autoliv also denies that the subject seatbelt "spooled out," which it interprets as the retractor failing to lock.

**Interrogatory No. 26:**

**Identify every present or former employee or contractor who may be called to testify at trial concerning any information relating to the subject matter of this action, or the claims or defenses of any party to this action, describe generally what discoverable matter or information each person claims to know.**

RESPONSE: The Autoliv Defendants object to the phrase "concerning any information related to the subject matter of this action," as vague and ambiguous. Subject to and without waiving the foregoing objections, the Autoliv Defendants state that they have not yet identified any fact witnesses that they expect to call as a witness at trial. The Autoliv Defendants will supplement their response to this Interrogatory, if necessary, if additional information becomes available.

11

THIRD SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv states that David Prentkowski, Principal Engineer, Seatbelt Engineering, Autoliv AAM/ATC may testify at trial about the subject seatbelt assembly; features, specifications and testing of seatbelt assemblies; and Autoliv's role as a component parts supplier to the automobile industry.

FOURTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv further states that Hirokazu Hirabayashi of Autoliv Japan, Ltd. may testify at trial about Autoliv's role as Mazda's component supplier and the J48C program generally.

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv further states that Yuji Kamei of Autoliv may testify at trial about Autoliv's role as Mazda's component supplier and the J48C program generally.

**Interrogatory No. 35:**

**Please identify any and all expert witnesses you expect to call at the trial of this case, providing for each such expert the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, a list of dates of communications with the expert, and a summary of the grounds for each opinion.**

RESPONSE: The Autoliv Defendants object to this Interrogatory to the extent it seeks information beyond the scope of discovery outlined in Federal Rule

26. Subject to and without waiving the foregoing objections, the Autoliv Defendants state that they have not yet identified any expert witness whom they expect to call as a witness at trial, but will supplement this Interrogatory when they do so in accordance with the Federal Rules of Civil Procedure and any future Case Management Order.

THIRD SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv states that William Van Arsdell, Ph.D., P.E. may testify at trial. It is anticipated that he will offer testimony in the areas of mechanical engineering and the design, operation, usage, and performance of occupant restraints and the occupant restraints in the subject vehicle. Autoliv also refers Plaintiff to the Report of William Van Arsdell dated November 23, 2015 (AUTOLIV003144-AUTOLIV003159).

FOURTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv also refers Plaintiff to the Supplemental Report of William Van Arsdell dated February 1, 2016 (AUTOLIV003307-AUTOLIV003309).

FIFTH SUPPLEMENTAL RESPONSE: Subject to and without waiving the foregoing objections, Autoliv states that Elizabeth Raphael, M.D. may also testify at trial. It is anticipated that Dr. Raphael will offer testimony about the opinions in

her November 7, 2018 Report (AUTOLIV03510-AUTOLIV03532). Autoliv also states that Chris Caruso may testify at trial. It is anticipated that Mr. Caruso will offer testimony about the opinions in his November 6, 2015 Report (ANDREWS1389-ANDREWS1411), his November 24, 2015 Amended Report (ANDREWS1490-ANDREWS1515), and his February 27, 2016 Supplemental Report (ANDREWS1801-ANDREWS1809).

This 5th day of December, 2018.

/s/ William J. Repko III, Esq.
Doug Scribner, Esq.
Georgia Bar No. 632755
doug.scribner@alston.com
Jenny A. Mendelsohn, Esq.
Georgia Bar No. 447183
jenny.mendelsohn@alston.com
William J. Repko III, Esq.
Georgia Bar No. 301797
jay.repko@alston.com

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)

*Attorneys for Autoliv Japan, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the within and foregoing **AUTOLIV JAPAN LTD'S FIFTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES** upon all parties to this matter by e-mail and by placing a copy of same in the United States Mail with adequate postage addressed as follows:

> James E. Butler, Jr
> Tedra L. Cannella
> Rory A. Weeks
> BUTLER WOOTEN & PEAK LLP
> 2719 Buford Highway
> Atlanta, Georgia 30324
>
> William L. Ballard
> Gregory R. Feagle
> BALLARD & FEAGLE, LLP
> 4200 Northside Parkway NW
> Atlanta, Georgia 30327
>
> *Attorneys for Plaintiff*

This 5th day of December, 2018.

> /s/ William J. Repko III
> William J. Repko III
> Georgia Bar No. 301797