James E. Butler, Jr., P.C.*   Joseph M. Colwell       *admitted in GA & AL
Joel O. Wooten                Ramsey B. Prather       **admitted in GA & FL
Brandon L. Peak               Christopher B. McDaniel
Tedra L. Cannella             Rory A. Weeks
Robert H. Snyder**            Joel M. Langdon
                              Michael F. Williford



Butler Wooten & Peak LLP

May 8, 2020

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

    Re:   *Jamie Lee Andrews, et al. v. Autoliv Japan, Ltd., et al.,* United States District Court for the Northern District of Georgia Atlanta Division, Civil Action File No. 1:14-cv-03432-SCJ

Counsel,

    As we mentioned in our letter to the Court yesterday, we would like to reach additional stipulations to shorten and streamline the trial of this case. Please let us know if you will agree to any of these. If the answer is no, please provide citation to specific evidence refuting the facts stated below or state why Autoliv has rejected the offer to stipulate a fact. Simply rejecting a stipulation without explaining why or providing a citation to evidence does not allow us to work on finding an agreeable alternative.

1. The defendant in this case, Autoliv, is a manufacturer of components used in cars made by many automakers.

2. Autoliv makes seatbelts and airbag components.

3. On April 12, 2013, Mr. Andrews left work at the Georgia Aquarium in his 2005 Mazda3 and headed for home.

4. As Mr. Andrews drove north on I-575 in Cobb County, Georgia, his car left the highway and hit a cluster of trees.

5. Mr. Andrews was wearing his seatbelt properly at the time of the wreck.

6. Mr. Andrews was not speeding just before the wreck.

Plaintiff's Exhibit PX 1141

REPLY TO Columbus:
P.O. Box 2766 • Columbus, GA 31902
105 13th Street • Columbus, GA 31901
706.322.1990 • 1.800.242.2962
FAX 706.323.2962

Atlanta Office:
2719 Buford Highway • Atlanta, GA 30324
404.321.1700 • 1.800.242.2962
FAX 404.321.1713

Savannah Office:
The Realty Building, Suite 1000
24 Drayton Street • Savannah, GA 31401
912.443.4036 • 1.800.242.2962
FAX 706.323.2962

www.butlerwootenpeak.com

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
May 8, 2020
Page 2

7. The speed of Mr. Andrews' car when it hit the trees was about 35 mph.

8. The principle direction of force was 10-15 degrees from the left of straight ahead, which is roughly the 11:30 position on a clock.

9. Defendant Autoliv manufactured the drivers' seatbelt in Mr. Andrews' Mazda3.

10. Mr. Andrews' seatbelt spooled out approximately 20 inches in the April 12, 2013 wreck.[1]

11. Mr. Andrews' head hit the steering wheel during the collision.

12. Mr. Andrews died from the injury he received as a result of his head hitting the steering wheel.

13. Mr. Andrews was unresponsive when EMS arrived at the scene.

14. Mr. Andrews was pronounced dead after arriving at Kennestone Hospital in Marietta, Georgia.

15. Weather played no factor in the April 12, 2013 wreck.

16. Mr. Andrews was not talking on his cellphone or texting at the time of the collision.

17. Mr. Andrews was not under the influence of drugs or alcohol of the time of the collision.

18. Mr. Andrews had no health problem or medical event that contributed to the collision.

19. The seatbelt in the 2005 Mazda3 spooled out 16.85 inches in the NCAP 35 mph frontal barrier test.

20. A "seatbelt retractor" is a device that stores, lets out, and retracts seatbelt webbing.

21. Inside the seatbelt retractor is a spindle, and the seatbelt webbing is wound around this spindle.

---

[1] Autoliv's expert Van Arsdell has admitted this statement. Van Arsdell Dep. 100/25-101/3.

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
May 8, 2020
Page 3

22. Devices called "load limiters" are often added to seatbelts, and they can decrease the risk of injuries that can be caused from a locked seatbelt.

23. A "torsion bar" is one kind of load limiter.

24. A "torsion bar" is a special kind of seatbelt retractor spindle, the metal bar around which the seatbelt webbing is wrapped.

25. In a collision the torsion bar twists to allow seatbelt webbing to come off the spindle.

26. How easily a torsion bar twists and allows seatbelts webbing to spool out depends on the torsion bar's *deployment threshold*, which is to say the torsion bar's *strength*.

27. A torsion bar with a higher deployment threshold will result in less spool out, all other things about a crash being equal.

28. At the time Autoliv sold Mazda the seatbelt in Mr. Andrews' car, Autoliv already had manufactured another seatbelt retractor with a load limiter several times stronger than the one in Mr. Andrews' seatbelt.

29. A "stop" is a device added to the seatbelt retractor to limit the amount of seatbelt webbing the torsion bar can allow to come out of the retractor in a collision.

30. At the time Autoliv sold Mazda the seatbelt in Mr. Andrews' car, Autoliv had manufactured another seatbelt retractor with a stop.

31. The seatbelt that Autoliv sold to Mazda for the next year model Mazda3—the 2006 model—has a torsion bar in the seatbelt retractor stronger than the one in Mr. Andrews' 2005 Mazda3 car.

32. In a collision, the seatbelt retractor locks to prevent uncontrolled spool out of the seatbelt webbing, thus limiting the forward movement of an occupant.

33. Autoliv did not tell Mazda to use a torsion bar with a higher deployment threshold in the front seat positions in the 2005 Mazda3.

34. Autoliv did not tell Mazda to use a retractor with a stop in the 2005 Mazda3 in the front seat positions in the 2005 Mazda3.

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
May 8, 2020
Page 4

35. The retractor used in Mr. Andrews' Mazda3 was Autoliv's "R27LL" retractor.

36. Autoliv sold the R27LL retractor to other automakers besides Mazda.

37. Autoliv sold the R27LL retractor to other automakers before Autoliv sold it to Mazda for the Mazda3.

38. Autoliv has a duty to manufacture non-defective seatbelts.

39. The "platform" of a vehicle means its basic structure including most of the floor pan or undercarriage and engine compartment, which is often referred to as the vehicle's chassis.

40. Vehicles can share the same common structure and thus be considered to have the same common platform even if they are not the same type, same make, or even sold by the same manufacturer.

41. The vehicle platform for the 2004 through 2009 model year Mazda3 cars and for the 2004 through 2009 model year Volvo S40 cars was jointly engineered by Mazda, Ford, and Volvo.

42. The 2004 through 2009 model year Volvo S40 cars were built on the same platform as the 2004 through 2009 model year Mazda3 cars.

43. Autoliv sold to Volvo the seatbelt that Volvo used for the 2004 through 2009 model year Volvo S40 cars.

44. The seatbelt Autoliv sold to Volvo for the 2004 through 2009 model year S40 cars allowed much less spoolout than did the seatbelt Autoliv sold to Mazda for the 2005 Mazda3 car like the one Mr. Andrews was driving.

45. The seatbelt Autoliv sold to Volvo for the driver's seat of the 2004 through 2009 model year Volvo S40 cars had a 6.0 kilonewton digressive torsion bar.

46. The seatbelt Autoliv sold to Mazda for the 2005 Mazda3 car had a 2.0 kilonewton torsion bar.

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
May 8, 2020
Page 5

47. The torsion bar for the seatbelt Autoliv sold to Volvo for the 2004 through 2009 model year Volvo S40 cars was stronger than the one Autoliv sold to Mazda for the 2005 Mazda3.

48. At the time Autoliv sold the seatbelt in Mr. Andrews' car to Mazda, Autoliv did not tell Mazda it was selling a stronger seatbelt to Volvo for the Volvo S40 cars.

49. The internal designation code for the 2007 through 2009 Mazda3 cars is J48L.

50. The 2004 and 2005 Mazda3 used the same seatbelt in the driver's seat position.

51. Autoliv supplied seatbelts and airbags for the J48C from 2003 to 2005.

52. Autoliv supplied seatbelts and airbags for the J48L from 2005 to 2008.

53. A seatbelt can comply with federal minimum standards and still be defective.[2]

54. The reason the airbag did not deploy is because the airbag system was defective.[3]

55. Mazda is responsible for the defects that caused the airbag not to deploy.

There seems to also be some room to further whittle down the number of witnesses on Autoliv's "may call" list. For example, Dr. Avinash Bhavaraju is the doctor who pronounced Mr. Andrews dead at the hospital. It is very difficult to imagine he has any knowledge about a disputed fact. He was also not designated as an expert in this case. Are there stipulations that we can use to avoid calling the many witnesses from the scene? Are there any other witnesses Autoliv anticipates will not be called?

---

[2] See 49 U.S.C. § 30103(e).
[3] Autoliv has contended that the airbag was defective. In fact, Autoliv deposed Chris Caruso to obtain his testimony to that effect, and has designated passages from the depositions of Neil Hannemann and Eric Van Iderstine to that effect. Most exhibits on Autoliv's exhibit list relate to airbags. If Autoliv does not contend the airbag was defective, please advise.

Douglas G. Scribner, Esq.
Jenny A. Hergenrother, Esq.
William J. Repko III, Esq.
Alston & Bird LLP
May 8, 2020
Page 6

Thank you for your attention to these matters. We believe there are many opportunities to simplify and streamline the Court's work and look forward to cooperating with you to find them.

                                                Sincerely,

                                                BUTLER WOOTEN & PEAK LLP

                                                /s/ *Tedra L. Cannella*

                                                Tedra L. Cannella

TLC/cmh